# EXHIBIT A

Dockets.Justia.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE MUKASEY

------------------------------------------------

JONATHAN JUNG

           Plaintiff,

     -against-

SKADDEN, ARPS, SLATE MEAGHER & FLOM,
LLP and SUSAN DORNFELD,

           Defendants.

------------------------------------------------ X

**05 CV 4286**

Index No.

**COMPLAINT**

**PLAINTIFF DEMANDS A
TRIAL BY JURY**

2005 APR 29 PM 3: 21
U.S. DISTRICT COURT
S.D. OF N.Y.
FILED

Plaintiff, Jonathan Jung, by his attorney, Brendan Chao, Esq., for his Complaint alleges as follows:

## THE PARTIES

1.    Plaintiff, Jonathan Jung ("Mr. Jung" or "Plaintiff") is an Asian-American who was born in Seoul, South Korea. Mr. Jung resides at 33 West Hardwood Terrace, Palisades Park, New Jersey. Mr. Jung was formerly employed by Skadden, Arps, Slate Meagher & Flom, LLP.

2.    Defendant, Skadden, Arps, Slate Meagher & Flom, LLP ("Skadden Arps") is a law firm with international offices and offices within the United States, including the offices in which Plaintiff worked in New York, New York, and White Plains, New York. Its principal place of business is New York, New York.

3.    Defendant, Susan Dornfeld ("Ms. Dornfeld") is the Treasurer of Skadden Arps' New York office. Ms. Dornfeld supervised Mr. Jung during his employment with Skadden Arps.

## THE NATURE OF THE ACTION

4.     This is a civil action for damages and remedies for discrimination in employment on the basis of national origin discrimination, racial discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; the New York State Executive Law, as amended, § 290 et seq. ("New York State Human Rights Law"); and the Administrative Code of the City of New York, as amended, § 8-101 et seq. ("New York City Human Rights Law"), as well as damages and remedies available under the common law. Specifically, Defendants discriminated against Mr. Jung because of his national origin and race, and retaliated against him for engaging in protected activity by terminating his employment.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.     Mr. Jung filed a charge of discrimination on the basis of race, national origin, and retaliation, in June 2004 with the Equal Employment Opportunity Commission ("EEOC").

7.     On or about January 27, 2005, Mr. Jung received a Dismissal and Notice of Right to Sue letter from the EEOC.

8.     Plaintiff has served a copy of this complaint on the New York City Commission on Human Rights and Corporation Counsel.

9.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiff's claims occurred within the Southern District of New York.

2

## FACTS

10.    Mr. Jung is Asian-American of Korean descent.

11.    On or about September 8, 1998, Skadden Arps hired Mr. Jung as a Tax Coordinator.

12.    During his initial interview with Skadden Arps, Mr. Jung met with Mr. James McCarthy ("Mr. McCarthy").  During the interview process, Mr. Jung spoke to a number of Skadden Arps' employees including, Andrea Zavell and Will Eiwanger, and a Human Resources employee before returning to James McCarthy for a second interview.

13.    Defendant, Ms. Susan Dornfeld met briefly with Mr. Jung during the interview process, only asking a few questions and deferring the decision to hire Mr. Jung to Mr. McCarthy.

14.    Mr. Jung's responsibilities at Skadden Arps included managing and overseeing quarterly tax payments for international partners, advising attorneys on the guidelines, policies, costs, and compliance on various tax issues, and managing Skadden Arps's expatriate tax issues.

15.    Throughout Mr. Jung's employment with Skadden Arps, he was qualified for the position he held, and he performed his duties in a professional and competent manner.

16.    On October 1, 2001, Skadden Arps promoted Mr. Jung to International Tax Supervisor.

17.    Beginning in February 2003, Mr. Jung began to experience discrimination based on his race and national origin.

18.    This culminated with the termination of Mr. Jung's employment in retaliation for a number of complaints he made concerning discrimination in the workplace.

3

19.     Defendant Skadden Arps provided technology allowances to several Caucasian non-lawyer employees in Mr. Jung's department. These allowances included new computers, software, and hardware peripherals. The technology allowances, however, were not provided to Mr. Jung.

20.     Ms. Dornfeld, a Caucasian employee of Skadden Arps who was Mr. Jung's supervisor, routinely recommended higher bonuses and raises for Caucasian employees in Mr. Jung's department while giving lower bonuses and raises to Mr. Jung and other minority employees in her department.

21.     In or about December 1999, Ms. Dornfeld resigned and left Skadden Arps.

22.     During Ms. Dornfeld's absence, Mr. Jung was promoted.

23.     On or about October 7, 2002, Skadden Arps rehired Ms. Dornfeld, and she began to aggressively pursue a pattern of discrimination whereby she forced the resignation of minority employees, and began hiring Caucasian employees. This included, within a few months of her return to Skadden Arps, interviewing candidates for Mr. Jung's position.

24.     Following Ms. Dornfeld's return to Skadden Arps, Mr. Jung was never again promoted.

25.     Ms. Dornfeld made discriminatory decisions regarding performance evaluations, procedures for assigning work, and limited the opportunities for promotions to Mr. Jung and other racial minority employees in her department, including a number of Asian employees.

26.     Ms. Dornfeld, who is responsible for, among other things, preparing annual performance evaluations for employees, has routinely given minority employees, including Mr.

4

Jung, poor evaluations in an effort to "paper" their files for poor performance, thereby forcing their resignations.

27.    Ms. Dornfeld took this course of action so that she could hire Caucasian employees to replace the minority employees who were forced to resign.

28.    Ms. Dornfeld forced the resignation of a number of racial minority employees, such as Rosie Francis, Eugene Lam, and Violet Chan, and replaced them all with Caucasian employees.

29.    Ms. Dornfeld changed the evaluations of minority employees after their respective evaluations were submitted to her by other supervisors.

30.    Although these employees stated non-discriminatory reasons for their respective resignations, Ms. Dornfeld's discriminatory treatment toward them was a motivating factor in their decisions to leave Defendant Skadden Arps employment.

31.    Following her rehire by Defendant Skadden Arps, Ms. Dornfeld hired only Caucasian employees into Defendant Skadden Arps' Tax and Investment Department.

32.    Ms. Dornfeld also gave one direct peer of Mr. Jung's, a Caucasian, two raises within one year.  Skadden Arps' policy only allows for one raise per year.

33.    Upon information and belief, Ms. Dornfeld has never given two annual raises to a minority employee at Skadden Arps.

34.    Racial minority employees were often asked to work late while Caucasian employees were permitted to leave as normally scheduled.

35.    Ms. Dornfeld used abusive language toward Asian Americans, especially Mr. Jung, but did not use such language with Caucasian employees.  For example, Ms. Dornfeld

5

summoned Mr. Jung into her office in April 2003, and began yelling at him, stating in part, "What the fuck are you talking about? I don't understand what the fuck you just said."

36.     Mr. Jung never observed Ms. Dornfeld swearing at a Caucasian employee.

37.     Ms. Dornfeld made racially derogatory comments. For example, on or about February 17, 2003, following an office move to White Plains, Ms. Dornfeld was arranging desk assignments in the new office, and she stated, "I don't want to have Orientals and blacks sitting together because they will spend all day talking."

38.     Ms. Dornfeld completed Mr. Jung's 2003 performance evaluation, which was filled with comments implying that he was unskilled with or uncomfortable with the English language.

39.     An Asian American employee and an African American employee from other Skadden Arps departments sought to apply for two vacant positions in Mr. Jung's department. Neither employee was selected for the vacant positions, and the Asian American employee was told that taking the position would involve a reduction in salary, and he was discouraged from applying.

40.     As noted above, the Asian American employee did not fill the position, instead, a Caucasian, Linda Dromgoole ("Ms. Dromgoole") was hired and was paid an annual salary of $88,000, which would have been an increase in salary for the Asian American employee who had originally applied for the position.

41.     In another instance, an Asian American employee, Eugene Lam ("Mr. Lam") resigned in early 2004. At the time of his resignation he was earning approximately $65,000. Mr. Lam was replaced by a Caucasian female at a salary of approximately $85,000.

6

42. A Caucasian employee, despite insubordinate e-mails to Ms. Dornfeld and James Waters, was never disciplined, and instead, received good reviews in his annual evaluation.

43. Despite Skadden Arps's policy of strict adherence to established disciplinary action procedures, Mr. Jung was never given an initial warning for his alleged poor performance.

44. Mr. Jung received a negative performance evaluation in December 2003 from Defendant Skadden Arps's Human Resources Department, but contrary to their disciplinary action procedure, Defendant Skadden Arps failed to provide a memorandum of the disciplinary action until several months after the alleged complaint, and then only after Mr. Jung made several requests for the memorandum.

45. In an effort to appear to be in compliance with their disciplinary action procedure, Defendant Skadden Arps backdated the memorandum to December 11 2003.

46. In trying to understand the negative December 2003 performance evaluation, Mr. Jung spoke with Jim Waters ("Mr. Waters"), a recent hire who is Caucasian, and who eventually replaced Mr. Jung. Mr. Waters told Mr. Jung that the negative performance evaluation was "All Susan's [Dornfeld] doing."

47. In March 2004, Mr. Jung reported Ms. Dornfeld's discriminatory misconduct to Earle Yaffa ("Mr. Yaffa"), a managing director at Skadden Arps.

48. This action was in keeping with Defendant Skadden Arps's procedure for reporting workplace discrimination.

49. Mr. Yaffa failed to take any action, and the following month, in April 2004, Mr. Jung received a written warning concerning his performance.

50. Mr. Jung made several other reports of discrimination, but no action was taken.

7

51. In or about March 2004, the law firm of Sklover & Associates, predecessor counsel to Brendan Chao, communicated in writing with Defendant Skadden Arps, and informed them of Mr. Jung's complaints of racial discrimination.

52. Henry Baer, an of-counsel attorney to Skadden Arps, claims he investigated these complaints, but failed to speak to Mr. Jung or any of the other employees who had been discriminated against.

53. Other employees who are members of racial minorities complained of discrimination to Laura Henschel, the director of Human Resources at Skadden Arps, but she also failed to take any action.

54. Repeated criticism of Mr. Jung's performance, despite his previous satisfactory performance, as reflected in his previous performance evaluations, culminated in his dismissal on June 7, 2004.

55. Mr. Jung's dismissal had been planned for several weeks, with drafts of his dismissal papers written as early as May 26, 2004, perhaps sooner.

56. Toward the end of his employment with Skadden Arps, Skadden Arps attempted to force Mr. Jung to resign without receiving a promised relocation bonus. Upon information and belief, Skadden Arps did not try to withhold the relocation bonus of similarly situated Caucasian employees.

57. Based on the above facts, Mr. Jung believes that his race and national origin played an impermissible role in Skadden Arps's discriminatory treatment of him, and his reporting of the discriminatory conduct resulted in Skadden Arps's retaliatory termination of his employment.

8

58.    Mr. Jung also believes that Skadden Arps has participated in a pattern and practice of discriminating against members of racial minority employees, Asian Americans in particular.

59.    The reason or reasons given by Defendants for terminating Plaintiff's employment is/are a pretext for discrimination.

### FIRST CAUSE OF ACTION
(National Origin and Race
Discrimination Under Title VII)

60.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 as if separately set forth herein.

61.    At all relevant times, Plaintiff was an "employee" of Defendant Skadden Arps for purposes of Title VII.

62.    Plaintiff is Asian-American, and at all relevant times Defendant knew Plaintiff to be Asian-American of Korean descent.

63.    Upon information and belief, Defendant Skadden Arps is an "employer" for purposes of Title VII.

64.    Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

65.    Upon information and belief, Defendant Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

66.    Defendant Dornfeld's conduct, both to Plaintiff and to his minority co-workers, permeated Plaintiff's work environment with discriminatory harassment.

67.    This harassment detrimentally affected Plaintiff, and was sufficiently severe or

9

pervasive as to alter the terms and conditions of his employment and create a hostile, abusive working environment.

68.    The acts complained of herein also constitute a continuing violation because Skadden Arps had notice and knowledge of Defendant Dornfeld's harassment of Plaintiff but permitted it to continue unremedied for so long as to amount to a discriminatory policy or practice.

69.    Plaintiff reasonably took advantage of preventive and corrective opportunities provided by Skadden Arps by reporting Defendant Dornfeld's discrimination to several supervisors at Skadden Arps, as Skadden Arps had instructed him to do.

70.    Skadden Arps failed to exercise reasonable care to prevent and promptly correct Defendant Dornfeld's discriminatory behavior.

71.    Defendants' actions constitute discrimination against Plaintiff because of his national origin and race with respect to the terms, conditions, and privileges of his employment, in violation of Title VII.

72.    Upon information and belief, Defendants' discriminatory conduct was taken with malice and/or reckless indifference to Plaintiff's rights.  Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

73.    Any explanation given by Defendants for their conduct is a pretext for national origin and race discrimination.

## SECOND CAUSE OF ACTION
(National Origin and Race Discrimination Under
The New York State Human Rights Law)

74.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 as if separately set forth herein.

75.    At all relevant times, Plaintiff was an "employee" under § 292(6) of the New York State Human Rights Law.

76.    Upon information and belief, Defendant Skadden Arps is an "employer" under § 292(5) of the New York State Human Rights Law.

77.    Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

78.    Upon information and belief, Defendant Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

79.    Plaintiff is Asian American, and at all relevant times Defendants knew Plaintiff to be Asian-American of Korean descent.

80.    Throughout his employment with Defendant, Plaintiff was qualified for his position, and performed his duties in a professional and competent manner.

81.    Defendants discriminated against Plaintiff because of his national origin and race.

82.    Defendants' conduct toward Plaintiff constitutes willful discrimination on the basis of national origin and race in violation of § 296 of the New York State Human Rights Law.

83.    As a result of Defendants' discriminatory conduct, Plaintiff has suffered substantial damages, including emotional distress, and lost wages and benefits in an amount to be determined at trial.

11

## THIRD CAUSE OF ACTION
(National Origin and Race Discrimination in
Violation of New York City Human Rights Law)

84.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83 as if separately set forth herein.

85.    Plaintiff served a copy of the complaint in this action upon the New York City Commission on Human Rights and New York City Corporation Counsel prior to commencing this action.

86.    Plaintiff is a "person" under § 8-102(1) of the New York City Administrative Code.

87.    Upon information and belief, Defendants are both an "employer" and "covered entity" subject to the provisions of the New York City Human Rights Law under § 8-102(5) and (17) of the Administrative Code.

88.    Defendants violated the New York City Human Rights Law by discriminating against Plaintiff because of his national origin and race in the terms, conditions and privileges of his employment, as described more fully above.

89.    As a result of Defendants' unlawful discrimination, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

90.    Since Defendants' discriminatory actions against Plaintiff were taken with malice or reckless indifference to Plaintiff's statutory rights, Plaintiff also requests an award of punitive damages under the New York City Human Rights Law

## FOURTH CAUSE OF ACTION
(Retaliation Under Title VII)

91.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 90 as if separately set forth herein.

12

92.    At all relevant times, Plaintiff was an "employee" of Defendant Skadden Arps for purposes of Title VII.

93.    Upon information and belief, Defendant Skadden Arps is an "employer" for purposes of Title VII.

94.    Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

95.    Plaintiff reported the discrimination he faced to Mr. Yaffa, a managing director at Skadden Arps. Such reporting was the proper method for an employee of Skadden Arps in Mr. Jung's position to make a charge of discrimination, or to otherwise oppose unlawful discriminatory practices.

96.    Mr. Yaffa failed to take any action following Mr. Jung's complaint and, in fact, criticism of Mr. Jung increased and his performance evaluation scores decreased in the following months, leading to his termination of employment in June 2004. .

97.    Plaintiff engaged in protected activity under Title VII by (1) personally asserting that he was being discriminated against; and (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

98.    Defendants treated Plaintiff differently in retaliation for Plaintiff's reporting Defendants' discriminatory acts.

99.    Defendants' actions constitute retaliation against Plaintiff because of his opposition of unlawful employment practices and because of his making a charge of such discrimination, both in violation of Title VII.

100.    Upon information and belief, Defendants' retaliatory conduct was taken with

13

malice and/or reckless indifference to Plaintiff's rights. Plaintiff also requests an award of punitive damages, in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Retaliation Under Under The New York State Human Rights Law)

101.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 100 as if separately set forth herein.

102.    At all relevant times, Plaintiff was an "employee" under § 292(6) of the New York State Human Rights Law.

103.    Upon information and belief, Defendant Skadden Arps is an "employer" under § 292(5) of the New York State Human Rights Law.

104.    Defendant Dornfeld had the authority to alter the terms, conditions and privileges of Plaintiff's employment, for example by disciplining him for alleged poor performance.

105.    Upon information and belief, Defendant Dornfeld did in fact alter the terms, conditions and privileges of Plaintiff's employment.

106.    Plaintiff engaged in protected activity under the New York State Human Rights Law by (1) personally asserting that he was being discriminated against; (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

107.    By its actions in terminating Plaintiff's employment, Defendants have retaliated against Plaintiff in violation of the New York State Human Rights Law, §296(1)(e).

108.    As a result of Defendants' actions, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be

determined at trial.

### SIXTH CAUSE OF ACTION
(Retaliation Under The New York
City Human Rights Law)

109.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 108 as if separately set forth herein.

110.    Plaintiff is a "person" under § 8-102(1) of the New York City Administrative Code.

111.    Upon information and belief, Defendants are both an "employer" and "covered entity" subject to the provisions of the New York City Human Rights Law under § 8-102(5) and (17) of the Administrative Code.

112.    Plaintiff engaged in protected activity under the New York City Human Rights Law by (1) personally asserting that he was being discriminated against; (2) asserting through his attorney, both orally and in writing, that he was being discriminated against because of his national origin and race.

113.    By its actions in terminating Plaintiff's employment, Defendants have retaliated against Plaintiff in violation of the New York City Human Rights Law, §8-107(7).

114.    As a result of Defendants' actions, Plaintiff has suffered substantial damages, including but not limited to emotional distress and lost wages and benefits, in an amount to be determined at trial.

115.    Defendants' actions were taken with reckless indifference to Plaintiff's rights, entitling him to punitive damages under the New York City Human Rights Law.

WHEREFORE, Plaintiff demands judgment as follows:

A.    On the First, Third, Fourth, and Sixth Causes of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, all in amounts to be determined at

15

trial, as well as attorneys' fees, costs and interest, and an Order directing Skadden Arps to cease and desist from its discriminatory practices

B.    On the Second and Fifth Causes of Action, back pay and benefits and front pay and benefits, plus compensatory damages, all in amounts to be determined at trial, as well as costs and interest, and an Order directing Skadden Arps to cease and desist from its discriminatory practices;

C.    Such other and further relief as the Court deems appropriate under the circumstances.

Dated: April 27, 2005
       New York, New York

                                        BRENDAN CHAO, ESQ.

                                        By:
                                        Brendan Chao (BC 8811)
                                        Attorney for Plaintiff
                                        230 Park Avenue
                                        New York, New York 10169
                                        (212) 867-4753

16

# EXHIBIT B

EEOC FORM 131 (5/01)

# U. S. Equal Employment Opportunity Commission

|  | PERSON FILING CHARGE |
|---|---|
| ⌐ SKADDEN ARPS SLATE MEAGHER & FLOM<br>Personnel Director<br>4 Times Square<br>New York, NY 10036 ⌐ | **Jonathan Jung** |
|  | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
|  | EEOC CHARGE NO.<br>**160-2005-00082** |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **04-NOV-04**    a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by                    to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **04-NOV-04** to    **Michael Bertty, ADR Coordinator, at (212) 336-3646** If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

**Michael Bertty,**
**ADR Coordinator**

_____
EEOC Representative

Telephone:    **(212) 336-3646**

**New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

Enclosure(s): [X] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [X] RETALIATION  [ ] OTHER .

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| Oct 14, 2004 | **Spencer H. Lewis, JR,**<br>**Director** |  |

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA  ☒ EEOC | ICO-2005-00082 |
| | | and EEOC |

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Jonathan Jung | (914) 960-9105 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 33 West Hardwood Terrace | Palisades Park, NJ 07650 | 1/10/68 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Skadden, Arps, Slate et al | Hundreds | (212) 735-3147 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 4 Times Square | New York, N.Y. 10036 | New York |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN ☒ RETALIATION ☐ AGE ☐ DISABILITY ☒ OTHER (Specify) Equal Pay | EARLIEST February 2003, LATEST June 200_  ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please see attached document.

RECEIVED
OCT 1 2 2004
EEOC ... FORCEMENT

BRENDAN CHAO, ESQ.
Notary Public State of New York
No. 02CH6070209
Commission Expires 7/25/06

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) 6/15/04 |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 6/15/04  Date  *Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month and year) 6/15/04 |

EEOC FORM 5 (REV. 3/01)

# CHARGE OF DISCRIMINATION

### *Jonathan W. Jung v. Skadden, Arps, Slate, Meagher & Flom*

1.  I am an Asian-American male.

2.  On or about September 8, 1998, Skadden Arps Slate Meagher & Flom ("Skadden Arps") hired me as a Tax Coordinator, and on October 1, 2001, Skadden Arps promoted me to International Tax Supervisor.

3.  My responsibilities included: managing and overseeing quarterly tax payments for the international partners, advising attorneys on the guidelines, policies, costs, and compliance on various tax issues, and managing Skadden Arp's expatriate tax issues.

4.  Skadden Arps is a large law firm employing several thousand employees in several countries, including the United States.

5.  Throughout my employment with Skadden Arps I have been qualified for my position, and performed my duties in a professional and competent manner.

6.  Beginning in February 2003, I began to experience discrimination based on my race and national origin. This culminated with the termination of my employment in retaliation for a number of complaints I made concerning discrimination in the workplace.

7.  By way of non-exhaustive examples, my supervisor, Susan Dornfeld ("Ms. Dornfeld"), a Caucasian, provided technology allowances to other Caucasian employees in my department, but not to me. The technology allowance included new computers, software, and hardware peripherals.

8.  Ms. Dornfeld routinely recommended higher bonuses and raises for Caucasian employees in my department while giving lower bonuses and raises to me and other minority employees, including Asian Americans.

9.  Ms. Dornfeld has denied promotions to both me and other minority employees in my department.

10.  Ms. Dornfeld, who is responsible for preparing annual evaluations for employees, has routinely given minority employees poor evaluations in an effort to "paper" their files and force their resignations.

11.  Ms. Dornfeld has made racially derogatory comments, for instance, following an office move to White Plains, Ms. Dornfeld, while assigning seating arrangements, stated, "I don't want to have Orientals and blacks sitting together because they will spend all day talking."

CHAO & EDELSON                    2

12.    In January 2000, Ms. Dornfeld resigned her position and left Skadden Arps. In November 2002, Skadden Arps rehired Ms. Dornfeld, and she set upon a course of "whitening" her staff.

13.    Ms. Dornfeld forced the resignation of a number of minority employees, e.g. Rosie Francis, Eugene Lam, and Violet Chan, and replaced them with Caucasian employees. During her current tenure as Treasurer, Ms. Dornfeld has hired only Caucasian employees.

14.    On one occasion, an Asian American employee from another department sought to apply for a vacant position in my department. The Asian American employee was told that taking the position would involve a reduction in salary, and he was discouraged from applying. The Asian American employee did not fill the position, instead, a Caucasian, Linda Dromgoole, was hired and was paid an annual salary of $88,000, which would, in fact, have constituted a raise for the Asian American employee had he been accepted for the position.

15.    Ms. Dornfeld used abusive language toward Asian Americans, Mr. Jung in particular, but did not use such language with Caucasian employees. For instance, Ms. Dornfeld summoned Mr. Jung to her office in the spring of 2003 and began yelling at Mr. Jung, "What the fuck are you talking about? I don't understand what the fuck you just said."

16.    In March 2004, Mr. Jung reported Ms. Dornfeld's misconduct to Earle Yaffa ("Mr. Yaffa"), a managing director at Skadden Arps. Mr. Yaffa failed to take any action, and the following month, Mr. Jung received a written warning concerning his performance.

17.    Repeated criticism of Mr. Jung's performance, despite his previous satisfactory performance as reflected in his performance evaluations, culminated in his dismissal on June 7, 2004.

18.    Based on the above facts, I believe that my race and national origin played an impermissible role in Skadden Arps's discriminatory treatment of me, and in its retaliatory termination of my employment.

19.    I also believe that Skadden Arps has participated in a pattern and practice of discriminating against minorities, specifically Asian Americans.

20.    For the foregoing reasons, I seek an award of lost benefits, compensatory damages, liquidated damages, attorneys' fees and costs, and an order directing Skadden Arps to cease and desist from its discriminatory practices, together with any further and additional relief that this administrative agency deems just and proper. This does not constitute a filing under New York State law, or with the New York State Division of Human Rights.

21.    I provide the foregoing information to assert my rights under Title VII to invoke the jurisdiction of the EEOC to investigate this Charge and proceed in accordance with its statutory mandate and procedural regulations, and to satisfy all procedural prerequisites to the

CHAO & EDELSON                    3

commencement of a civil action in the event that this Charge is not resolved by conciliation, conference, and persuasion. Nothing in this Charge is intended to constitute a waiver of any right to seek judicial relief under state or local law with respect to the conduct complained of hereinafter.

22.    I will advise the EEOC of any change in my address and telephone number, and I will cooperate in the proper processing of, and investigation into, this charge. Please direct all communications and inquiries regarding this matter to Brendan Chao, Esq. of Chao & Edelson L.L.C., 230 Park Avenue, New York, New York 10169, (212) 867-4753.

EXHIBIT C

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Mr. Jonathan Jung**<br>**33 West Hardwood Terrace**<br>**Palisades Park, NJ 07650** | From: **Equal Employment Opportunity Commission**<br>**New York District Office**<br>33 Whitehall Street, 5ᵗʰ Floor<br>New York, New York 10004-2112 |

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **160-2005-00082** | **Legal Unit** | (212) 336-3721 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statute(s).

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____          1/27/05
Spencer H. Lewis, Jr., District Director          *(Date Mailed)*

Enclosure(s)

cc:    **Respondent: Skadden, Arps, Slate, Meagher &**
       **Flom LLP**

       **Attorney for Mr. Jung: Brendan Chao, Esq.**

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a private lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. New York State has four federal districts:

- The **United States District Court for the Southern District of New York** is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester.

- The **United States District Court for the Eastern District of New York** is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk.

- The **United States District Court for the Western District of New York** is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates.

- The **United States District Court for the Northern District of New York** is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneinda, Onandaga, Oswego, Otsego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *pro Se* Attorney has offices at 10 Broad Street in Utica New York.

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit **must** be filed in U.S. District Court within __90 days__ of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

(Over)

# DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

## WHAT IF I WANT A LAWYER BUT I CAN'T AFFORD ONE?

If you can't afford a lawyer, the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You must file papers with the court requesting the appointment of counsel. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel. The appointment of counsel in any *pro se* complaint is always at the discretion of the court.

Generally, the U.S. District Court charges a $120.00 filing fee to commence a lawsuit. However, the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

## HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

American Bar Association                          New York State Bar Association
(312) 988-5522                                   (800) 342-3661

National Employment Lawyers Association Referral Service
(212) 819-9450

Your County, City, or Municipal Lawyers or Bar Association may also be of assistance.

## HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge file to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. **If You File Suit, You or Your Attorney Should Also Notify this Office When the Lawsuit is Resolved.**