# TAB E

Dockets.Justia.com

Not Reported in F.Supp.

1994 WL 184670 (S.D.N.Y.)

(Cite as: 1994 WL 184670 (S.D.N.Y.))

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Richard Hall LIGHTFOOT, Plaintiff,
v.
UNION CARBIDE CORPORATION, A.W. Lutz,
President, Industrial Chemicals Division
and W.E. Shackleford, Vice President, Industrial
Chemical Division, Defendants.
**No. 92 Civ. 6411 (RPP).**

May 12, 1994.
Wisehart & Koch, New York City, for plaintiff.

Mudge Rose Guthrie Alexander & Ferdon, by Joel
Cohen, New York City, for defendants.

ORDER AND OPINION

ROBERT P. PATTERSON, Jr., District Judge.

*1 Defendants, Union Carbide, A.W. Lutz and
W.E. Shackelford move for an order pursuant to
Fed.R.Civ.P. 56(b) granting summary judgment to
defendants, dismissing plaintiff's amended
complaint which contains seven counts and
awarding defendants attorneys' fees and costs.
Plaintiff, Richard Lightfoot, moves for an order
granting partial summary judgment for plaintiff on
Counts I, II, III and V of his amended complaint.
Plaintiff also moves to strike the affidavit of Joel E.
Cohen, Esq. sworn to July 9, 1993 and a letter dated
December 3, 1992 from the record, for further
discovery pursuant to Fed.R.Civ.P. 56(f), for
sanctions against defendants pursuant to
Fed.R.Civ.P. 11, and for an award of attorneys' fees
and costs in plaintiff's favor. Each of these
requests will be discussed in turn.

*I. BACKGROUND FACTS*

In 1959, Plaintiff Richard Lightfoot accepted a
position at Union Carbide Corporation ("Carbide")
as a Chemical Engineer. Shortly after beginning
his employment with Carbide plaintiff signed a
Memorandum of Employee's Agreement. In the
Agreement plaintiff assigned to Carbide all rights to
any invention in which he was involved during the
course of his employment. In 1968, plaintiff was
transferred to Carbide's New York City
headquarters. In 1980, plaintiff was relocated from
Carbide's New York City office to Carbide's new
headquarters in Danbury, Connecticut. He
continued to reside in New York City. In 1986,
Plaintiff signed a second Memorandum of
Employee's Agreement assigning Carbide his rights
to his inventions. Wisehart Aff. submitted pursuant
to local rule 3(g), at ¶¶ 1, 2, 4, 6.

In the 1980's, plaintiff held a variety of positions
including Special Projects Manager and Marketing
Manager for Surfactants. *Id.* at ¶ 5. On April 27,
1992, plaintiff was terminated from Carbide as part
of a reduction in force program. He rejected the
enhanced severance benefits offered by the program
and instead received full pay as severance until
February 1993. On December 3, 1992, Carbide
made an offer to reinstate plaintiff to his former
position; plaintiff rejected this offer. Cohen Aff.,
Exhs. G & H. In February 1993, plaintiff accepted
a position with CRI, Inc. a consulting firm in the
Chemical industry. *Id.* at ¶¶ 12, 14-16.

*II. APPLICABLE LEGAL STANDARD*

Summary judgment is appropriate if the evidence
offered demonstrates that there is no genuine issue
as to any material fact and the moving party is
entitled to judgment as a matter of law. *Anderson v.
Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The
burden rests on the moving party to demonstrate the
absence of a genuine issue of material fact, *Adickes*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

*v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

*III. PLAINTIFF'S NEW YORK STATE AND FEDERAL AGE DISCRIMINATION CLAIMS*

Defendants contend that they should be granted summary judgment as to Counts I and III of the amended complaint, plaintiff's federal and New York State age discrimination claims, because plaintiff cannot meet his burden of showing that age was a determinative factor in his dismissal. [FN1] In order to prove discrimination based on age "[t]he plaintiff has the burden of proving that 'age was the 'determining factor' in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged.' " *Pena v. Battleboro Retreat,* 702 F.2d 322, 323 (2d Cir.1983) (citation omitted). Defendants rely on plaintiff's deposition testimony in which he ascribed his termination to the jealousy, self-interest and competitive attitude of his immediate supervisor to support their motion for summary judgment.

**\*2** Plaintiff urges utilization of the *McDonnell Douglas,* [FN2] analysis of the evidence:

In order to establish a prima facie case of termination of employment in violation of the ADEA, a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the job, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination.

*Stetson v. NYNEX Service Co.,* 995 F.2d 355, 359 (2d Cir.1993). "If a prima facie case is established, the employer must offer a legitimate, nondiscriminatory reason for its actions." *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1155 (2d Cir.1993). If the employer presents such a reason the burden is on the plaintiff to show that the proffered reason was pretext for discrimination. *Id.*

Under the *McDonnell Douglas* test Lightfoot has established the first three elements of a prima facie

case because he: 1) was in the protected age group, 2) was qualified for the job he held and 3) was discharged.

Defendants and plaintiff dispute whether the evidence shows that plaintiff's discharge occurred under circumstances that give rise to an inference of discrimination. Plaintiff was discharged as a result of a reduction in force at Carbide under a program called the "Enhanced Separation Program." [FN3] To effectuate this reduction of force supervisors at Carbide "forced-ranked" employees within a group to determine which employee should be terminated. The "Forced-ranking" system involved weighing the following factors: ability, effectiveness, versatility, value to continuing business operation, uniqueness, company service and reassignment potential. In plaintiff's case it was applied to a group of 13 employees of which Lightfoot was the oldest. Lightfoot Aff. in Opposition to Summary Judgment, Exhs. E and I. Plaintiff's main contention is that a report on the forced-ranking session in which Carbide made the decision to terminate him shows that age played a factor in his termination because the document contains the dates of birth of the employees forced-ranked and because plaintiff, the oldest person ranked, was terminated rather than a person under 40 who received an equal ranking. Lightfoot Aff. in Opposition to Summary Judgment, Exh. E. Plaintiff also bases his argument on a written comment and a non-verbal response (a look) by Mr. Shackelford, his superior, when plaintiff informed him that plaintiff intended to work until age 70. Lightfoot Aff. in Opposition to Summary Judgment, Exh. C. [FN4] The comment was made two years before plaintiff was terminated and on its face does not give rise to an inference of discrimination based on age. *See Moore v. Eli Lilly & Co.,* 990 F.2d 812, 818 (5th Cir.1993), *cert. denied,* 114 S.Ct. 467 (1993) (supervisor's inquiry into employee's retirement plans after learning employee's age did not represent a discriminatory intent, but was a reasonable inquiry regarding employee's longevity). The look by Shackelford could be open to various interpretations.

**\*3** Since plaintiff was the oldest employee, plaintiff's termination due to the forced-ranking

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

procedure instead of an equally ranked younger employee gives rise to an inference of discrimination based on age. Here, however, plaintiff testified expansively during his deposition as to his conclusion that Mr. Shackelford's self-interest and competitiveness with plaintiff were the cause of plaintiff's termination from Carbide. Cohen Aff., Exh. C, Lightfoot Dep. at 122-25, 166-170. Plaintiff attempts to rebut defendants' use of his deposition testimony by directing the Court to other portions of his deposition testimony in which he stated that the treatment he received at Carbide was due to age discrimination, and that he thought Mr. Shackelford was discriminating against him on the basis of age. [FN5] Lightfoot Aff. in Opposition to Summary Judgment, Exh. L, pp. 22-26, 163. Both excerpts are conclusions of plaintiff reached after his discharge, as is the plaintiff's testimony about Shackelford's self-interest and competitiveness.

Under these circumstances, where plaintiff's deposition testimony states more than one possible motivation for his employer's decision to terminate him, plaintiff's complaint must be examined as arising out of mixed motivation and *Price Waterhouse v. Hopkins,* 109 S.Ct. 1775 (1989) applies. In *Price Waterhouse,* the Supreme Court held that:

> An employer may not ... prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision.... The employer instead must show that its legitimate reason, standing alone, would have induced it to make the same decision.

*Id.* at 1791-92.

In this case Carbide's papers fail to set forth a legitimate and sufficient reason for its decision to terminate plaintiff, instead defendants rely on plaintiff's conclusory statements as to Shackelford's self-interest and competitiveness. Thus Carbide has failed to show that its legitimate reasons for terminating plaintiff standing alone would have induced it to make the decision to terminate plaintiff. Accordingly, summary judgment is inappropriate because an inference of age

discrimination has been raised by the termination of plaintiff, the oldest member of the group of employees evaluated, rather than the equally-ranked younger employee in the group. Accordingly, genuine issues of material fact remain regarding Carbide's motives for terminating plaintiff. Defendants' motion for summary judgment on plaintiff's ADEA and New York State Human Rights claims is denied. [FN6]

*IV. THE LETTER OF REINSTATEMENT*

In a December 3, 1992 letter to plaintiff Mr. Shackelford of Carbide made an unconditional offer to reinstate plaintiff to his prior position as market manager. Cohen Aff., Exh. G. Plaintiff responded to the letter through his counsel. Cohen Aff., Exh. H. In the response letter and in his motion papers plaintiff contends that the letter was an improper violation of Disciplinary Rule 7-104(a)(1) and that it should be stricken from the record pursuant to Fed.R.Evid. 408 because it was an offer of compromise.

*4 In *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 241 (1982), the Supreme Court held that "absent special circumstance, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." The letter in this case was sent by Mr. Shackelford on Carbide letterhead explaining that because another marketing manager had resigned Carbide was offering Mr. Lightfoot his old job back. The letter also stated that "*[t]his offer is unconditional.*" Because plaintiff had received full pay as severance and continued to receive such pay after he received the offer Carbide contends that plaintiff is entitled to no backpay.

Plaintiff argues that the letter is "bogus" and is inadmissible evidence. Plaintiff's first objection is that the letter was sent directly to Mr. Lightfoot at a time when he was represented by counsel in violation of DR 7- 104(a)(1). [FN7] Although the letter was not sent by defendant's counsel to Mr. Lightfoot, plaintiff contends that "[t]he contents of the Shackelford letter are such as to indicate that it must have been sent with the prior knowledge or consent of counsel for the defendants...." Pl. Mem.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

in Support of Summary Judgment, p. 10. Despite plaintiff's presumption the evidence does not show that any disciplinary rule has been broken. At his deposition Mr. Shackelford testified that it was his idea to offer Mr. Lightfoot his job back after another employee decided to leave Carbide. Shackelford then conferred with Mr. Lawlor, Carbide's inside counsel, about whether he could offer Mr. Lightfoot the job and showed Lawlor a draft of the letter. Shackelford also testified that the language of the letter, particularly the term "unconditional," came from him. Shackelford Dep., pp. 26-46. Thus the November 1992 letter was not a violation of DR 7-104(a) because no evidence has been elicited that an attorney sent the letter or caused the letter to be sent. [FN8]

Plaintiff argues that the letter was an offer of compromise and is inadmissible under Fed.R.Evid. 408. However, plaintiff does not show any circumstances which would make the letter an offer of compromise and the letter on its face is unconditional and does not require Lightfoot to compromise his claims against the defendants. Although plaintiff's counsel's response to the offer by Carbide refers to settlement negotiations, there is no evidence that the offer letter was sent as part of those settlement negotiations; rather Mr. Shackelford testified that the idea to send the letter stemmed from a vacancy in his department and his thought that plaintiff could fill the position. Moreover, by the terms of the letter plaintiff was not required to drop his claims against defendants. Thus Fed.R.Evid. 408 is not a bar to the admission of the letter as an offer of compromise.

Plaintiff also contends that the letter does not end Carbide's backpay liability because the offer was not unconditional since it was predicated on Mr. Lightfoot having to accept or reject the letter by a certain date, it did not offer plaintiff increased benefits to which he claims he was entitled and because the job he was offered could not be the same because most of the people he worked with were no longer in the group. Although these may be deemed conditions, an offer for reinstatement is considered "unconditional" if the job offered is substantially equivalent to the position that the

employee claims to have been wrongfully terminated from and if the employee does not have to drop his legal claims against the employer. *See Ford,* 458 U.S. at 232. The letter sent by Carbide to Lightfoot is an unconditional offer of reinstatement and serves to cut off Carbide's backpay liability. *See Ford.* Although plaintiff may pursue his federal and New York State age discrimination claims he cannot recover damages for lost wages because he continued to receive full pay as a severance benefit after he was offered his job back. Summary judgment is granted in the defendants' favor in all causes of actions as to Carbide's liability for backpay.

*V. NEW YORK CITY HUMAN RIGHTS LAW CLAIM*

**\*5** Defendants contend that plaintiff's claim under the New York City Human Rights law must be dismissed because plaintiff has failed to allege that his complaint was filed with the New York City Commission on Human Rights or with the New York City Corporation Counsel prior to the commencement of this action and because there are no allegations that the defendants intentionally discriminated against him within the boundaries of New York City. Plaintiff argues that the New York City Human Rights Law should extend to his claim because he was living in New York City and performed work at home occasionally and because Carbide still has some offices in New York City. Plaintiff also alleges that the Early Separation Program adopted by Carbide was approved at a meeting in New York City. Its impact on him, however, occurred while he was employed in Connecticut. Lightfoot Aff. in Opposition, ¶¶ 265-266, 269-274.

Although plaintiff argues that summary judgment should not be granted in defendant's favor because he has "duly" filed his complaint with the New York City Commission on Human Rights or the New York City Corporation Counsel, he has not testified that he filed his complaint prior to commencing this civil action or provided the Court with an exhibit to support his claim that his complaint was filed prior to commencing this civil

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

action as required under the City Law. *Lightfoot Aff.* in Opposition to Summary Judgment at ¶ 267; *see* New York City Administrative Code § 8-502. Moreover, plaintiff does not allege that defendants intentionally discriminated against him within the boundaries of New York City and the jurisdiction of the New York City Human Rights Commission does not extend to Connecticut. *See* N.Y.Gen.Mun.Law § 239-s; N.Y.C.Admin.Code § 2-201. Accordingly, summary judgment is granted in the defendants' favor on plaintiff's New York City Human Rights claim and Count II of plaintiff's amended complaint is dismissed.

*VI. PLAINTIFF'S ERISA CLAIM*

Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, provides that "[i]t shall be unlawful for any person to discharge ... a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."

Plaintiff maintains that he has an ERISA claim against Carbide because there is a causal link between his discharge and the diminution of his pension benefits. Plaintiff has presented no evidence to show that his discharge was motivated by Carbide's desire to lessen his pension benefits. Plaintiff cites *Turner v. Schering-Plough Corp.,* 901 F.2d 335 (3d Cir.1990), for the proposition that the reduction of benefits resulting from plaintiff's termination could reasonably be viewed as a motivating factor in his discriminatory treatment. However, in *Turner,* the Third Circuit did not find that a plaintiff's mere allegations that his benefits were reduced to be sufficient evidence to support a claim for discrimination under ERISA. In fact, the Third Circuit stated:

**\*6** As we have noted, Turner's discharge did not deprive him of his pension. All Turner has shown is that his termination deprived him of the opportunity to accrue additional benefits through more years of employment. This kind of deprivation occurs whenever an ERISA employer discharges an employee and is not alone probative of an intent to interfere with pension

rights.
*Id.* at 348. The court in *Turner* held that under the circumstances surrounding Turner's discharge Turner had not established a *prima facie* case of discrimination based on ERISA and that summary judgment was properly granted to the employer. Similarly, here plaintiff has only shown that his potential pension benefits were diminished by his termination, and although the court in *Turner* acknowledged that a plaintiff might be able to establish a *prima facie* case of ERISA discrimination if the reduction of pension benefits were substantial this is not such a case. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1117 n. 1 (2d Cir.1988) ("[the Second Circuit's opinions] cannot be read to mean that mere cost savings and proximity to benefits are sufficient *per se* to create a genuine issue of fact requiring a trial."). Lightfoot's pension benefits have already vested and although his discharge resulted in his being unable to accrue further benefits, plaintiff has not presented any evidence that this was a motivating factor in his discharge. Indeed he was offered the opportunity to accrue additional benefits and chose not to do so when he rejected Shackelford's offer of reinstatement. Accordingly, summary judgment on plaintiff's ERISA claim is granted in defendants' favor and Count VI of the amended complaint is dismissed. [FN9]

*VII. BREACH OF CONTRACT CLAIM*

Plaintiff contends that Connecticut law should be applied to his breach of contract claim because under New York law the law of the state where the contract is to be performed applies, and in this case Carbide's office was located in Connecticut. *See Bergstein v. Jordache Enterprises, Inc.,* 767 F.Supp. 535, 541 (S.D.N.Y.1991); *Babcock v. Jackson,* 240 N.Y.S.2d 743 (1963). Defendants argue that plaintiff's claim fails under either Connecticut or New York law.

Plaintiff maintains that the contract he entered into with Carbide provided that he could be terminated only if he failed to perform adequately. However, the two Memorandums of Employee's Agreement that he signed with Carbide expressly provide that:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

"[t]his agreement does not, of course, bind either party to any specific period of employment." Cohen Aff., Exh. D and E. Plaintiff maintains that he had a lifetime employment agreement with Carbide but does not give specifics, rather stating that Carbide represented to him that he had a life-time position with the company. Lightfoot Aff. at ¶¶ 239- 247. Under Connecticut law these allegations are insufficient to defeat a summary judgment motion when employment was at will.

*7 "In Connecticut, an implied employment contract may arise under the doctrine of promissory estoppel, where injustice to a promisee who has acted in reliance can be avoided only by enforcement of 'a clear and definite promise which a promisor could reasonably have expected to induce reliance.' " *Manning v. Cigna Corp.,* 807 F.Supp. 889, 895 (D.Conn.1991) (citation omitted). In *Manning,* the court granted summary judgment to the employer on the plaintiff's implied contract claim because the plaintiff could not provide any evidence "to support his unilateral understanding of an implied employment contract on the issue of discharge." *Id.* at 896. *See Anderson v. Coca Cola Bottling Co. of New York, Inc.,* 772 F.Supp. 77 (D.Conn.1991); *Johnson v. Carpenter Technology Corp.,* 723 F.Supp. 180 (D.Conn.1989). In this case plaintiff does not point to any clear and definite promise which was made to him by Carbide. The lack of a clear and definite promise of lifetime employment combined with the two Memorandums of Employee's Agreement which plaintiff signed support the conclusion that plaintiff's employment was terminable at will. New York law does not differ. *See Cucchi v. New York City Off-Track Betting Corp.,* 818 F.Supp. 647, 653 (S.D.N.Y.1993); *Sabatey v. Sterling Drug, Inc.,* 514 N.Y.S.2d 209 (1987). Accordingly, Count IV of the amended complaint is dismissed and summary judgment as to plaintiff's implied contract claim is granted in the defendants' favor.

*VIII. QUANTUM MERIT*

In his complaint plaintiff alleges that he has a claim in quantum meruit against Carbide because of his participation in the making of inventions at Carbide.

Defendants contend that plaintiff's claim for quantum meruit fails as a matter of law.

In order to make out a claim in *quantum meruit,* the plaintiff must establish performance of his services in good faith, acceptance of the services by the persons to whom such services were rendered, expectation of compensation, and the reasonable value of such services.

*Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.,* 773 F.Supp. 632, 640 (S.D.N.Y.1991) (citing *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transport.,* 567 N.Y.S.2d 404, 404 (1st Dept 1991)).

Defendants contend that plaintiff has not established that he had a reasonable expectation of compensation for his role in developing the inventions. Plaintiff argues that he has shown as required by New York precedent that the services he provided by participating in the inventions were "so distinct from the duties of his employment and of such a nature that it would be unreasonable for the employer to assume that they were rendered without expectation of further pay." *Robinson v. Munn,* 238 N.Y. 40, 43 (1924). [FN10] However, during his deposition plaintiff testified that:

It was everything that the marketing manager's job was to do. I mean our whole role.... Our reason for existence, reason for this huge--not just me but there was 100 odd marketing people, maybe 10 marketing managers, probably 300 R & D involved in this effort, the whole reason was to develop new products, new product lines.

*8 Lightfoot Dep. at 97.

Mr. Lightfoot also testified that although his job included the development of new products he would not develop all new products, just those related to surfactants, the group for which he was a marketing manager.

My job was new products and surfactants and I was just bending my talents to it the best way I knew to make the best for the company but not outside surfactants. Now, I don't recall any particular product coming out that was outside surfactants. I will say this, if we came up with an idea that was outside surfactants, again, I have no recollection of that, I would have made it my

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

duty, my business to get the right people somewhere within Carbide both R & D and commercial people to alert them of the idea. I wouldn't do more than alert them of the idea.
Lightfoot Dep. at 75.

In an August 26, 1992 sworn declaration to the United States Patent and Trademark Office regarding one of the inventions at issue, plaintiff asserted:

That I was not employed or assigned to perform research, development, or exploration work, but the invention is nevertheless related to the work or duties I was employed or assigned to perform;

That the invention was made during working hours and with the use of the facilities, equipment, materials, funds, information and services of Union Carbide Chemicals and Plastics Company, Inc.;

Cohen Aff., Exh. F, p. 2. This declaration by plaintiff, the provisions of the two Memorandums of Employee's Agreement in which plaintiff agreed to assign all his inventions to Carbide and his deposition testimony all establish that plaintiff's participation in the development of the inventions was not so far outside of the scope of his employment so that Carbide would have to provide extra compensation for those services.

Although plaintiff claims that Carbide should have known that the work plaintiff performed in terms of the inventions entitled him to additional compensation, plaintiff has submitted no evidence that he was promised or asked for anything more than consideration for a promotion. [FN11] Summary judgment in defendants' favor is granted with regards to plaintiff's *quantum meruit* claim based on his contributions to inventions and new products at Carbide.

*IX. UNJUST ENRICHMENT*

Unjust enrichment is a quasi-contractual claim which allows a party to recover to prevent another party from being unjustly enriched at his expense. *Bradkin v. Leverton,* 309 N.Y.S.2d 192, 196 (1970) ; *Connecticut Nat'l Bank v. Chapman,* 216 A.2d 814, 817-18. Count VI of plaintiff's verified

amended complaint asserts a claim for unjust enrichment due to plaintiff's participation in the inventions. Defendants argue that plaintiff's claim for unjust enrichment fails as a matter of law because Carbide was entitled to any benefits that Carbide received from plaintiff's participation in the inventions by virtue of the two Memorandums of Employee's Agreement which plaintiff signed.

*9 In 1959, plaintiff signed a Memorandum of Employee's Agreement, in which he agreed that:

In consideration of my employment by Union Carbide Corporation ... I agree.... [t]o assign to Union Carbide Corporation all inventions made by me, alone or jointly with others, in the course of such employment, relating to the business of the Corporation or resulting from tasks specifically assigned to me by the Corporation.

Cohen Aff., Exh. D. In 1986, plaintiff signed another Memorandum of Employee's Agreement with the same provision. Cohen Aff., Exh. E. Nevertheless plaintiff claims that "Carbide has been unjustly enriched by receiving the benefit of new product lines and inventions developed by plaintiff pursuant to its requests." Complt. at ¶ 141. Plaintiff contends that because his employment was terminated that the non-occurrence of the condition precedent that he be employed discharged his duty to assign under the terms of the employment agreement. However, plaintiff was employed by Carbide for 33 years, thus the condition precedent that he be employed by Carbide occurred and plaintiff is obliged to assign the rights to the inventions he made during the course of his employment to Carbide.

Plaintiff cites to *Eenkhoorn v. New York Tel. Co.,* 514 N.Y.S.2d 160 (1st Dept.1987), claiming that Carbide is not entitled to summary judgment because issues of fact exist as to whether the company has been unjustly enriched. *Eenkhoorn* is distinguishable from this case because in *Eenkhoorn* there was no agreement between the employee and the employer pertaining to the development of ideas. Thus questions of fact existed as to whether the company had a policy of remunerating employees for suggestions and as to whether the company had been unjustly enriched by using the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

employee's ideas. *Id.* at 161. In this case there is an agreement between the employee and the employer as to the assignment of inventions, and plaintiff has presented no proof whatsoever that Carbide had a policy of paying employees for new inventions. Accordingly, Count V of plaintiff's amended complaint is dismissed and defendants are granted summary judgment on plaintiff's unjust enrichment claim.

*X.    TORTIOUS    INTERFERENCE    WITH CONTRACT CLAIM*

Defendant Shackelford seeks to dismiss plaintiff's claim against him for tortious interference with contract because the venue is improper and because it fails as a matter of law. Plaintiff contends that the venue is proper under Section 7(c)(1) of the ADEA (29 U.S.C. § 626(c)), and that the defendants have waived their venue objections under Fed.R.Civ.P. 12(h)(1).

28 U.S.C. 1391(b) provides in relevant part:
  A civil action ... may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
Venue in this district is inappropriate under Section 1391(b)(1) because at the time the suit was commenced defendant Shackelford was a resident of Connecticut, defendant Lutz was a resident of the State of New York and Carbide (for the purposes of this motion) was both a resident of New York and Connecticut. Since a substantial portion of the acts or omissions giving rise to plaintiff's cause of action for tortious interference with contract occurred in Connecticut, plaintiff's place of employment, venue in Connecticut would be appropriate.

**\*10** Plaintiff contends that venue is proper under Section 7(c)(1) of the ADEA, 29 U.S.C. § 626(c)(1) and under the New York Law Arm statute, New York Civil Practice Law and Rules § 302. Section 7(c)(1) of the ADEA provides that: "[a]ny person

aggrieved may bring a civil action in any court of competent jurisdiction." However, this does not relieve the parties of establishing proper venue. *See Quinn v. Bomar Publishing Co.,* 445 F.Supp. 780 (D. Md.1978) (venue for ADEA claim lay in district in which plaintiff was discharged). Plaintiff states in a conclusory fashion that Shackelford is subject to personal jurisdiction under the New York long arm statute without attempting to show why the necessary elements for such jurisdiction have been met. Because no evidence has been presented that Shackelford transacts any business within the state of New York or that he derives substantial revenue from in interstate or international commerce, the New York long arm statute does not provide this Court with personal jurisdiction over Shackelford. N.Y.Civ.Prac.L. & R. § 302. Moreover, contrary to plaintiff's assertions, defendants have not waived their venue objections under Fed.R.Civ.P. 12(b) since in their Answer and in their motion papers the venue objection was properly asserted. Answer ¶ 166.

Plaintiff's tortious interference claim also fails as a matter of law. Under Connecticut law plaintiff's claim is barred by the Workers Compensation Act because plaintiff failed to allege that his employer, Carbide, directed Shackelford to commit his tort. *Vorvis v. Southern New England Tel. Co.,* 821 F.Supp. 851, 856 (D.Conn.1993) ("intentional tort claim is barred unless the actor is acting with the knowing authorization of the employer") (citing *Jett v. Dunlap,* 425 A.2d 1263 (Conn.1979)). Plaintiff's tortious interference with contract claims also fails under New York law because plaintiff may not circumvent the lack of a cause of action for abusive or wrongful discharge of an at-will-employee under New York law by casting his cause of action as another intentional tort. *Ingle v. Glamore Motor Sales, Inc.,* 538 N.Y.S.2d 771, 774 (1989) ("the plaintiff here cannot be allowed to evade the employment-at-will rule and relationship by recasting his cause of action in the garb of a tortious interference with his employment"); *Murphy v. American Home Products Corp.,* 461 N.Y.S.2d 232 (1983) (plaintiff not allowed to subvert the traditional at-will-contract rule by casting his cause of action as one for intentional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

infliction of emotional distress or as a prima facie tort). Accordingly, Count VII of plaintiff's amended complaint against defendant Shackelford for tortious interference with contract is dismissed.

*XI. PLAINTIFF'S DISCOVERY REQUESTS*

Plaintiff's request for further discovery was denied in this Court's Order of November 22, 1993 and the Order of December 6, 1993 pending the outcome of the motions decided herein. The request for further discovery is now denied because plaintiff failed to make a motion pursuant to Fed.R.Civ.P. 37 to compel production of the documents requested but not provided and because plaintiff has not provided the Court with evidence of any efforts by his counsel to obtain these documents from April 23, 1993 to the bringing of this motion for further discovery on September 8, 1993. Furthermore, defendants state that some of the requested documents are not relevant, have already been produced pursuant to earlier requests or cannot be produced because they do not exist. *Cf.* Order and Opinion of December 6, 1993. Plaintiff has failed to show how each of the document requests are relevant to his case and how the requested documents will produce any genuine issue of material fact as required by 56(f). *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp* 769 F.2d 919, 926 (2d Cir.1985). Accordingly, plaintiff's motion for discovery of documents listed as (a) through (b1) in his affidavit is denied without prejudice to plaintiff renewing the motion, within twenty days of the date of this opinion, after following the proper procedure to obtain such discovery.

*XII. CONCLUSION*

*11 Summary judgment is granted in defendants' favor on all claims except for plaintiff's federal and New York State age discrimination claims. Count II, IV, V, VI, and VII of plaintiff's amended complaint are dismissed. Although plaintiff is entitled to a trial to determine whether Carbide discriminated against him on the basis of age, if he prevails his damages will be limited as he cannot recover damages for lost wages. [FN12]

Plaintiff's motion for partial summary judgment for plaintiff on Counts I, II, III and V of his amended complaint is denied. Plaintiff's motion to strike the affidavit of Joel E. Cohen, Esq. sworn to July 9, 1993 and a letter dated December 3, 1992 from the record, for further discovery pursuant to Fed.R.Civ.P. 56(f) and sanctions against defendants pursuant to Fed.R.Civ.P. 11 is also denied. The parties shall bear their own costs. The parties will appear before the Court for a pre-trial conference on May 27, 1994 at 9 a.m. in Room 302.

IT IS SO ORDERED.

> FN1. Plaintiff's age discrimination claim under New York Executive Law § 239 *et seq.* is governed by the same standard as his ADEA claim, 29 U.S.C. § 623 *et seq. See Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1158 (2d Cir.1993).

> FN2. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

> FN3. Plaintiff also argues in his cross-motion that partial summary judgment should be granted in his favor on the age discrimination claim because defendants failed to deny that the Enhanced Separation Program adopted by Carbide "has a coercive purpose and effect. Older employees who did not accept the separation package were force to leave the company in any event." Amended Complaint, ¶ 49. This point is without merit since all reduction in force programs force employees to leave a company.

> FN4. In a written evaluation of plaintiff's work in 1989, Shackelford wrote that:
> Dick [plaintiff] wants to work until he is 70 and wants to know how he can maximize his contributions during the next 15 years! I suggested his two areas of greatest demonstrated strength were in management of product safety and an incredible feel for tactical dynamics--ie, a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

super tactical product/market manager. At this point this is the direction I would recommend for him.
Lightfoot Aff. in Opposition, Exh. C.

FN5. Plaintiff also seeks to substantiate his claim of age discrimination by citing to his moving affidavit which merely states conclusory allegations of age discrimination. Defendants object to statements in Lightfoot's affidavit such as "[b]ias against older employees was (and is) a part of the permanent corporate psyche of Union Carbide Corporation ..." Aff. at ¶ 60. Defendant correctly states that to the extent such statements are inconsistent with plaintiff's deposition testimony they must be disregarded because they do not create genuine issues of material fact. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir.1991); *Douglas v. Weil, Gotshal & Manges,* 1993 WL 364572 (S.D.N.Y.1993).

FN6. Plaintiff moves for summary judgment on his age discrimination claim based on the fact that defendants did not verify their answer in response to plaintiff's verified complaint in violation of New York Civil Practice Law and Rule § 3016(f). However, since this action was brought in federal court "the Federal Rules of Civil Procedure 'govern the mode of proceedings in federal court....' " *Harbor Seafood, Inc. v. June Foods, Inc.,* 1987 WL 15275 (E.D.N.Y.1987) (denying plaintiff's motion for summary judgment predicated upon defendant's failure to comply with CPLR § 3016(f) in federal diversity action) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 438 (1974).

FN7. DR 7-104(a)(1) states: During the course of the representation of a client a lawyer shall not:
(1) Communicate or cause another to

communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

FN8. Plaintiff also asks the Court to strike the affidavit of Mr. Cohen, the defendants' attorney, because it is not based on personal knowledge. There is no basis upon which to strike Mr. Cohen's affidavit because it merely serves as a roadmap for the documentary evidence and deposition testimony produced during this litigation. *See Spence v. Maryland Casualty Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992), *aff'd,* 995 F.2d 1147 (2d Cir.1993); *Maier-Schule GMC, Inc. v. General Motors Corp.,* 780 F.Supp. 984, 988 (W.D.N.Y.1991).

FN9. Plaintiff argues that summary judgment in his favor on his ERISA claim should be granted because defendants failed to answer ¶ 49 of the Amended Verified Complaint and have "conceded that the separation program had a coercive purpose and effect...." Pl. Brief in Opposition, p. 13. After reviewing the Answer it is clear that the failure to deny paragraph 49 was a clerical oversight created by a page break. Cohen Reply Aff., ¶ 5. Because plaintiff has suffered no prejudice due to this oversight, defendants' Answer is considered to have denied ¶ 49 of plaintiff's Amended Verified Complaint. *See Jewish Nat'l Fund, Inc. v. Garland,* 1985 WL 163 (S.D.N.Y.1985); *Pelch v. Peninsula Gen. Hosp.,* 340 N.Y.S.2d 388 (2d Dept.1973).

FN10. Plaintiff does not argue that any law other than New York law applies to his quantum meruit claim.

FN11. His March 1990 performance evaluation stated that consideration for a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1994 WL 184670 (S.D.N.Y.)

**(Cite as: 1994 WL 184670 (S.D.N.Y.))**

promotion required more than for plaintiff to develop new products, it also required plaintiff to improve his interpersonal skills. Lightfoot Aff. in Opposition, Exh. C.

FN12. Compensatory and punitive damages are unavailable under ADEA. *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143 (2d Cir.1984).

1994 WL 184670 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:92CV06411  (Docket)
                    (Aug. 26, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**TAB F**

Not Reported in F.Supp.2d

2002 WL 986641 (S.D.N.Y.), 89 Fair Empl.Prac.Cas. (BNA) 29

**(Cite as: 2002 WL 986641 (S.D.N.Y.))**

Page 1

▷

**Motions, Pleadings and Filings**


United States District Court, S.D. New York.
Pamela LUCAS, Plaintiff,
v.
PATHFINDER'S PERSONNEL, INC., JS Partner
Group, Shane Howell, and Jonathan
Schwartz, Defendants.
Pamela LUCAS, Plaintiff,
v.
PATHFINDER'S PERSONNEL, INC., JS Partner
Group, Defendants.
**No. 01 CIV.2252(BSJ).**

May 13, 2002.

MEMORANDUM ORDER

JONES, District J.

*1 Plaintiff filed the above captioned actions alleging that Defendants unlawfully discriminated against Plaintiff based on her pregnancy. In 01 CV 2252, filed on March 16, 2002, Plaintiff asserts that Defendants Pathfinder's Personnel, Inc., JS Partner Group, Shane Howell and Jonathan Schwartz intentionally discriminated against Plaintiff on the basis of her pregnancy in violation of the New York State Human Rights Law (N.Y.SHRL) and the New York City Human Rights Law (N.Y.CHRL). In 02 CV 1743, Plaintiff alleges that Defendants Pathfinder's Personnel, Inc. and JS Partner Group's discriminatory conduct violates Title VII. Defendants Pathfinder's Personnel, Inc., JS Partner Group, Shane Howell and Jonathan Schwartz (collectively, "Defendants") have moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's claims under the NYSHRL and NYCHRL. For the following reasons, Defendants' motion is granted.

Plaintiff alleges that Defendants violated the NYCHRL and NYSHRL by (1) terminating Plaintiff's employment based on her pregnancy, and (2) rehiring Plaintiff but then materially altering the terms and conditions of her employment such that once again she effectively was terminated. Turning first to Plaintiff's NYCHRL claim, the NYCHRL prohibits employers from engaging in certain types of discrimination against its employees. The NYCHRL, however, applies only to acts occurring within the boundaries of New York City. *See, e.g., Duffy v. Drake Beam Morin, Harcourt General, Inc.,* 1998 WL 252063, * 11 (S.D.N.Y.1998). While Plaintiff concedes that at the time of the alleged discrimination she was a Massachusetts resident working as Managing Recruiter in Pathfinder's Boston office, Plaintiff argues that the NYCHRL nonetheless applies because the decision to terminate Plaintiff's employment was made in New York City, where Defendants Pathfinder's and JS Partner Group maintain their principal places of business. The court disagrees. The allegation that the decision to terminate Plaintiff was made in New York City, even when taken as true (as this court must on a motion to dismiss), is insufficient to establish a violation of the NYCHRL where, as here, the impact of that decision occurred outside of New York City. *Id.* at *12 (fact that decision to fire plaintiffs was made in New York City office was insufficient to establish a violation of the NYCHRL when the affected employees did not work in New York City); *see also Wahlstrom v. Metro-North Commuter Railroad Co.,* 89 F.Supp.2d 506, 527-28 (S.D.N.Y.2000) ("[The] NYCHRL only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office."); *Salvatore v. KLM Royal Dutch Airlines,* 1999 WL 796172, *16 (S.D.N.Y.1999) ("To determine the location of the discrimination [under the NYCHRL], courts have looked to the location of the impact of the offensive conduct."); *Lightfoot v. Union Carbide Corp.,* 1994

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 WL 986641 (S.D.N.Y.), 89 Fair Empl.Prac.Cas. (BNA) 29

**(Cite as: 2002 WL 986641 (S.D.N.Y.))**

WL 184670, *5 (S.D.N.Y.1994).

**\*2** For essentially the same reason, Plaintiff's claim under the NYSHRL must also be dismissed. Like the NYCHRL, the NYSHRL "does not provide a non-resident with a private cause of action for discriminatory conduct committed outside of New York by a New York corporation." *See Thomas v. Texaco, Inc.,* 998 F.Supp. 368, 371 (S.D.N.Y.1998) (quotations and citations omitted). Thus, in order for Plaintiff to establish a NYSHRL violation, she must allege that Defendants' discriminatory conduct occurred in New York. As discussed above, however, the fact that the decision to terminate Plaintiff was made in New York State is not sufficient to establish a violation of the NYSHRL. *See Duffy,* 1998 WL 252063 at \*12-13.

Accordingly, Plaintiff's claims under both the NYCHRL and NYSHRL must be dismissed.

Conclusion

For the reasons stated above, Plaintiff's claims under the NYCHRL and NYSHRL are dismissed. Because these are the only claims asserted in 01 CV 2252, Plaintiff's Complaint in that action is dismissed in its entirety and the Clerk of Court is directed to close that case. The parties are directed to submit a joint pre-trial order regarding 02 CV 1743 no later than June 10, 2002.

SO ORDERED:

2002    WL    986641    (S.D.N.Y.),    89    Fair Empl.Prac.Cas. (BNA) 29

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV02252  (Docket)
                              (Mar. 16, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB G

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

2001 WL 767009 (S.D.N.Y.)

**(Cite as: 2001 WL 767009 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Constance RUIZ, Plaintiff,
v.
NEW YORK CITY FIRE DEPARTMENT,
Defendant.
**No. 00 CIV. 4371 AGS.**

July 9, 2001.

MEMORANDUM ORDER

SCHWARTZ, District J.

**\*1** Plaintiff Constance Ruiz brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, as amended, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), and title 8 of the New York City Administrative Code ("NYCHRL"). She alleges sex discrimination and retaliation by defendant New York City Fire Department (the "NYFD"). The NYFD now moves to dismiss the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion is granted.

I. BACKGROUND

The following facts, drawn from the complaint, are accepted as true for purposes of this motion. Plaintiff, a female, has been employed by defendant since 1977. (Compl.¶ 4.) She presently serves as a Communications Dispatcher in the NYFD's Manhattan Central Office. (*Id.*) On July 3, 1994, a male Dispatcher, Fred Kratz, [FN1] hit plaintiff's

posterior with a plastic soda bottle and then grabbed plaintiff's posterior. (*Id.* ¶ 11.) While Kratz was doing this, another male Dispatcher, Joseph Epstein, was laughing and encouraging Kratz. (*Id.* ¶ 12.) Plaintiff reported this incident to Supervising Dispatcher Michael Fox, but he ignored plaintiff's complaints and took no action. (*Id.* ¶ 13.) On or about July 14, 1994, plaintiff filed a complaint with the NYFD's Equal Employment Opportunity ("EEO") office. (*Id.* ¶ 14.) At some unspecified time in or after 1994, plaintiff received more scrutiny than other similarly situated employees. (*Id.* ¶ 16(a) .) In April 1996, plaintiff received disciplinary charges. (*Id.* ¶ 16(b).) In January 1997, plaintiff was suspended for one week. (*Id.* ¶ 16(c).) In October 1997, plaintiff was charged with fraudulent conduct. (*Id.* ¶ 16(d).) In August 1998, plaintiff was served with disciplinary charges. (*Id.* ¶ 16(e).) Despite repeated requests, plaintiff received no response to her EEO complaint until May 10, 1999. (*Id.* ¶ 15.) This delay violated the NYFD's EEO procedures. (*Id.*) When the response did arrive, it sustained plaintiff's charges. (*Id.*) On May 13, 1999, plaintiff filed a charge of discrimination with the EEOC. (Decl. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Decl.") Ex. B.) [FN2] On or about March 15, 2000, plaintiff received a right-to-sue letter from the EEOC. (Compl.¶ 7.) Plaintiff filed the instant action on June 13, 2000.

> FN1. Defendant asserts that the man's surname is Katz, not Kratz. (Def.'s Mem. of Law in Supp. of its Mot. to Dismiss at 2 n. 2.) Whatever the spelling of his last name, there is no dispute that the man referred to by each party is the same NYFD employee.

> FN2. Although this motion is made pursuant to Rule 12(b)(6), the Court may consider plaintiff's EEOC charge, and her right-to-sue letter (Def.'s Decl. Ex. C),

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2

Not Reported in F.Supp.2d
2001 WL 767009 (S.D.N.Y.)

**(Cite as: 2001 WL 767009 (S.D.N.Y.))**

because those documents are incorporated by reference in the complaint (Compl.¶ 7), are integral to the complaint, and are known to plaintiff. *See Yak v. Bank Brussels Lambert, BBL (USA),* 252 F.3d 127, 130-31 (2d Cir.2001). To the extent either party offers in its declarations material other than the complaint, the EEOC charge, and the right-to-sue letter, such other material is excluded by the Court. *See* Fed.R.Civ.P. 12(b).

II. MOTION TO DISMISS STANDARD

"A district court may grant a motion to dismiss for failure to state a claim only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). In considering such a motion, the court must accept as true the factual allegations of the complaint and must draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *See id.* Nonetheless, "bald assertions" and legal conclusions are insufficient to state a claim. *Id.*

III. DISCUSSION

**\*2** Defendant argues that plaintiff's causes of action are mostly time-barred and that, to the extent the causes of action are timely, plaintiff fails to present a prima facie case of discrimination. (Def.'s Mem. of Law in Supp. of its Mot. to Dismiss ("Def.'s Mem.") at 4-10. Plaintiff responds that her causes of action are timely. (Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 3-6.) The Court finds that plaintiff's causes of action are to a certain extent untimely and that to the extent they are timely, those causes of action fail to state a claim.

A. Time to File the Complaint

A plaintiff must file a Title VII action within ninety days of her receipt of a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f). Defendant argues

that this action, filed on June 13, 2000, is untimely because plaintiff's right-to-sue letter is dated March 2, 2000 and there is a presumption that a mailed document is received three days after its mailing. (Def.'s Mem. at 4.) The Court finds that plaintiff filed this action within ninety days of her receipt of the right-to-sue letter. It is true that the Second Circuit has stated that there is a rebuttable presumption that a mailed document is received three days after its mailing. *See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996). In *Sherlock,* however, the complaint apparently did not allege the date on which the plaintiff received the right-to-sue letter. *See id* at 524-26; *Sherlock v. Montefiore Med. Ctr.,* No. 95 Civ. 3839(HB), 1995 WL 542458 (S.D.N.Y. Sept. 12, 1995), *modified,* 84 F.3d 522. Here, in contrast, plaintiff specifically alleged that she received the right-to-sue letter on or about March 15, 2000. (Compl.¶ 7.) As noted above, on this motion to dismiss the Court must accept as true the allegations in the complaint and must draw inferences in the light most favorable to plaintiff. *See supra* p. 3. Defendant cites no authority for the proposition that *Sherlock* overrides these well-established standards for deciding a motion to dismiss and requires a court to disregard a complaint's express allegations. Absent such authority, this Court follows the principle that Rule 12(b)(6) motions "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki,* 232 F.3d 321, 322 (2d Cir.2000). The Court therefore finds, for purposes of this motion, that plaintiff received the right to sue letter on March 15, 2000. June 13, 2000 was the ninetieth day after March 15, 2000. Accordingly, the complaint may not now be dismissed pursuant to 42 U.S.C. § 2000e-5(f).

B. Statute of Limitations

A plaintiff may only commence a Title VII action after filing a charge with the EEOC and receiving a right-to-sue letter. 42 U.S.C. §§ 2000e-5(e), (f). In New York, the EEOC charge must be filed within 300 days of the alleged discrimination. *See* 42 U.S.C. § 2000e-5(e)(1). These requirements effectively constitute a statute of limitations. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 767009 (S.D.N.Y.)

(Cite as: 2001 WL 767009 (S.D.N.Y.))

Page 3

Cir.1998). The NYSHRL and the NYCHRL are each subject to a three year statute of limitations. *Narvarte v. Chase Manhattan Bank,* No. 96 Civ. 8133(JGK)(JCF), 2000 WL 547031, at *6 (S.D.N.Y. May 4, 2000). Defendant argues that most of the acts of which plaintiff complains occurred outside the applicable limitations periods, and so may not be considered. (Def.'s Mem. at 5-6.) Plaintiff does not deny that some of the acts fall outside of the limitations periods, but argues that those acts may be considered under the equitable estoppel or continuing violation doctrines. (Pl.'s Mem. at 3-4, 5-6.) The Court finds that certain of the acts of which plaintiff complains may not be considered due to the statutes of limitations. Plaintiff filed her EEOC charge on May 13, 1999. Three hundred days before May 13, 1999 is July 17, 1998. Accordingly, absent equitable estoppel or a continuing violation, the only alleged action the Court may consider under Title VII is the bringing of disciplinary charges in August 1998. Three years prior to June 13, 2000 is June 13, 1997. Accordingly, absent equitable estoppel or a continuing violation, only the 1998 disciplinary charges and the October 1997 charge of fraudulent conduct are actionable under the NYSHRL and the NYCHRL.

1. Equitable Estoppel

*3 The elements of equitable estoppel are (i) a material misrepresentation, (ii) reasonable reliance, and (iii) provable damages. *See Bennett v. United States Lines, Inc.,* 64 F.3d 62, 65 (2d Cir.1995). Plaintiff alleges no material misrepresentation by the NYFD. Plaintiff states that she delayed filing a charge with the EEOC because her NYFD EEO complaint was still pending. (Pl.'s Mem. at 3.) However, the pendency of plaintiff's NYFD EEO claim does not constitute a misrepresentation. Plaintiff nowhere alleges that the NYFD made any misstatement to her regarding statutes of limitations, the time within which she needed to file with the EEOC, or the relationship between her NYFD EEO claim and any filing with any other government agency. Absent an allegation that defendant misled plaintiff about the need to comply with the applicable statutes of limitations, there is no basis

for applying equitable estoppel.

2. Continuing Violation

"[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Where a continuing violation is found, the statute of limitations is not considered to run until the last act in furtherance of the violation, and the court will consider acts that would otherwise be time-barred. *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir.2001). The continuing violation doctrine is disfavored in the Second Circuit and should only be applied upon a demonstration of compelling circumstances. *Nicholas v. NYNEX,* 974 F.Supp. 261, 266 (S.D.N.Y.1997). Here, plaintiff argues that there are "several instances of retaliation" that constitute a continuing violation. (Pl.'s Mem. at 5-6.) The complaint alleges five incidents of retaliation: one at some unspecified time in or after 1994, one in April 1996, one each in January and October 1997, and one in August 1998. (Compl.¶ 16.) "All of these alleged acts are sufficiently isolated in time ... as to break the asserted continuum of discrimination." *Quinn,* 159 F.3d at 766 (discussing "several" incidents in 1985, two in March 1988, one in March 1989 and one in February 1990). Accordingly, plaintiff has not adequately alleged a continuing violation. Because plaintiff has not demonstrated that either equitable estoppel or the continuing violation doctrine apply here, plaintiff's Title VII causes of action may rely only upon the 1998 disciplinary charges and plaintiff's NYSHRL and NYCHRL causes of action may rely only upon the 1998 disciplinary charges and the 1997 charge of fraudulent conduct.

C. Plaintiff's *Prima Facie* Case

Plaintiff's causes of action under Title VII, NYSHRL, and the NYCHRL are all analyzed under the same framework. *Cruz v. Coach Stores,* 202 F.3d 560, 565 (2d Cir.2000). To establish a *prima*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 4
2001 WL 767009 (S.D.N.Y.)

**(Cite as: 2001 WL 767009 (S.D.N.Y.))**

*facie* case for her retaliation claims, or her claims of sex discrimination to the extent they are based upon disparate treatment, plaintiff must allege, among other things, that she suffered an adverse employment action. *Fitzgerald,* 251 F.3d at 356 (sex discrimination), 358 (retaliation). "[T]here are no bright-line rules" for determining what constitutes an adverse employment action. *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997). A court must examine the facts of each case to determine if the challenged conduct is "adverse." *Id.* "Not every unpleasant matter short of [discharge or demotion] creates a cause of action ...." *Id.* (internal quotations omitted; alteration in the original). Plaintiff alleges a disciplinary charge that may be considered for the Title VII claim, and a disciplinary charge and a fraudulent conduct charge that may be considered for the NYSHRL and NYCHRL claims. Disciplinary measures do not constitute adverse employment actions unless they "affect ultimate employment decisions such as promotion, wages, or termination." *Regis v. Metropolitan Jewish Geriatric Center,* No 97-CV-0906 (ILG), 2000 WL 264336, at *8 (E.D.N.Y. Jan. 11, 2000); *see also Irvine v. Video Monitoring Svcs.,* No. 98 Civ. 8725(NRB), 2000 WL 502863, at *6 (S.D.N.Y. May 4, 2000) (reprimand resulting in no further action was not sufficiently adverse). There is no allegation that the disciplinary charge or the fraudulent conduct charge affected any ultimate employment decisions. Accordingly, plaintiff has failed to show that the NYFD took any adverse action against her.

*4 Even if the Court were to assume for the sake of argument that the disciplinary charge and the fraudulent conduct charge constituted adverse actions, plaintiff still cannot present a *prima facie* case for any of her claims. To establish a *prima facie* case of sex discrimination, plaintiff would have to allege, among other things, that the adverse action or actions took place under circumstances giving rise to an inference of sex discrimination. *Fitzgerald,* 251 F.3d at 356. The complaint includes no such allegations. Similarly, to establish a *prima facie* case of retaliation, plaintiff would have to allege, among other things, a causal connection between her protected activity and the adverse

action or actions. *Id.* at 358. Such a causal connection may be demonstrated directly by showings of retaliatory animus, or indirectly by a close temporal connection between the protected activity and the alleged retaliation. *Narvarte,* 2000 WL 547031, at 11. Plaintiff's protected activities consisted of reporting the July 3, 1994 incident to her supervisor and then filing an EEO complaint with the NYFD in July 1994. The allegedly adverse actions that the Court may consider did not take place until 1997 and 1998. This is too long an interval from which to infer a causal connection, *see, e.g., Stringfellow v. Wyckoff Heights Med. Ctr.,* No. 95 CV 3041(ILG), 1998 WL 760286, at *6 (four months was too long an interval), and plaintiff pleads no direct causal connection. Accordingly, plaintiff fails to assert a *prima facie* case of retaliation or of sex discrimination by disparate treatment.

To the extent plaintiff alleges sexual harassment resulting in a hostile or abusive work environment, she also fails to state a claim. Such a claim requires, among other things, proof "that the harassment was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." ' *Fitzgerald,* 251 F.3d at 356 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Whether an environment is abusive depends on the totality of the circumstances. *Quinn,* 159 F.3d at 767. Unless the alleged harassment is severe (*e.g.* sexual assault), it will not be actionable unless it occurs regularly; "isolated remarks or occasional episodes of harassment will not merit relief under Title VII ...." *Id.* at 768 (internal quotations omitted). Plaintiff alleges one set of disciplinary charges in 1998 for her Title VII claim; for her NYSHRL and NYCHRL claims, she alleges the same 1998 disciplinary charges and one 1997 charge of fraudulent conduct. This is plainly not harassment so severe or pervasive as to create an abusive working environment. Accordingly, to the extent they are not time-barred, plaintiff's allegations fail to state a claim.

IV. CONCLUSION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 767009 (S.D.N.Y.)

**(Cite as: 2001 WL 767009 (S.D.N.Y.))**

For the reasons set forth above, defendant's motion to dismiss for failure to state a claim is granted. The Clerk of the Court is directed to close the file in this action.

**\*5** SO ORDERED.

2001 WL 767009 (S.D.N.Y.)

#### Motions, Pleadings and Filings (Back to top)

• 1:00CV04371   (Docket)

(Jun. 13, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB H

Not Reported in F.Supp.2d                                          Page 1

2003 WL 22015437 (S.D.N.Y.)

**(Cite as: 2003 WL 22015437 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Barbara TOOLAN, Plaintiff,
v.
BOARD OF EDUCATION OF THE CITY OF
NEW YORK, Office of the Chancellor,
Defendant.
Barbara TOOLAN, Plaintiff,
v.
UNITED FEDERATION OF TEACHERS,
Defendant.
**No. 02 Civ. 6989(DC), 03 Civ. 576(DC).**

Aug. 25, 2003.

In employment discrimination cases, New York City schoolteacher, pro se, asserted claims against Board of Education and teachers' union under Title VII, Americans with Disabilities Act (ADA), and Age Discrimination in Employment Act (ADEA). Board moved to dismiss action against it as time-barred. The District Court, Chin, J., held that actions were untimely, and even though they were commenced only one day past ninety-day period following receipt of right-to-sue letter from Equal Employment Opportunity Commission (EEOC), they would both be dismissed as no basis was presented for applying doctrine of equitable tolling.

Motion granted; complaints dismissed.

West Headnotes

Civil Rights ☞1530
78k1530 Most Cited Cases
Actions against board of education and teachers'

union for violations of Title VII, ADA and ADEA that were filed 91 days after receipt of right to sue letter from Equal Employment Opportunity Commission (EEOC) were untimely and subject to dismissal; although filing was only one day late, no basis was presented for application of doctrine of equitable tolling. Age Discrimination in Employment Act of 1967, § 7(e), 29 U.S.C.A. § 626(e); Civil Rights Act of 1964, § 706(e)(1), as amended, 42 U.S.C.A. § 2000e-5(f)(1); Americans with Disabilities Act of 1990, § 107(a), 42 U.S.C.A. § 12117(a).

Barbara Toolan, Fishkill, New York, pro se.

Michael A. Cardozo, Corporation Counsel of the City of New York, By: Neil S. Rosolinsky, Assistant Corporation Counsel, New York, New York, for Defendant Board of Education.

John F. Wirenius, New York, New York, for Defendant UFT.

*MEMORANDUM DECISION*

CHIN, J.

*1 In these employment discrimination cases, pro se plaintiff Barbara Toolan asserts claims against defendants New York City Board of Education (the "Board") and the United Federation of Teachers ("UFT") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12112 et seq., and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq. The Board moves to dismiss the complaint in the first case on the grounds that the action is time-barred. For the reasons set forth below, the Board's motion is granted. For the same reasons, I also dismiss, sua sponte, Toolan's complaint against UFT.

*BACKGROUND*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 22015437 (S.D.N.Y.)

**(Cite as: 2003 WL 22015437 (S.D.N.Y.))**

A. *The Facts*

As alleged in Toolan's complaints, the facts are as follows:

Toolan was employed as a teacher at P.S. 129 in Manhattan. (Board Compl. ¶¶ 3, 8). In November 1999, she was injured in the line of duty while protecting a student. (*Id.* ¶ 8). She alleges that she was discriminated against in the terms and conditions of her employment because of her race, gender, age, color, and disability (described as an injury to the right arm and hand). (*Id .* ¶¶ 4, 7, 8). In her complaint against UFT, Toolan alleges that the union violated Title VII, the ADEA, and the ADA by failing to properly represent her in connection with her injury and in arbitration proceedings to secure medical coverage. (UFT Compl. ¶¶ 4, 8).

B. *Procedural History*

On October 16, 2000, Toolan filed dual charges of discrimination with the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission (the "EEOC") against the Board and UFT. (*See* Board Compl. ¶¶ 9, 10 & Attachments; UFT Compl. ¶ ¶ 9, 10 & Attachments). On either May 7, 2002 or May 14, 2002, Toolan received notices from the EEOC advising her that the EEOC was dismissing her charges and notifying her that she had 90 days after receipt of the notices to bring suit on the claims. (*See* Board Compl. ¶ 12 (alleging receipt of right to sue letter on May 7, 2002) & Attachment (handwritten notation on right to sue letter stating "Received 5/14/02"); UFT Compl. (same)).

Toolan's complaints were both submitted to the Pro Se Office of this Court, as indicated by the file stamp on the first page of the complaints, on August 13, 2002. The complaint against the Board was accepted for filing by the Clerk's Office and docketed on September 4, 2002. The complaint against UFT was docketed on January 27, 2003.

The Board filed a motion to dismiss on April 24, 2003. Toolan did not respond to the motion. UFT

filed an answer on June 11, 2003. On June 12, 2003, I issued an Order instructing Toolan to show cause by June 30, 2003 why her actions against both defendants should not be dismissed, with prejudice, as time-barred. On June 30, 2003, at Toolan's request, I extended her time to respond for thirty days. On July 26, 2003, Toolan requested an extension for an indefinite length of time. I denied her request. She has not responded to the Order on the merits.

*DISCUSSION*

**\*2** To be timely, actions for violations of Title VII, the ADA, and the ADEA must be filed within 90 days after receipt of a right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(e); *Baldwin Co. Welcome Center v. Brown,* 466 U.S. 147, 149, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). As the Second Circuit has held, "in the absence of a recognized equitable consideration the court cannot extend the limitations period by even one day." *Johnson v. Al Tech Specialties Steel Corp.,* 731 F.2d 143, 146 (2d Cir.1984) (dismissing action filed 97 days after receipt). *See also Zerilli-Edelglass v. N.Y.C. Transit Authority,* 333 F.3d 74, 78 (2d Cir.2003) (affirming dismissal of complaint received by pro se office 92 days after receipt of right to sue notice); *Moscowitz v. Brown,* 850 F.Supp. 1185, 1191 (S.D.N.Y.1994) (dismissing pro se action filed 91 days after receipt of notice).

Here, based on the allegations of the complaint, it is clear that the actions against the Board and UFT are untimely. Even assuming Toolan received the right to sue letter on May 14, 2002 (the later of the two dates indicated for receipt), she had until Monday, August 12, 2002, to commence this action. She did not do so, however, until August 13, 2002, when she submitted her complaint to the Pro Se Office. Although she was only one day late, she was still late, and no basis been presented for application of the doctrine of equitable tolling.

*CONCLUSION*

The Board's motion is granted. The Clerk of the Court shall enter judgment dismissing the complaint against the Board, with prejudice. The Board's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 22015437 (S.D.N.Y.)
**(Cite as: 2003 WL 22015437 (S.D.N.Y.))**

request for costs, fees, and disbursements is denied. The complaint against UFT is also dismissed, with prejudice, and without costs or fees.

SO ORDERED.

2003 WL 22015437 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV06989  (Docket)
                        (Sep. 04, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.