UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JONATHAN JUNG,

                               :

                Plaintiff,

                               :     05-CV-4286 (MBM)

        - against -

                               :     ECF Case

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP and SUSAN DORNFELD,         :

                  Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE FIRST, THIRD,
FOURTH AND SIXTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ATTORNEYS FOR DEFENDANTS
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
AND SUSAN DORNFELD

FOUR TIMES SQUARE

BOROUGH OF MANHATTAN

CITY OF NEW YORK

NEW YORK 10036-6522

(212) 735-3000

Dockets.Justia.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT ................................................................................................. 3

POINT I

Plaintiff's New York City Human Rights Law Claims Should Be Dismissed With Prejudice Because The Complaint Does Not And Cannot Assert That Plaintiff Was Impacted By Any Alleged Discriminatory Conduct Within Any Of The Five Boroughs Of New York City .......................................... 3

   A.  Mr. Jung's Own Allegations Confirm That He Has No NYCHRL Claims, And His Newly Constructed "Continuing Violation" And "Pattern And Practice" Theories Cannot Rescue His NYCHRL Claims ...................................................................................... 3

      1.  The Plain Language Of The Complaint Establishes That The Alleged Discriminatory Conduct Began To Occur After An Office Move To White Plains In February 2003 ........................... 7

      2.  The Complaint Does Not Contain Allegations Of Discrimination Occurring In New York City ................................. 9

      3.  Defendants Were Not Required To Move For A More Definite Statement ................................................................. 10

   B.  Even If This Court Does Not Dismiss Mr. Jung's Discrimination Claim Asserted Under The New York City Human Rights Law – Which It Should – It Should Nevertheless Dismiss Mr. Jung's New York City Human Rights Law Retaliation Claim ..................................... 11

POINT II

Mr. Jung's Title VII Claims Against The Firm Should Be Dismissed With Prejudice Because Mr. Jung Failed To File The Complaint Within 90 Days Of Receipt Of A Right-To-Sue Letter .................................................... 12

   A.  The Date That Mr. Jung's Counsel Allegedly Received The Right-To-Sue Letter Is Immaterial Because Mr. Jung Allegedly Received The Right-To-Sue Letter At An Earlier Date ............................................ 13

   B.  This Court Should Accept As True The Date Alleged By Mr. Jung In The Complaint That He Received The Right-To-Sue Letter ............... 14

POINT III

This Court Should Not Grant Mr. Jung Leave To Amend His Claims Against Defendants ....................................................................................... 16

CONCLUSION ............................................................................................. 18

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

AT&T Corp. v. America Cash Card Corp., 184 F.R.D. 515 (S.D.N.Y. 1999) .................16

Alston v. New York City Transit Auth., No. 97 Civ. 1080, 1998 WL 437154
    (S.D.N.Y. Aug. 3, 1998) .........................................................17

Banco Espirito Santo De Investimento v. Citibank, No. 03 Civ. 1537 (MBM),
    2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ....................................17

Batchelor v. NYNEX Telesector Res. Group, 213 A.D.2d 189, 623 N.Y.S.2d 235
    (1st Dep't 1995) ...........................................................3, 4

Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827, 2003 WL 21910867
    (S.D.N.Y. Aug. 11, 2003) ........................................................5

Byas v. New York City Dep't of Corr., 173 F.R.D. 385 (S.D.N.Y. 1997) ........................16

Everson v. New York City Transit Auth., 216 F. Supp. 2d 71 (E.D.N.Y. 2002) ..............15

Greenidge v. Ben Hur Moving & Storage, Inc., No. 02-CV-1635, 2002 WL
    1796812 (E.D.N.Y. Aug. 6, 2002) ............................................2, 13, 14

Harrison v. New York City Admin. for Children's Servs., No. 02 Civ. 0947,
    2003 WL 21640381 (S.D.N.Y. July 7, 2003) ........................................15

Health-Chemical Corp. v. Baker, 915 F.2d 805 (2d Cir. 1990).........................................17

Henthorn v. Dep't of Navy, 29 F.3d 682 (D.C. Cir. 1994) ....................................8

Hishon v. King & Spalding, 467 U.S. 69 (1984)................................................11

Holmes v. NBC/GE, 914 F. Supp. 1040 (S.D.N.Y. 1996) .........................................14, 16

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (E.D.N.Y. 1999)...........................5

Izzo v. City of Syracuse, No. 98-CV-0778 FJS GLS, 2000 WL 1222014
    (N.D.N.Y. Aug. 3, 2000) .........................................................8

Leibowitz v. Cornell University, No. 03 CV 9976, 2005 WL 267560
    (S.D.N.Y. Feb. 3, 2005) ........................................................8, 9, 10

Reddy v. Litton Industrial, Inc., 912 F.2d 291 (9th Cir. 1990).........................................17

Roush v. Kartridge Pak Co., 838 F. Supp. 1328 (S.D. Iowa 1993) ....................................16

Ruiz v. New York City Fire Dep't, No. 00 Civ. 4371 ASG, 2001 WL 767009
    (S.D.N.Y. July 9, 2001) ..................................................................................15

Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 WL 2809989 (S.D.N.Y.
    Dec. 8, 2004) ...........................................................................................9, 14

State Div. of Human Rights v. Marine Midland Bank, 87 A.D.2d 982,
    450 N.Y.S.2d 109 (4th Dep't 1982) ......................................................................4

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) ...................................................10, 11

U.S. Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623 (7th Cir. 2003) .......................11

Victory v. Hewlett-Packard Co., 34 F. Supp. 2d 809 (E.D.N.Y. 1999)...........................5, 6

In re Vitamins Antitrust Litigation, No. Misc. 99-197, MDL 1285, 2001 WL
    34088807 (D.C. Cir. Mar. 13, 2001).....................................................................9

Wahlstrom v. Metro-North Commuter R.R. Co., 89 F. Supp. 2d 506
    (S.D.N.Y. 2000) ..................................................................................1, 4, 5, 6

Walker v. Thompson, 288 F.3d 1005 (7th Cir. 2002).....................................................11

Wallace v. New York City Dep't of Corr., No. 95 CV 4404, 1996 WL 586797
    (E.D.N.Y. Oct. 9, 1996) .................................................................................17

**STATUTES**                                                                    **PAGE(S)**

Fed. R. Civ. P. 8(a)(2)    ...................................................................................11

Defendants Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden, Arps" or the "Firm") and Susan Dornfeld ("Ms. Dornfeld") (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss, with prejudice, the First, Third, Fourth and Sixth Causes of Action in the Complaint of plaintiff Jonathan Jung ("Mr. Jung" or "Plaintiff") filed with the Court on April 29, 2005 (the "Complaint" or "Compl."), for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Even though Mr. Jung has conceded that he has no Title VII claims against Ms. Dornfeld, he continues to press his facially deficient NYCHRL claims against the Firm and Ms. Dornfeld and his untimely Title VII claims against the Firm. (P. Br. at 1, 2, 11.)[1]  In essence, Mr. Jung argues that the Complaint does not mean what it says, but if it does mean what it says, he should be permitted to rewrite it.  The Court should not permit Plaintiff to engage in such antics.

The NYCHRL pertains only to discriminatory conduct affecting persons within the City of New York.  See Wahlstrom v. Metro-North Commuter R.R. Co., 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000) ("[T]he NYCHRL only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs . . . .").  As fully established by the allegations of Mr. Jung's Complaint, he supposedly "began to

---

[1]  "P. Br." and "Opposition Brief" refer to the Memorandum of Law in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss dated July 8, 2005; "D. Br." and "Moving Brief" refer the Memorandum of Law in Support of Defendants' Motion to Dismiss the First, Third, Fourth and Sixth Causes of Action in Plaintiff's Complaint dated June 10, 2005.  All defined terms in the Moving Brief are incorporated herein.  For the Court's convenience, copies of all unreported decisions referred to herein which have not been provided to the Court in connection with the Moving Brief are submitted in an accompanying "Compendium of Unreported Cases."

experience discrimination" in February 2003 "following an office move to White Plains." (Compl. ¶¶ 17, 37.)  In light of these allegations, Plaintiff cannot now contend that he actually experienced discrimination when he worked in the Firm's New York City Office prior to the date he moved to the White Plains Office in February 2003.  The Complaint, as drafted, simply precludes any finding that Mr. Jung experienced discrimination while working in New York City and he should not be permitted to file an Amended Complaint alleging that he did.

In a like vein, Plaintiff's own allegations establish that he received the Right-To-Sue Letter from the Equal Employment Opportunity Commission ("EEOC") more than ninety days prior to the filing of his Complaint and are therefore fatal to his Title VII claims against the Firm.  (Compl. ¶ 7.)  Plaintiff nevertheless attempts to save his untimely Title VII claims by arguing that his counsel received the Right-To-Sue Letter from the EEOC four days after the date Plaintiff, by his own admission, received his copy.  It is well established that "the 90-day limitations period for bringing a Title VII action begins to run on the date that the right-to-sue letter is first received either by the claimant or by [his] counsel."  Greenidge v. Ben Hur Moving & Storage, Inc., No. 02-CV-1635, 2002 WL 1796812, at *3 (E.D.N.Y. Aug. 6, 2002).  Thus, because the Complaint states that Plaintiff actually received the Right-To-Sue Letter on January 27, 2005, the fact that Plaintiff's counsel may have received a copy of the Right-to-Sue Letter four days later on January 31, 2005 is irrelevant.  It is the date of first receipt by either Plaintiff or his counsel that controls.  Here, as alleged in the Complaint, that date is January 27, 2005, and Plaintiff's filing of this action on April 29, 2005 – ninety-two days later – renders his Title VII claims untimely.

<u>ARGUMENT</u>

<u>POINT I</u>

PLAINTIFF'S NEW YORK CITY HUMAN RIGHTS
LAW CLAIMS SHOULD BE DISMISSED WITH PREJUDICE
BECAUSE THE COMPLAINT DOES NOT AND CANNOT ASSERT
THAT PLAINTIFF WAS IMPACTED BY ANY ALLEGED DISCRIMINATORY
<u>CONDUCT WITHIN ANY OF THE FIVE BOROUGHS OF NEW YORK CITY</u>

A.    Mr. Jung's Own Allegations Confirm That He Has No
NYCHRL Claims, And His Newly Constructed "Continuing Violation"
<u>And "Pattern And Practice" Theories Cannot Rescue His NYCHRL Claims</u>

Mr. Jung's NYCHRL claims against Defendants, asserted as the Third and

Sixth Causes of Action in the Complaint, should be dismissed because Mr. Jung alleged

that discriminatory conduct "began" in February 2003 "following an office move to

White Plains."  (Compl. ¶¶ 17, 37.)  Mr. Jung concedes that "the NYCHRL governs

discriminatory conduct that occurs exclusively within the City of New York" and that

"even a decision to terminate Mr. Jung's employment, if made at Defendant Skadden

Arps's New York City office," would not give rise to a NYCHRL claim.  (P. Br. at 6, 7.)

Indeed, Mr. Jung does not attempt to distinguish any of the cases cited by Defendants

which establish that a cause of action under the NYCHRL requires a plaintiff to show

that he or she was actually impacted by alleged discriminatory conduct while working in

New York City.  (D. Br. at 7-9.)

Instead, Mr. Jung argues that there was a continuing violation or pattern

and practice that began in New York City.  In making this argument, Mr. Jung relies

exclusively on the following passage of a state court case, <u>Batchelor v. NYNEX</u>

<u>Telesector Res. Group</u>, 213 A.D.2d 189, 190, 623 N.Y.S.2d 235, 235 (1st Dep't 1995)

(alteration in original):

> We agree with the IAS Court that plaintiff's allegation that '[t]he offices of [defendant] relevant to this complaint' are located in New York City and White Plains, New York, is sufficient, for pleading purposes, to show that at least part of the activity complained of took place in New York City, and is thus cognizable under the [NYCHRL]. While that law [NYCHRL] does not provide a private cause of action for aggrieved individuals before its effective date of September 16, 1991, plaintiff has alleged discriminatory practices of a continuing nature, such that the dates of occurrence can be deemed any time subsequent to the inception of the practices up to the time of cessation.

(P. Br. at 6.) However, the main focus of the Batchelor case appears to have been whether the conduct at issue was actionable because at least a portion of such conduct occurred prior to the enactment of the NYCHRL, an issue not presented here. 213 A.D.2d at 190, 623 N.Y.S.2d at 235. From this passage, it appears that the conduct at issue in the Batchelor case may have commenced in White Plains and culminated in acts occurring in New York City, which is very different from what is alleged in the instant case. In addition, Plaintiff fails to disclose that the court in Batchelor based its decision entirely on NYCRR 465.3[e] and State Div. of Human Rights v. Marine Midland Bank, 87 A.D.2d 982, 450 N.Y.S.2d 109 (4th Dep't 1982). NYCRR 465.3[e] and the Marine Midland Bank case address the application of the continuing violation theory to the statute of limitations applicable to the New York State Human Rights Law. They do not cite the NYCHRL, have no application to the territorial application of the NYCHRL and cannot support the notion that acts occurring outside of New York City may give rise to a NYCHRL claim.

Moreover, in Wahlstrom, a case cited in the Moving Brief but pointedly ignored in the Opposition Brief, this Court held that "not only is Batchelor not binding on this Court, its holding is too ambiguous to provide significant guidance." 89 F. Supp. 2d at 528 n.22. Thus, in Wahlstrom this Court dismissed a railroad conductor's harassment

claim brought under the NYCHRL, even where defendant's statement to plaintiff that she
"'better shape up'" or she was "'going to get it'" was made in New York City, because the
remainder of the alleged harassment took place in White Plains. Id. at 511 (citation
omitted).

      In a like vein, Mr. Jung's contention that he has alleged a "pattern and
practice of discrimination, which began in Defendant Skadden Arps's New York City
office in 2002, and ended in its White Plains office with the termination of his
employment in 2004" is not only specious but also irrelevant.  (P. Br. at 6.)[2]  Plaintiff
does not cite a single case which applies a pattern or practice theory to a NYCHRL claim.
Under the standards applicable to a federal Title VII claim, a pattern or practice of
discrimination is much "'more than the mere occurrence of isolated or "accidental" or
sporadic discriminatory acts.'"  Victory v. Hewlett-Packard Co., 34 F. Supp. 2d 809, 820
(E.D.N.Y. 1999) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336
(1977)).  Rather, it exists only when discrimination is a "'company's standard operation
procedure—the regular rather than the unusual practice.'"  Id.  Mr. Jung's detailed
Complaint makes no allegations which could support a showing of pattern or practice
discrimination.  He has merely asserted several, isolated incidents of alleged
discrimination and then labeled such events a "pattern and practice" of discrimination.
(Compl. ¶ 58.)  This approach does not sufficiently allege a pattern or practice of
discrimination.  Blake v. Bronx Lebanon Hosp. Ctr., No. 02 Civ. 3827, 2003 WL
21910867, *5 (S.D.N.Y. Aug. 11, 2003) ("[A] plaintiff does not properly allege an

---

[2]    In addition, as fully set forth in Point I.A.2. below, the allegations of the Complaint
do not allege any discriminatory acts occurring in New York City.

ongoing discriminatory policy simply by invoking the magic words 'pattern' or 'practice.'").

Even assuming Mr. Jung could make such a showing – and he cannot – establishing a pattern or practice is relevant only to the issue of whether the employee's burden of proving discriminatory intent should be shifted so that the employer is required to rebut the allegation of discriminatory intent.  See Victory, 34 F. Supp. 2d at 820.  A finding of pattern and practice is therefore irrelevant to establishing the existence of a NYCHRL claim based in whole or in part on alleged conduct occurring outside of New York City.  In short, Plaintiff has cited no authority for the position that a showing of a pattern and practice of discrimination renders events occurring outside of New York City actionable under the NYCHRL.  Cf. Wahlstrom, 89 F. Supp. 2d at 527 (dismissing plaintiff's NYCHRL claims where alleged incidents predominantly took place in White Plains, New York).

Nevertheless, to squeeze within the ambiguous language of the Batchelor case, Mr. Jung contends that:  (1) Paragraph 17 of the Complaint which plainly states that "[b]eginning in February 2003, Mr. Jung began to experience discrimination based on his race and national origin" actually means that an alleged incident occurring in February 2003 was "the first direct evidence of Defendants' discriminatory animus," (2) "Plaintiff has . . . alleged numerous acts of discrimination in New York City, as stated more fully in Statement of Facts Section" of the Opposition Brief, and (3) if the Complaint is unclear, Defendants should have moved for a more definite statement rather than moving to dismiss the Complaint.  (P. Br. at 7-8 (emphasis added).)  Each of these contentions is wrong.

1.    The Plain Language Of The Complaint Establishes
That The Alleged Discriminatory Conduct Began To
<u>Occur After An Office Move To White Plains In February 2003</u>

Paragraph 17 of the Complaint could not be more clear.  In a single sentence, Plaintiff uses two forms of the verb "begin"[3] to describe when he allegedly first "experience[d] discrimination based on his race and national origin."  (Compl. ¶ 17.)  Mr. Jung is now attempting to avoid the plain meaning of this allegation by contending, in reliance upon Paragraph 37 of the Complaint, that Paragraph 17 of the Complaint "simply alleges the first <u>direct evidence</u> of discrimination" and that "[t]he discrimination [he] experienced occurred before February 2003, as alleged throughout the complaint . . . ." (P. Br. at 7.)  There is no possible way in which this description of Paragraph 17 can be reconciled with the actual language used in the Complaint.  Indeed, contrary to Plaintiff's suggestion, Paragraph 37 cannot be read to suggest that an allegedly derogatory comment made by Ms. Dornfeld in February 2003 shows that any prior incidents were discriminatory.  Rather, Paragraph 37 can only be fairly read to confirm that the allegations giving rise to Mr. Jung's claims are based on events occurring "following [the] office move to White Plains."  (Compl. ¶ 37.)  Accordingly, Mr. Jung's assertion that he experienced discrimination prior to February 2003 is diametrically opposed to his unambiguous allegation in the Complaint that "[b]eginning in February 2003, Mr. Jung began to experience discrimination."  (Compl. ¶ 17 (emphasis added).)

---

[3]    The word "begin" is defined as follows:  "to do the first part of an action : go into the first part of a process : START . . . to come into existence : ARISE : to have a starting point . . . ."  Merriam-Webster Online Dictionary, available at http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=begin.

It is these very allegations made by Mr. Jung in his Complaint, rather than his contradictory assertions in the Opposition Brief, that are controlling here. "To require courts to accept as true factual allegations made in [legal memoranda] when those allegations <u>directly contradict</u> the facts set forth in the complaint 'would be to stretch Rule 12(b)(6) far beyond even the generous pleading standards that we apply to pro se plaintiffs.'" <u>Izzo v. City of Syracuse</u>, No. 98-CV-0778 FJS GLS, 2000 WL 1222014, at *6 (N.D.N.Y. Aug. 3, 2000) (citation omitted) (granting defendants' motion to dismiss plaintiff's claims brought under the Fourth Amendment because <u>plaintiff</u> <u>himself</u> alleged in his pleadings that consent to the subject searches was granted by individuals on the subject premises with plaintiff's permission, without regard to plaintiff's contradictory assertions in his objections to defendants' motion); <u>see also</u> <u>Henthorn v. Dep't of Navy</u>, 29 F.3d 682, 688 (D.C. Cir. 1994) ("[F]actual allegations in briefs . . . may never be considered when deciding a 12(b)(6) motion and most certainly may not be considered when the facts they contain contradict those alleged in the complaint." (citation omitted)), <u>cited in</u> <u>Izzo</u>, 2000 WL 1222014, at *6.

Moreover, as stated by this Court in <u>Leibowitz v. Cornell University</u>, No. 03 CV 9976, 2005 WL 267560, at *5 n.3 (S.D.N.Y. Feb. 3, 2005), a plaintiff may not "replead the complaint alleging a new theory to support [his] discrimination claims in an effort to survive defendants' motion to dismiss." In that case, in plaintiff's memorandum in opposition to defendants' motion to dismiss, plaintiff for the first time argued that "'[a]ssuming arguendo that Defendants did not terminate Plaintiff's employment . . . they still demoted her which constitutes an adverse employment action.'" <u>Id.</u> (alteration in original). The court would not accept such assertion and granted defendants' motion to

dismiss the plaintiff's discrimination claims because the term "demotion" did not appear anywhere within plaintiff's complaint. Id.; see also Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 WL 2809989, at * 5 (S.D.N.Y. Dec. 8, 2004) ("Additional facts submitted in a plaintiff's opposition to a motion to dismiss cannot be considered by the Court."); In re Vitamins Antitrust Litig., No. Misc. 99-197, MDL 1285, 2001 WL 34088807, at *2 (D.C. Cir. Mar. 13, 2001) (granting defendants' motion to dismiss based on the language of plaintiff's complaint, not on contradictory characterizations of his claim asserted for the first time in his response to defendants' motion).

Just as the plaintiff's complaint in Leibowitz failed to allege that the defendants had demoted her, the Complaint in this case does not state that any of the alleged discriminatory incidents pertaining to Mr. Jung occurred either in New York City or prior to February 2003 when Mr. Jung moved to the Firm's White Plains Office. Such new assertions made by Plaintiff in conclusory fashion in the Opposition Brief are in fact contradicted by the allegations contained in the Complaint. Accordingly, when considering Defendants' motion to dismiss, this Court should not rely on such claims. Rather, this Court should only look to the factual allegations made in the Complaint.

2.    The Complaint Does Not Contain Allegations
      Of Discrimination Occurring In New York City

Mr. Jung's contention that he has "alleged numerous acts of discrimination in New York City, as stated more fully in the Statement of Facts section" is simply wrong. (P. Br. at 7.) The Statement of Facts section of the Opposition Brief does not tie any alleged act of discrimination to New York City or to a period prior to the office move to White Plains. In fact, the words "New York City" do not appear at all in the Statement of Facts section of the Opposition Brief. (P. Br. at 2-4.) Likewise, on its face, the

Statement of Facts section of the Opposition Brief does not specify a single act of supposed discriminatory conduct occurring prior to February 2003 with respect to Mr. Jung.[4]  (Id.)  To the extent that this Court views the Complaint's references to alleged discriminatory treatment of other employees of the Firm as allegations of discrimination occurring prior to February 2003 – which it should not – such allegations would be irrelevant.  Put simply, allegations that others were wrongly treated do not give rise to a discrimination claim by Mr. Jung.  See Leibowitz, 2005 WL 267560, at *4 (holding plaintiff's allegations that the six employees terminated by the university as part of its budgetary cuts were all women over the age of forty were insufficient to show that the university's decision not to renew plaintiff's appointment was motivated due to her age or gender).  Thus, contrary to Plaintiff's conclusory and unsupported statement in the Opposition Brief, neither the Complaint nor the Statement of Facts section of the Opposition Brief alleges discrimination occurring in New York City sufficient to withstand Defendants' motion to dismiss Mr. Jung's NYCHRL claims.

      3.      <u>Defendants Were Not Required To Move For A More Definite Statement</u>

      Mr. Jung's reliance on <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 514 (2002), for the proposition that Defendants should have moved for a more definite statement under Rule 12(e) instead of moving to dismiss Mr. Jung's NYCHRL claims is wholly misplaced.  (P. Br. at 7-8.)  Defendants' motion to dismiss stands not on the

---

[4]    At most, Plaintiff alleges that "[o]n or about October 7, 2002, Skadden Arps rehired Ms. Dornfeld, and she began to aggressively pursue a pattern of discrimination . . . . This included, within a few months of her return to Skadden Arps, interviewing candidates for Mr. Jung's position."  (Compl. ¶ 23.)  Mr. Jung does not allege that any of these candidates were Caucasian or, even more to the point, that he was replaced by any of these candidates, let alone prior to the February 2003 relocation of his department to the White Plains Office.

grounds that Mr. Jung has failed to plead sufficient facts, but rather that he pleaded facts which undermine his NYCHRL claims and, in fact, prove defenses to such causes of action. The U.S. Supreme Court in <u>Swierkiewicz</u> expressly stated that the dismissal of a discrimination complaint is consistent with FRCP 8(a)(2) when it is clear that "no relief could be granted under any set of facts that could be proved <u>consistent with the allegations</u>." <u>Swierkiewicz</u>, 534 U.S. at 514 (emphasis added) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)). Moreover, numerous courts following <u>Swierkiewicz</u> state that "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense." <u>See</u> <u>U.S. Gypsum Co. v. Indiana Gas Co., Inc.</u>, 350 F.3d 623, 626 (7th Cir. 2003) (citing <u>Walker v. Thompson</u>, 288 F.3d 1005 (7th Cir. 2002) (applying this principle to the period of limitations)). Here, Mr. Jung pleaded himself out of his NYCHRL claim because the allegations of the Complaint clearly state that any alleged discriminatory acts against him began after he left New York City. (Compl. ¶¶ 17, 37.)

These allegations include the plain assertion that Mr. Jung began to experience discrimination in February 2003 following his relocation to the Firm's White Plains Office. (<u>Id.</u>) Accordingly, there is no need for a more definite statement. To the contrary, Plaintiff's own Complaint definitively shows that Plaintiff has not and cannot state a claim under the NYCHRL.

B.   Even If This Court Does Not Dismiss Mr. Jung's
     Discrimination Claim Asserted Under The New York City
     Human Rights Law – Which It Should – It Should Nevertheless
     <u>Dismiss Mr. Jung's New York City Human Rights Law Retaliation Claim</u>

The Opposition Brief fails to make any contentions to dispute Defendants' motion to dismiss Mr. Jung's Sixth Cause of Action which attempts to set forth a

retaliation claim under the NYCHRL.  Indeed, none of the alleged acts pertaining to Mr.

Jung's NYCHRL retaliation claim occurred during Mr. Jung's employment in the Firm's

New York City Office.  The Complaint makes it clear that Mr. Jung's first report to the

Firm of Ms. Dornfeld's alleged discriminatory conduct occurred in March 2004, over a

year after Mr. Jung's relocation to the Firm's White Plains Office.  (Compl. ¶¶ 37, 47.)

Moreover, the Firm's alleged retaliatory action taken against Mr. Jung – the termination

of his employment (Compl. ¶¶ 18, 57, 113) – took place on June 7, 2004, also during Mr.

Jung's employment in the Firm's White Plains Office.  Thus, it is clear that Mr. Jung has

not stated a claim of retaliation under the NYCHRL.  Accordingly, even if this Court

does not dismiss Mr. Jung's NYCHRL discrimination claim – which it should – it should

in any event dismiss with prejudice Mr. Jung's NYCHRL retaliation claim asserted as

Plaintiff's Sixth Cause of Action in the Complaint.

<u>POINT II</u>

MR. JUNG'S TITLE VII CLAIMS AGAINST THE FIRM SHOULD
BE DISMISSED WITH PREJUDICE BECAUSE MR. JUNG FAILED TO FILE
<u>THE COMPLAINT WITHIN 90 DAYS OF RECEIPT OF A RIGHT-TO-SUE LETTER</u>

Plaintiff does not dispute that Title VII claims, to be timely, must be filed

within a strictly enforced ninety-day time limit from the receipt of a right-to-sue letter

from the EEOC.  (D. Br. at 9-10; P. Br. at 8.)  By his own admission, Mr. Jung received

his Right-to-Sue Letter on or about January 27, 2005.  (Compl. ¶ 7; D. Br. at 11.)

Accordingly, for his Title VII claims to be timely, he was required to file the Complaint

by April 27, 2005. However, he did not file the Complaint with this Court until April 29,

2005 – two days too late.  (D. Br. at 11.)

12

To avoid dismissal of his Title VII claims against the Firm, asserted as the First and Fourth Causes of Action in the Complaint,[5] Mr. Jung argues that the date his counsel received the Right-To-Sue Letter, i.e., January 31, 2005, is controlling or, in the alternative, that he is entitled to a presumption that he actually received the Right-To-Sue Letter three days after it was mailed, i.e., that he received it on January 30, 2005. His reliance on these theories is entirely misplaced.

A.    The Date That Mr. Jung's Counsel Allegedly Received The Right-To-Sue Letter Is Immaterial Because Mr. Jung Allegedly Received The Right-To-Sue Letter At An Earlier Date

Mr. Jung stated in Paragraph 7 of the Complaint that "[o]n or about January 27, 2005, [he] received a Dismissal and Notice of Right to Sue letter from the EEOC." (Compl. ¶ 7.) In the Opposition Brief, Mr. Jung attempts to misdirect the Court by asserting that the ninety-day period started to run on the date his counsel claims to have received the Right-To-Sue Letter on January 31, 2005. (P. Br. at 8.) However, this allegation is completely irrelevant and does not affect the outcome of the legal analysis here. Even assuming, arguendo, that Mr. Jung's attorney did not receive the Right-To-Sue Letter until January 31, 2005, Mr. Jung's Title VII claim still fails because the Complaint was not filed within ninety days of Mr. Jung's receipt of the Right-to-Sue Letter.

As Mr. Jung accurately quotes Greenidge in the Opposition Brief, "the 90-day limitations period for bringing a Title VII action begins to run on the date that the right-to-sue letter is first received either by the claimant or by [his] counsel." 2002 WL

---

[5]    Mr. Jung has voluntarily withdrawn the First and Fourth Causes of Action in the Complaint as to Ms. Dornfeld. (P. Br. at 1, 2, 11.)

1796812, at *3 (emphasis added). Thus, the limitations period begins not solely on the date claimant's counsel receives notice from the EEOC but rather runs from the date the claimant receives a right-to-sue letter if the claimant receives the letter first. Here, since Mr. Jung allegedly received the Right-To-Sue Letter first – January 27, 2005 (Compl. ¶ 7) – the date that his counsel allegedly received the letter – January 31, 2005 (P. Br. at 8) – is immaterial.

Moreover, the claim that Mr. Jung's counsel received the Right-to-Sue Letter on January 31, 2005 is absent from the Complaint. As set forth in Point I.A.1. above, "[a]dditional facts submitted in a plaintiff's opposition to a motion to dismiss cannot be considered by the Court." Sobek, 2004 WL 2809989, at *5. Accordingly, based on the allegations of the Complaint, this Court should find that the 90-day limitations period began on January 27, 2005 and dismiss Mr. Jung's Title VII claims against the Firm since the Complaint was filed two days late.

B.    This Court Should Accept As True The Date Alleged By Mr.
      Jung In The Complaint That He Received The Right-To-Sue Letter

Plaintiff incorrectly asserts that if the Court does not accept the date his counsel received the Right-to-Sue Letter as controlling, then the Court should simply presume, pursuant to Rule 6(e) of the Federal Rules of Civil Procedure, that Plaintiff received the Right-To-Sue Letter three days after it is was mailed. (P. Br. at 9.) As clearly set forth in Holmes v. NBC/GE, 914 F. Supp. 1040 (S.D.N.Y. 1996), cited in the Opposition Brief, this is a presumption which is "invoked when the parties fail to set forth information concerning the actual date of receipt of the right-to-sue letter." Id. at 1043. Greenidge, also relied upon by Plaintiff in the Opposition Brief, makes plain that this presumption is not irrebuttable. 2002 WL 1796812, at *3 (holding that the Rule 6(e)

presumption was inapposite where plaintiff's complaint set forth a date of receipt of the right-to-sue letter); see also Ruiz v. New York City Fire Dep't., No. 00 Civ. 4371 ASG, 2001 WL 767009, at *2 (S.D.N.Y. July 9, 2001) (holding that the "rebuttable presumption that a mailed document is received three days after its mailing" does not "override[] [the] well-established standards for deciding a motion to dismiss and require[] a court to disregard a complaint's express allegations").

Notably, Plaintiff did not address in the Opposition Brief – let alone distinguish – the Ruiz decision cited by Defendants in the Moving Brief.  In Ruiz, the plaintiff alleged in her complaint:  "On or about March 15, 2000, plaintiff received a right-to-sue letter from the EEOC."  2001 WL 767009, at * 1.  Thus, the court found, for purposes of defendant's 12(b)(6) motion, that plaintiff received the letter on March 15, 2000.  Id. at *2; see also Harrison v. New York City Admin. for Children's Servs., No. 02 Civ. 0947, 2003 WL 21640381, at *3 (S.D.N.Y. July 7, 2003) (holding, for purposes of a 12(b)(6) motion, that a court must accept plaintiff's allegation in her complaint concerning the date she received her right-to-sue letter from the EEOC); Everson v. New York City Transit Auth., 216 F. Supp. 2d 71, 78 (E.D.N.Y. 2002) (following the logic of Ruiz, and accepting as true, for purposes of a motion to dismiss, the date alleged by plaintiff in his complaint that he received the right-to-sue letter).

Here, as in Ruiz, Mr. Jung's Complaint alleges the date on which he received the Right-to-Sue Letter from the EEOC.  Specifically, the Complaint states: "On or about January 27, 2005, Mr. Jung received a Dismissal and Notice of Right to Sue letter from the EEOC."  (Compl. ¶ 7.)  Accordingly, the three-day presumption is not applicable here and this Court should not, as Plaintiff suggests in the Opposition Brief (P.

15

Br. at 9-10), presuppose that Mr. Jung received the Right-To-Sue Letter on January 30,

2005. Rather, for purposes of this 12(b)(6) motion, this Court should accept as true the

allegation in the Complaint – that Mr. Jung received the Right-to-Sue Letter on January

27, 2005. Consequently, this Court should dismiss Mr. Jung's Title VII claims because

Mr. Jung did not file the Complaint until April 29, 2005 – ninety-two days following

such date of receipt. (D. Br. at 11.)[6]

POINT III

THIS COURT SHOULD NOT GRANT MR. JUNG
LEAVE TO AMEND HIS CLAIMS AGAINST DEFENDANTS

Mr. Jung has requested permission to file an amended complaint in the

event this Court finds that "Plaintiff has insufficiently alleged the date that the Right to

Sue Letter was actually received, or the dates of discrimination committed in New York

City . . . ." (P. Br. at 11.) This request should be denied because Plaintiff has failed to

provide the Defendants and this Court with his proposed amendments to the Complaint,

leaving the Court and Defendants to guess at the precise nature of the contemplated

changes. Courts within this district have repeatedly denied motions for leave to amend

pleadings where the movant failed to provide the proposed amendments with the motion.

See, e.g., AT&T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999)

(denying motion to amend pleading where movant failed to provide the proposed

---

[6]   For these same reasons, Holmes, 914 F. Supp. at 1042 n.3, and Roush v. Kartridge
Pak Co., 838 F. Supp. 1328, 1335 (S.D. Iowa 1993), upon which Plaintiff relies, do
not support his position. (P. Br. at 9.) Those cases merely stand for the proposition
that it may not be unreasonable to conclude that actual receipt occurred five to seven
days after mailing where the facts surrounding receipt are not asserted. Here, the
Complaint sets forth the actual date of receipt by Plaintiff and that date renders the
Title VII claims untimely.

amendments); <u>Byas v. New York City Dep't of Corr.</u>, 173 F.R.D. 385, 388 (S.D.N.Y.

1997) (denying plaintiff's motion for leave to amend complaint where plaintiff failed to

submit a proposed amended complaint); <u>Alston v. New York City Transit Auth.</u>, No. 97

Civ. 1080, 1998 WL 437154, at *2 & n.2 (S.D.N.Y. Aug. 3, 1998) (same).  Indeed, the

Opposition Brief has done little to clarify the scope of the proposed amendments,

representing instead a collection of disorganized legal arguments and factual assertions

that are apparently directed at the pending motion to dismiss.

        It is not at all surprising that Mr. Jung failed to include a copy of the

proposed amended complaint with the Opposition Brief, given that the defects in his

NYCHRL and Title VII claims are not capable of being cured by amendment.  <u>See</u> <u>Banco

Espirito Santo De Investimento v. Citibank</u>, No. 03 Civ. 1537 (MBM), 2003 WL

23018888, at *18 (S.D.N.Y. Dec. 22, 2003) (holding that an amendment to a complaint

would be futile where a plaintiff would have to extract facts and replace them with

contrary allegations); <u>Wallace v. New York City Dep't of Corr.</u>, No. 95 CV 4404, 1996

WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (accepting as true the facts as described in the

original complaint, rather than in the amended complaint, where plaintiff filed the

amended complaint after defendants filed their motion to dismiss and "plaintiff blatantly

change[d] his statement of the facts in order to respond to the defendants' motion to

dismiss"); <u>see also</u> <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990)

(upholding district court's dismissal of plaintiff's claim without leave to amend because

"[i]t would not be possible for [plaintiff] to amend his complaint . . . without

contradicting any of the allegations of his original complaint"); <u>Health-Chem Corp. v.

Baker</u>, 915 F.2d 805, 810 (2d Cir. 1990) (denying leave to amend where there was "no

merit in the proposed amendments").  Here, Plaintiff has stated in plain, unambiguous

language in the Complaint that "[o]n or about January 27, 2005, Mr. Jung received a

Dismissal and Notice of Right to Sue letter."  (Compl. ¶ 7.)  In addition, the Complaint

alleges that:  "Beginning in February 2003, Mr. Jung began to experience discrimination

based on his race and national origin."  (Compl. ¶ 17 (emphasis added).)  Plaintiff would

have to do more than merely add facts to the Complaint to state valid claims under either

the NYCHRL or Title VII; he would have to extract those key allegations and replace

them with contrary contentions.  For these reasons, amendment would be improper and

futile, and it should not be permitted.

<u>**CONCLUSION**</u>

For the foregoing reasons, and for the reasons set forth in the Moving

Brief, this Court should grant in all respects Defendants' motion to dismiss the First,

Third, Fourth and Sixth Causes of Action in the Complaint with prejudice and such other

and further relief as this Court may deem just and proper, including costs, and should

deny Plaintiff's request to file an amended complaint.

Dated: New York, New York
        July 29, 2005

Respectfully submitted,

/s/ David E. Schwartz
Henry P. Baer (HB 1305)
David E. Schwartz (DS 4473)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Attorneys for Defendants
  Skadden, Arps, Slate, Meagher
  & Flom LLP and Susan Dornfeld

18

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on July 29, 2005, I caused a true copy of the ***Defendants' Reply Memorandum of Law in Further Support of Its Motion to Dismiss the First, Third, Fourth and Sixth Causes of Action in Plaintiff's Complaint*** and ***Compendium of Unreported Cases Cited in Defendants' Reply Memorandum of Law in Further Support of Its Motion to Dismiss the First, Third, Fourth and Sixth Causes of Action in Plaintiff's Complaint*** to be served upon the following party in the manner indicated:

<u>By Federal Express, overnight delivery</u>

Brendan Chao
150 Great Neck Road, Suite 304
Great Neck, NY 11021

Dated:  New York, New York
        July 29, 2005

Steven Ray Katzenstein (S.K. 7599)