UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
JONATHAN JUNG,

                                              :
                         Plaintiff,
                                              :      05-CV-4286 (MBM)
           - against -
                                              :      ECF Case
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP and SUSAN DORNFELD,                 :

                         Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x


**COMPENDIUM OF UNREPORTED CASES
CITED IN DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE FIRST, THIRD, FOURTH
AND SIXTH CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT**


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ATTORNEYS FOR DEFENDANTS
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
AND SUSAN DORNFELD

FOUR TIMES SQUARE

BOROUGH OF MANHATTAN

CITY OF NEW YORK

NEW YORK 10036-6522

(212) 735-3000

## COMPENDIUM TABLE OF CONTENTS

**TAB**

Alston v. New York City Transit Authority, No. 97 Civ. 1080, 1998 WL 437154
(S.D.N.Y. Aug. 3, 1998) ...................................................................................A

Banco Espirito Santo De Investimento v. Citibank, No. 03 Civ. 1537 (MBM),
2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...................................................B

Blake v. Bronx Lebanon Hospital Center, No. 02 Civ. 3827, 2003 WL 21910867
(S.D.N.Y. Aug. 11, 2003) .................................................................................C

Greenidge v. Ben Hur Moving & Storage, Inc., No. 02-CV-1635, 2002 WL
1796812 (E.D.N.Y. Aug. 6, 2002)....................................................................D

Izzo v. City of Syracuse, No. 98-CV-0778 FJS GLS, 2000 WL 1222014
(N.D.N.Y. Aug. 3, 2000) ...................................................................................E

Leibowitz v. Cornell University, No. 03 CV 9976, 2005 WL 267560 (S.D.N.Y.
Feb. 3, 2005) ..................................................................................................... F

Sobek v. Quattrochi, No. 03 Civ. 10219, 2004 WL 2809989 (S.D.N.Y. Dec. 8,
2004) ................................................................................................................G

In re Vitamins Antitrust Litigation, No. Misc. 99-197, MDL 1285, 2001 WL
34088807 (D.C. Cir. Mar. 13, 2001)................................................................H

Wallace v. New York City Department of Corrections, No. 95 CV 4404, 1996
WL 586797 (E.D.N.Y. Oct. 9, 1996)................................................................. I

A

Westlaw.

Not Reported in F.Supp.2d

1998 WL 437154 (S.D.N.Y.)

**(Cite as: 1998 WL 437154 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Harold ALSTON, Plaintiff,
v.
NEW YORK CITY TRANSIT AUTHORITY,
Defendant.
**No. 97 CIV. 1080(RWS).**

Aug. 3, 1998.

MEMORANDUM OPINION

SWEET, D. J.

**\*1** Plaintiff Harold Alston ("Alston") has moved for an order consolidating the instant case with a separate action in state court, and for leave to amend his complaint. Defendant New York City Transit Authority (the "Transit Authority") opposes the motion. For the reasons set forth below, the motions to consolidate and to amend are denied.

*Parties*

Alston is a New York State resident.

The Transit Authority is a New York State public benefit corporation.

*Prior Proceedings*

Alston filed this action on February 14, 1997, and filed a First Amended Complaint on September 4, 1997. The instant motion was filed on March 5, 1998, and was heard on May 14, 1998, at which time it was deemed fully submitted.

*Facts*

Alston alleges in his complaint that he was hired in 1979 as a bus driver by NYCTA. Alston alleges that at all times his work was rated better than satisfactory. He alleges that in August 1986, he was suspended for ten days in retaliation for finding Alston, an African-American, in conversation with a white bus driver, while not suspending the white driver. Alston further alleges that on October 9, 1986, he was suspended for circulating a flyer he had prepared regarding the previous incident, and was "brought up on new charges for his dismissal."

Alston filed an EEOC charge on October 26, 1996, and on February 3, 1997 he was discharged from employment.

Alston's complaint alleges a single claim of violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

*Discussion*

Although Alston fails to note the Federal Rule under which he moves to consolidate, presumably he relies on Rule 42(a) of the Federal Rules of Civil Procedure, which provides:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
Fed.R.Civ.P. 42(a).

Alston contends that he commenced an action for breach of the duty of fair representation and negligence against the Transport Workers Union of Greater New York (the "TWU Action") on February 9, 1993. *See Alston v. Transport Workers Union of Greater New York,* Index No. 103403/93

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1998 WL 437154 (S.D.N.Y.)

**(Cite as: 1998 WL 437154 (S.D.N.Y.))**

(N.Y. Sup.Ct. filed Feb. 9, 1993). The TWU Action is pending before the Supreme Court of the State of New York, County of New York.

The TWU Action is not "pending before the court" as required by Rule 42(a), and therefore cannot be consolidated. Rule 42(a) does not provide the authority to consolidate a case pending before another district court. *See National Equip. Rental, Ltd. v. Fowler,* 287 F.2d 43, 47 (2d Cir.1961); *Facen v. Royal Rotterdam Lloyd S.S. Co.,* 12 F.R.D. 443, 443 (S.D.N.Y.1952). *A fortiori,* the Court cannot consolidate an action pending before a state court. [FN1]

> FN1. Alston cites no authority in support of its position that the Court has authority to consolidation these actions.

**\*2** Alston's notice of motion states that he also seeks to file a second amended complaint. Alston, however, failed to file a proposed second amended complaint along with the notice of motion, [FN2] did not identify the federal rule upon which he was moving to amend the complaint, [FN3] and did not address his motion to amend in his memorandum of law. [FN4] Accordingly, the motion to amend the complaint is denied without prejudice.

> FN2. Rule 7(b) of the Federal Rules of Civil Procedure requires that motions "state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed.R.Civ.P. 7(b). In order to satisfy the prerequisite of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought. *See Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y.1993). Where the proposed amended complaint does not accompany the motion to amend, the Court may hold the motion in abeyance pending the filing of that proposed complaint, or the Court may deny the motion without prejudice. *Id.*

> FN3. *See* Local Rule 7.2 ("Upon any motion based upon rules or statutes, the notice of motion or order to show cause shall specify the rules or statutes upon which the motion is predicated.

> FN4. *See* Local Rule 7.1 ("[A]ll motions .... shall be supported by a memorandum of law, setting forth the points and authorities relied upon in support of or in opposition to the motion, .... Willful failure to comply with this rule may be deemed sufficient cause for the denial of a motion ...."

*Conclusion*

For the reasons set forth above, Alston's motions to consolidate and to amend are denied.

It is so ordered.

1998 WL 437154 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97cv01080 (Docket)

(Feb. 14, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

B

Westlaw.

Not Reported in F.Supp.2d

Page 1

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
BANCO ESPIRITO SANTO DE
INVESTIMENTO, S.A., Plaintiff,
v.
CITIBANK, N.A., Defendant.
**No. 03 Civ. 1537(MBM).**

Dec. 22, 2003.

**Background:** Investor in notes issued by investment fund sued promoter following decline in value. Promoter moved to dismiss.

**Holdings:** The District Court, Mukasey, J., held that:
(1) there was no oral contract committing promoter to supervise fund and provide information to investor;
(2) there was no violation of covenant of good faith and fair dealing;
(3) there was no recovery on theory of promissory estoppel;
(4) investor could not recover as third party beneficiary of administrative contracts between promoter and fund;
(5) there was no liability for fraud;
(6) there was no breach of fiduciary duty; and
(7) there was no unjust enrichment.
Case dismissed with prejudice.

West Headnotes

**[1] Contracts** ⚖═193
95k193 Most Cited Cases
There was no oral contract, under New York law,

committing promoter of investment to skillfully manage funds, keep investor informed as to status of investment and provide investor with other relevant information, when marketing presentations, offering memorandum, and letter of intent all disclaimed intent of promoter to be bound outside of commitments contained in offering memorandum, which did not include those in question.

**[2] Contracts** ⚖═326
95k326 Most Cited Cases
Under New York law, absence of any enforceable contract committing promoter of investment funds to skillfully manage funds, keep investor informed as to status of investment and provide investor with other relevant information, precluded claim that promoter breached implied covenant of good faith and fair dealing in contract performance.

**[3] Estoppel** ⚖═85
156k85 Most Cited Cases
Under New York law of promissory estoppel, promoter of investment fund made no promises regarding supervision or supplying of information to investors, when promoter emphasized that it was entering into no agreements beyond written terms of offering memorandum, which did not include commitments in question.

**[4] Estoppel** ⚖═85
156k85 Most Cited Cases
Under New York law governing estoppel, investors in investment fund could not reasonably rely on alleged oral representations of promoter, that it would personally supervise fund and continually provide investor with information, in view of sophistication of parties, failure of investor to have commitments memorialized in offering memorandum, and investor's denial in writing of any reliance on representations of promoter.

**[5] Contracts** ⚖═187(1)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

95k187(1) Most Cited Cases
Under New York law, investor in investment funds
was not third party beneficiary under administrative
contracts between funds' promoter and portfolio
manager, which committed promoter to assist
manager in specified ways; by their terms
administrative agreements benefitted only parties
and successors, any obligations to investors were
those owed generally to shareholders, reliance on
commitments was unreasonable, and promoter was
promisor, rather than promisee, whose intention to
benefit third party was of primary importance.

**[6] Contracts ☞187(1)**
95k187(1) Most Cited Cases
Under New York law, investor was not third party
beneficiary of contracts obligating investment fund's
promoter to provide specified services to fund,
despite claim that fund was affiliate of promoter
that would not sue to enforce contractual rights,
leaving investor as only contract enforcer; third
party standing to sue required absence of any party
that could sue, not any party that would sue.

**[7] Contracts ☞187(1)**
95k187(1) Most Cited Cases
Under New York law presence in contract, calling
for promoter of investments funds to provide
specified services to fund, of provision limiting
liability to acts of deliberate or bad faith conduct,
precluded any liability of investment fund promoter
to investor, as third party beneficiary of contract,
when no such conduct was alleged.

**[8] Fraud ☞13(2)**
184k13(2) Most Cited Cases
Under New York law, failure to allege that
investment funds promoter knew funds were in
difficult financial situations, at time it allegedly
made fraudulent misrepresentations inducing
investors to acquire fund's notes, precluded liability
for fraud in inducement.

**[9] Fraud ☞32**
184k32 Most Cited Cases
Under New York law, claims that promoter of
investment funds misrepresented extent of its
intended supervisory role in fund management, and

its intention to keep investor informed, could not be
used to support fraud in inducement claims when
they were also used in support of breach of contract
claims.

**[10] Fraud ☞36**
184k36 Most Cited Cases
Under New York law, investor could not claim it
was induced to make investments in fund in reliance
upon fraudulent representations of promoter, in
light of frequent disclaimers contained in various
documents associated with transaction.

**[11] Fraud ☞32**
184k32 Most Cited Cases
Breach of fiduciary duty could not be established,
under New York law, against promoter of
investment funds, when based on claim that
promoter failed to carry out supervisory and
informational duties that were also alleged as basis
of breach of contract claims, there was no special
relationship of trust, and there was no showing of
deceitful intent.

**[12] Implied and Constructive Contracts ☞3**
205Hk3 Most Cited Cases
Promoter of investment funds alleged to have been
misrepresented to investors was not unjustly
enriched, under New York law, through receipt of
administrative funds, and alleged incident of
self-dealing, when fees and self-dealing were
authorized under contract documents.
Linda C. Goldstein, Covington & Burling, New
York, New York, New York, for Plaintiff.

Eugene D. Gullard, Peter D. Trooboff, Covington
& Burling, Washington D.C., for Plaintiff.

David L. Carden, Jayan W. Tambe, Todd R.
Geremia, Jones, Day, Reavis & Pogue, New York,
New York, for Defendant.

OPINION AND ORDER

MUKASEY, J.

*1 Plaintiff Banco Espirito Santo de Investimento,
S.A., ("BESI") invested in two structured finance

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

(Cite as: 2003 WL 23018888 (S.D.N.Y.))

Page 3

funds, Captiva I and Captiva III, marketed and later managed by defendant Citibank. To make these investments, BESI signed contracts with the Captiva funds. After losing money on these investments, BESI has sued on theories of breach of contract, fraud in the inducement, promissory estoppel, breach of fiduciary duties, breach of the duty of good faith and fair dealing, and unjust enrichment. Citibank has moved to dismiss. For the reasons set forth below, Citibank's motion is granted.

## I.

Plaintiff BESI is incorporated under the laws of Portugal with its headquarters and principal place of business in Portugal. (Compl.¶ 4) Defendant Citibank is a federally-chartered banking corporation with its headquarters and principal place of business in New York. (Compl.¶ 5) BESI is seeking damages of at least $25 million, exclusive of interest and costs. (Compl.¶¶ 2,6) Diversity jurisdiction therefore is present, *see* 28 U.S.C. § 1332(a)(2), and venue in this court is proper under 28 U.S.C. § 1391 because Citibank resides in this district. (Compl.¶¶ 5,7) New York law, upon which the parties have relied, controls. *See Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, NJ,* 160 F.3d 124, 128 (2d Cir.1998) (parties' consent to application of forum law completes choice of law inquiry); *American Fuel Corp. v. Utah Energy Development Co.,* 122 F.3d 130, 134 (2d Cir.1997) (same).

## II.

The following facts are drawn from BESI's complaint and related documents. Both parties have submitted several documents in addition to the complaint in aid of deciding Citibank's motion to dismiss. BESI has not objected to the additional documents submitted by Citibank and has submitted additional documents itself. All of the documents reviewed for the purposes of deciding Citibank's motion to dismiss are well within the scope of this court's review on a dismissal motion as they are incorporated into the complaint either by reference or through BESI's reliance in making the allegations in the complaint. *See Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (the review of documents on a dismissal motion may encompass "any written

instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference ... and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citations omitted); *I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991) (the review may include a pertinent document where "the complaint contains only 'limited quotation' from that document"). Accepting all BESI's allegations as true, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), "and draw[ing] all reasonable inferences in the plaintiff's favor," *Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir.1998) (internal quotation marks and citation omitted), BESI has failed to state a claim for relief.

**\*2** The parties here are sophisticated, international banking institutions. In March 1997, BESI invested $10 million in a structured finance fund created by Citibank called Captiva Finance Ltd. ("Captiva I"). (Compl.¶ 11) In May 1998, BESI invested $15 million in another structured finance fund also created by Citibank called Captiva III Finance Ltd. ("Captiva III"). (Compl.¶ 13) The investment funds, consisting of senior debt obligations of U.S. corporations, issued two classes of interest-bearing notes: Class A Notes, which were secured, and Income Notes, which were unsecured and subordinated to the Class A Notes. (Compl.¶ 8,12) BESI opted to buy the unsecured, subordinated Income Notes. (Compl.¶¶ 11,13) BESI claims that it invested in both Captiva funds in reliance on the oral and written statements made or provided by Citibank's representatives. (*Id.*)

Prior to BESI's initial investment, Citibank marketed Captiva I to BESI through two representatives, Phillipe Collot and Stephanie Golamco. (Compl.¶ 8) Collot and Gollamco represented that Citibank would take a proactive role in monitoring the fund and would keep BESI informed about its status. (Compl.¶ 10) Collot and Golamco also represented that the Income Notes were a good investment "for investors seeking preservation of capital," which BESI had explained

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

was its goal. (*Id.*) BESI further explained that because it was unfamiliar with the U.S. market it would be relying "on Citibank to perform the supervisory and management functions that BESI would ordinarily perform in relation to its investment." (*Id.*) Collot and Gollamco represented that Captiva I's performance from its inception had been consistent with BESI's goal. (*Id.*)

Collot and Golamco proffered two writings that confirmed their "oral representations." (*Id.*) In November 1995, they produced a chart on the Income Notes entitled "Investment Objective" showing that the notes were for investors seeking "[p]reservation of capital" who could accept "[m]oderate risk to principal" and that "the fiduciary arm of Citibank" would oversee the fund. (*Id* .) A second document, provided later, contained figures as of March 1996 alleging to the same effect. (*Id.*) In spring 1998, Collot and Golamco made the same representations concerning Captiva III as they had concerning Captiva I. (Compl.¶ 12) Both of these writings contained a disclaimer, which stated that "[a]n offering can be made only through the Offering Memorandum" and that all statements in the writings were "qualified by reference to the Offering Memorandum." (Tambe Dec., Exs. G at 1; H at 1) The Offering Memorandum for each Captiva fund contains a further disclaimer, which states: "No person has been authorized to give any information or to make any representations other than those contained in this [ ] Memorandum and, if given or made, such information or representations must not be relied upon." (Tambe Dec ., Exs. B at iv; C at 4)

**\*3** In May 1998, BESI signed a letter of intent sent to BESI by Citibank confirming BESI's commitment to invest $15 million in Captiva III. (Tambe Dec., Ex. F) A copy of the Offering Memorandum, or Private Placement Memorandum, for Captiva III was attached to the letter. (*Id.*) The letter states that Income Notes for Captiva III would be allocated to BESI "in the terms set out in the Private Placement Memorandum." (*Id.*) The letter also contains a disclaimer, which states: "You hereby represent to Citibank that you have independently and without relying upon Citibank or

any other person, and based on such documents and information as you have deemed appropriate, made your own credit analysis and decision to purchase the Notes." (*Id.*)

On July 8, 1999, Citibank sent BESI a letter announcing that Citibank would take over as portfolio manager of Captiva I because the existing manager had made "poor investment decisions" and had failed to deal with "serious loan portfolio problems." (Compl.¶ 15) Citibank also informed BESI that Citibank would be charging a fee, in addition to its fee as Administrative Agent, for "supervising" the fund. (*Id.*) After taking over as portfolio manager, Citibank began providing BESI more detailed information about the Captiva funds, showing the increasing default rate for the funds' loans. (Compl.¶ 19) In June 2000, Citibank provided to BESI statements audited by PriceWaterhouse Coopers that revealed additional bad loans. (*Id.*) Then in August 2000, Citibank informed BESI that "[b]eginning in the third quarter of 1998, the value of Captiva's portfolio declined markedly." (*Id.*) Golamco told BESI in December 2000 that Citibank "had to realize some important losses in recent weeks" in Captiva I and that BESI should expect significant losses of capital. (Compl. ¶ 20) In a meeting on February 5, 2001, Citibank reiterated its warning to expect significant losses in capital and informed BESI that Captiva I had been distressed almost from the start. (Compl.¶ 21) On October 1, 2001, Citibank informed BESI that the expected loss in principal was increasing for Captiva III and that the fund would have to cease paying interest to BESI if the default rate increased. (Compl.¶ 22) Quarterly reports in 2002 projected no return of principal for either Captiva fund. (Compl.¶ 24)

III.

A. Plaintiff's Contract Claims

BESI alleges that Citibank "made promises, assurances and representations on which BESI relied in deciding to purchase Income Notes issued by Captiva I." (Compl.10) Specifically, BESI claims that Citibank made three express promises: (1) to "actively monitor and supervise the Captiva

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

investment vehicles with a high degree of skill and vigilance and for the purpose of preserving BESI's capital"; (2) to "keep BESI currently and adequately informed concerning the status of its investments"; and (3) to "provide BESI with other relevant and timely information." (Compl.¶ 34) According to BESI, these promises were made orally by Collot and Golamco during various meetings at which they marketed the Captiva funds, and in writing in two investor presentations produced by Collot and Golamco in November 1995 and March 1996. (Compl.¶ 10) BESI argues that these promises are enforceable.

**\*4** BESI has asserted claims for breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel. Each of these claims is based upon the same three specific promises, discussed above, allegedly made by Citibank and its representatives concerning the Captiva funds.

1. Breach of Contract

[1] "Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir.1998) (internal quotation marks and citation omitted); *see also Roberts v. Karimi,* 251 F.3d 404, 407 (2d Cir.2001) ("[A] plaintiff in a breach of contract case must prove ... that an enforceable contract existed...."). BESI has failed to allege facts sufficient to show that an enforceable contract existed between BESI and Citibank.

"Absent a mutual intention to be bound, there can be no contract ." *Advanced Marine Technicians, Inc. v. Burnham Securities, Inc.,* 16 F.Supp.2d 375, 380 (S.D.N.Y.1998). "Under New York law, ... if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." *Ciaramella v. Reader's Digest Assn., Inc.,* 131 F.3d 320, 322 (2d Cir.1997); *see also Scheck v. Francis,* 26 N.Y.2d 466, 469-70, 311 N.Y.S.2d 841, 843, 260 N.E.2d 493 (1970) (same). "[W]hen a party gives forthright, reasonable signals that it means to be

bound only by a written agreement, courts should not frustrate that intent.... [I]ndeed, above a certain level of investment and complexity, requiring written contracts may be the norm in the business world, rather than the exception." *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74-75 (2d Cir.1984). In determining whether an agreement existed, the court should look at the parties' "expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances." *Id.* "The point of these rules is to give parties the power to ... maintain complete immunity from all obligation until a written agreement is executed." *Id.* "This rule holds even if the parties have orally agreed upon all the terms of the proposed contract.... Freedom to avoid oral agreements is especially important when business entrepreneurs and corporations engage in substantial and complex dealings." *Id.*

Citibank argues that the three specific statements characterized by plaintiff as promises were made during marketing negotiations and were accompanied by language expressly disclaiming any intention to be bound other than by the Offering Memoranda and related written agreements. (Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Df.Mem.") 10-14) The only agreement between BESI and Citibank is the letter of intent sent to BESI by Citibank that BESI signed, confirming its commitment to invest in Captiva III. (Tambe Dec., Ex. F) As already discussed, this letter contained an express disclaimer that stated: "You hereby represent to Citibank that you have independently and *without relying upon Citibank* or any other person, and based on such documents and information as you have deemed appropriate, made your own credit analysis and *decision to purchase the Notes."* (*Id.*) (emphasis added) The letter was also accompanied by the Offering Memorandum for Captiva III, (*id.*), which contained an additional disclaimer that stated: "No person has been authorized to give any information or to make any representations other than those contained in this [ ] Memorandum and, if given or made, such information or representations must not be relied upon." (Tambe Dec., Ex. C at 4) The Offering Memorandum for Captiva I contained this same

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

disclaimer. (Tambe Dec., Ex. B at iv) Further, both of the marketing presentations BESI points to as the bases for promises made by Citibank state that "[a]n offering can be made only through the Offering Memorandum" and that all statements in the presentations were "qualified by reference to the Offering Memorandum." (Tambe Dec., Exs. G at 1; H at 1)

**\*5** BESI contends that the disclaimers in the marketing presentations, the Offering Memoranda, and the letter of intent have no effect on its breach of contract claim because the disclaimers apply only to "representations" and not to "promises". (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.Mem.") 12-13) According to BESI: "The distinction between a 'promise,' on the one hand, and a 'representation' or 'information' on the other, is fundamental." [FN1] (Pl.Mem.12) BESI further contends that had Citibank wanted to disclaim liability for "promises," it should have said so by explicit reference to promises, but because it did not, an enforceable agreement exists between the parties by virtue of Citibank's "promises." (Pl.Mem.13)

> FN1. BESI incompletely and misleadingly quotes *Falcon Crest Diamonds, Inc. v. Dixon,* 173 Misc.2d 450, 655 N.Y.S.2d 232 (Sup.Ct. N.Y. County 1996), as stating a general definition of "representation" (Pl.Mem.12), whereas the court in that case actually did nothing more than apply to an insurance contract the statutory definition of "representation" set forth in the New York Insurance Law. *See Id.* (citing Insurance Law § 3105(a)). Of course, that law has no application in this case. BESI also cites *Sommer v. Guardian Life Ins. Co. of America,* 281 N.Y. 508, 24 N.E.2d 308 (1939), another insurance case, as stating a general definition of "representation". (Pl.Mem.12) However, in the language quoted by plaintiff, the court did not define "representation" generally, but only described the particular representations made by the insured in that case. *Id.* at 513, 24 N.E.2d 308. Further,

the court observed that the insured had made representations "without qualification or reservation," *id.,* but here Citibank qualified its representations according to the disclaimer language included in several material documents.

BESI's argument is based on a distinction without a difference. As Citibank puts it: "[E]very promise *is* a representation--a representation that a party will undertake to do something." (Defendant's Reply Memorandum in Further Support of Defendant's Motion to Dismiss ("Df. Reply Mem.") 3) Or, as Judge Koeltl put it: "[A] promise to perform is not only a prediction, but is generally also a representation of present intent. Promises and representations are simply not mutually exclusive." *United States v. Sattar,* 272 F.Supp.2d 348, 376 (S.D.N.Y.2003) (internal quotation marks omitted); *see also Stamelman v. Fleishman-Hillard, Inc.,* No. 02 CIV 8318, 2003 WL 21782645, at \*6 (S.D.N.Y.2003) (characterizing promises as representations); 4 Williston on Contracts § 8:4 (4th ed.) ("[W]here the party making a representation asserted that he would do or refrain from doing something in the future he made a promise, though it might also be considered a representation of his intent."). At bottom, BESI's semantic argument is based on nothing but *ipse dixit.* [FN2]

> FN2. BESI itself uses "promises" and "representations" interchangeably in its own complaint, characterizing Citibank's oral statements, the very statements that underlie BESI's contract claims, as both promises and representations. Plaintiff alleges that Citibank produced "two written investor presentations that confirmed its *oral representations"* in that the presentations "promised ongoing oversight of the portfolio by the fiduciary arm of Citibank." (Compl.¶ 10(c)) (internal quotation marks omitted) Although BESI argues in its motion papers that Citibank's oral statements are not representations, a party is not entitled to amend its complaint through statements made in motion papers. *See Wright v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

*Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998). Therefore, accepting the allegations of plaintiff's complaint as true, namely that Citibank's oral statements constitute representations, on the face of the complaint Citibank's statements fall within the scope of its disclaimers.

The disclaimers in the marketing presentations, the Offering Memoranda, and the letter of intent "constitute objective signs" of Citibank's "expressed intentions" not to be bound by any statements outside the Offering Memoranda. *See R.G. Group, Inc. .,* 751 F.2d at 74-75. Citibank gave BESI "forthright, reasonable signals that it mean[t] to be bound only by a written agreement" and that the binding written agreement would be the Offering Memoranda for the Captiva funds. *See id.* It is no proper exercise of authority for this court to frustrate that intent, particularly given the "level of investment and complexity" of the dealings at issue. *See id.* Accordingly, BESI's claim for breach of contract is dismissed. [FN3]

> FN3. Citibank argues also that BESI's breach of contract claim is barred by the Statute of Frauds. (Df. Mem. 14-15; Df. Reply Mem. 5-8) Because this claim has been dismissed for failure to show an enforceable agreement, the court need not consider this additional argument.

2. Duty of Good Faith and Fair Dealing

[2] "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Education Testing Service,* 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979, 663 N.E.2d 289 (1995). However, there can be no breach of the duty of good faith and fair dealing when there is no "valid and binding contract from which such a duty would arise." *American-European Art Assocs. ., Inc. v. Trend Galleries, Inc.,* 227 A.D.2d 170, 171, 641 N.Y.S.2d 835, 836 (1st Dep't 1996) (dismissing cause of action for breach of the duty of good faith and fair dealing after finding that no contract existed); *see also Fasolino Foods Co. v. Banca Nazionale del*

*Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1996) (holding that the determination that no contract existed disposed of cause of action for breach of the duty of good faith and fair dealing); *United Magazine Co. v. Murdoch Magazines Distribution, Inc.,* 146 F.Supp.2d 385, 405 (S.D.N.Y.2001) ("A cause of action for breach of this implied covenant [of good faith and fair dealing], however, is dependent upon the existence of an enforceable contract."); *Kreiss v. McCowan DeLeeuw & Co.,* 37 F.Supp.2d 294, 301 (S.D.N.Y.1999) ("[N]o implied duty of good faith and fair dealing may attach to an unenforceable contract."); *Village on Canon v. Bankers Trust Co.,* 920 F.Supp. 520, 534 (S.D.N.Y.1996) (holding that the parties did not owe each other this duty because no agreement existed between them and the duty does not provide an independent basis for recovery).

*\*6 BESI claims that because Citibank "put the interests of itself or favored persons above those of BESI, Citibank has breached its *contractual* duty of acting in good faith and fair dealing with BESI." (Compl.¶ 53) (emphasis added) Plaintiff concedes that this duty is "contractual." The contracts from which this duty purportedly has arisen here, according to BESI, are the three promises BESI attributes to Citibank as discussed above. Because, as explained above, these purported promises do not give rise to any contract between BESI and Citibank, there can be no implied duty of good faith and fair dealing imposed on Citibank by any such contract. Accordingly, BESI's claim for breach of the duty of good faith and fair dealing is dismissed.

3. Promissory Estoppel

"In New York a claim for promissory estoppel requires 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance.' " *R.G. Group,* 751 F.2d at 78 (quoting *Ripple's of Clearview, Inc. v. LeHavre Associates,* 88 A.D.2d 120, 123, 452 N.Y.S.2d 447, 449 (1982) ). BESI alleges that it relied on Citibank's "promises, representations, statements and failures to disclose in deciding to buy and to hold Income

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

Notes in Captiva I and III, and Citibank intended that BESI so rely." (Compl.¶ 48) However, even accepting this allegation as true, it is insufficient to support a claim for promissory estoppel.

a. Promise

[3] In *R.G. Group,* the plaintiff brought a claim for promissory estoppel, and the Court of Appeals found that "the entire history of the parties' negotiations made it plain that any promise or agreement at that time was conditional upon the signing of a written contract." 751 F.2d at 78. No contract was signed. *Id.* at 74. The Court affirmed dismissal of a promissory estoppel claim, holding: "Under those circumstances, there was never a 'clear and unambiguous promise' to plaintiffs...." *Id.* Similarly, here Citibank indicated numerous times that it had no intent to enter into any agreements with BESI outside the written terms of the Offering Memoranda; thus, Citibank avoided any "clear and unambiguous promise" to BESI. Plaintiff's cause of action for promissory estoppel is simply an attempt to circumvent Citibank's express and repeated insistence that there were no promises made to plaintiff outside the Offering Memoranda. "[P]laintiff manifestly cannot make an end run around [defendant's] reservation against undertaking any legal obligation absent a signed contract by recharacterizing the contract claim as one of promissory estoppel." *Advanced Marine,* 16 F.Supp.2d at 381. As in *Advanced Marine,* BESI's promissory estoppel claim fails essentially for the same reason as its contract claim.

b. Reliance

[4] "In assessing the reasonableness of a plaintiff's alleged reliance, [the court] consider[s] the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Capital Investment Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 195 (2d Cir.2003). In *Harsco Corp. v. Segui,* 91 F.3d 337 (2d Cir.1996), a buyer and a seller entered into a written agreement stating that the seller was making no representations outside the

written agreement. *Id.* at 345. However, the buyer alleged that the seller had made several misrepresentations outside the contract concerning the subject of the contract. *Id.* The Court of Appeals found no reasonable reliance in light of the disclaimer and the sophistication of the parties. *Id.; see also Chromalloy American Corp. v. Universal Housing Systems of America, Inc.,* 495 F.Supp. 544, 551 (S.D.N.Y.1980) (where the plaintiff had made statements "expressly disclaiming any intention to be bound until the execution of [a written agreement]," the court found that the defendant had not satisfied the elements of promissory estoppel because the defendant had not established reasonable reliance).

**\*7** Similarly, in *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531 (2d Cir.1997), two large, sophisticated traders negotiated the sale of several million dollars of bank debt. *Id.* at 1533. During the negotiations, the seller's representative made false statements concerning the debtor's financial condition. *Id.* at 1543. *Id.* The Court of Appeals held:

> [when] a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented.

*Id.* at 1543 (quoting *Rodas v. Manitaras,* 159 A.D.2d 341, 343, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)) (internal quotation marks omitted). Because the buyer neither secured documentation for the seller's representations nor included them in the agreement, the Court found that the buyer's reliance on the seller's representations was unreasonable. *Id.*

In *Emergent Capital,* 343 F.3d 189, the manager of a multimillion dollar investment fund invested several million dollars in an Internet-based business. *Id.* at 192-93. The business in which the fund manager invested made representations both orally and in writing--just as Citibank allegedly did here--as to the value of the investment, on which the fund relied and which later turned out to be false. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 9

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

However, the Court of Appeals, reviewing the granting of a motion to dismiss, found that the fund manager's reliance was unreasonable in light of the sophistication of the parties and the fund manager's failure to protect itself by insisting that the representations be included in the written agreement. *Id.* at 196. The Court further found that the fact the representations were made in writing "should have served as additional notice to [the fund manager] that this allegedly significant representation should be reflected in the contract." *Id.* In other words, the Court observed that because these representations were not made merely in passing in a conversation but were also made in writing, the fund manager was on notice that these were potentially important facts that should have been memorialized in the written contract.

Here, just as in the above cases, BESI's purported reliance on Citibank's representations was unreasonable in light of the sophistication of the parties, the express disclaimers in the various documents sent to BESI, and BESI's failure to include the purported promises in a written agreement. Not only did plaintiff not memorialize Citibank's purported representations in the Offering Memoranda governing plaintiff's investments, but plaintiff expressly denied in writing any reliance on representations from Citibank. (Tambe Dec., Ex. F) Accordingly, BESI's promissory estoppel cause of action is dismissed.

C. Third-Party Beneficiary

**\*8** [5] BESI alleges that under the Administrative Agreements between Citibank and the Captiva entities, Citibank agreed "to perform, in good faith, supervisory duties with respect to the Captiva investment portfolios," which "included periodically reviewing the portfolio manager's performance, monitoring the portfolios, and providing periodic reports and recommendations to the Administrative Committee with respect to the portfolios." (Compl.¶ 39). BESI further alleges that it "was an intended third-party beneficiary of Citibank's obligations under the Administrative Agreement," (*id.* at ¶ 40), and that as an intended third-party beneficiary of these agreements, it has

standing to sue Citibank for breach of these agreements. (Pl.Memo.18-22)

1. Intention of the Parties to the Agreements

"New York law follows the Restatement (Second) of Contracts § 302[ ] in allowing a third party to enforce a contract if that third party is an intended beneficiary of the contract." *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir.1991). Under section 302 of the Second Restatement of Contracts, a party qualifies as an intended third-party beneficiary of a contract when the following conditions are met:

recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302 (1981). "If the obligation to perform to the third-party beneficiary is not expressly stated in the contract, the court may look to surrounding circumstances to determine whether the contracting parties intended to benefit a third party." *United International Holdings, Inc. v. The Wharf (Holdings) Ltd.,* 988 F.Supp. 367, 371 (S.D.N.Y.1997). "Among the circumstances to be considered is whether manifestation of the intention of the promisor and promisee is sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208 (1985) (internal quotation marks omitted).

BESI argues that the Administrative Agreements manifest "an intent that Income Noteholders such as BESI be able to enforce them." (Pl.Memo.21) It cites a clause limiting Citibank's liability as Administrative Agent contained in each of the agreements as an acknowledgment of duties owed by Citibank to BESI as a shareholder of Captiva. ( *Id.*) The clause states:

[Citibank] shall [not] have any liability to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

[Captiva], or to its shareholders or creditors, for any error in judgment, mistake of law, or for any loss arising out of any investment, or for any other act or omission in the performance of its, his or her obligations to [Captiva] except for liability to which it would be subject by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of its, his or her duties and obligations hereunder....

*9 (Tambe Dec., Exs. D at 8; E at 7) BESI cites no authority for the view that such a clause expresses an intent by parties to a contract to bestow on a third party a benefit arising out of that contract. Indeed, BESI's argument betrays a disregard for the plain intent of the parties to the contract, which was to limit duties rather than to generate an additional duty. This clause acknowledges only that Citibank may owe some duty to BESI in BESI's capacity as a shareholder of Captiva, not as a third-party beneficiary of the Administrative Agreements.

BESI also quotes language in the agreements that it claims "require[s] Citibank to make recommendations directly to 'the holders of the Income Notes." ' (Pl.Memo.19) Based on this language, BESI argues that "[w]here performance is rendered directly to a third party under the terms of an agreement, that party must be considered an intended beneficiary." (Pl.Memo.19) (internal quotation marks omitted) However, this partial quotation omits significant language. Citibank is not obligated to make general recommendations to Income Noteholders concerning the funds, but to make recommendations only "with respect to the termination of the Financial Manager." (Tambe Dec., Exs. D at 1; E at 1) Even assuming that this provision were evidence of an intent to benefit BESI, the only such benefit would be a recommendation from Citibank concerning the termination of the financial manager. However, BESI's claim is in no way based on a purported failure to make such a recommendation, and BESI cannot, by sheer will or wish, expand a single, specific duty to include other duties not expressed in the agreements. In fact, the limited liability clause cited by plaintiff states that Citibank "assumes no responsibility under this Agreement other than to render the services called for

hereunder." (Tambe Dec., Exs. D at 8; E at 7)

Additionally, the promises that plaintiff claims Citibank breached arise out of oral and written statements by Citibank that are not contained in or associated with the Administrative Agreements. BESI cannot rely on a duty arising out of the Administrative Agreements to claim breach of other duties arising out of different agreements. See *ESI, Inc. v. Coastal Power Production Co.,* 995 F.Supp. 419, 432 (S.D.N.Y.1998) (dismissing claim for damages as third-party beneficiary where breach alleged by plaintiff was of a contract other than the contract to which plaintiff was a third-party beneficiary).

BESI cites language in the Administrative Agreements, but overlooks one significant clause. Both agreements contain a "succession" clause expressly identifying to whose benefit the agreements inure and restricting assignability of the agreements. The succession clause states:

This Agreement shall inure to the benefit of and be binding upon the successors to the parties hereto. No assignment of this Agreement shall be made without the consent of the other party, provided, however, that the Company may assign its interest in this Agreement to the Trustee under the Indenture.

*10 (Tambe Dec., Exs. D at 9; E at 7-8) In *Piccoli A/S v. Calvin Klein Jeanswear Co.,* 19 F.Supp.2d 157 (S.D.N.Y.1998), the court addressed precisely the same facts, where a third party brought an action to enforce a contract as beneficiary and the contract contained language specifying to whose benefit the agreement inured and prohibiting assignment. *Id.* at 163-64. The court held: "The prohibition on assignments and the specification that the contract inures to the benefit of and binds the parties ... makes plain the parties' intention to preclude third-party enforcement." *Id.* at 163; *see also United,* 988 F.Supp. at 373; *Sazerac Co. v. Falk,* 861 F.Supp. 253, 258 (S.D.N.Y.1994). I find this reasoning persuasive, and the presence of similar language in the Administrative Agreements further undermines the claim that the parties to those agreements intended to benefit BESI.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

BESI also has not established that its reliance on the Administrative Agreements as a third-party beneficiary was reasonable and probable. *See Fourth Ocean,* 66 N.Y.2d at 44, 495 N.Y.S.2d 1, 485 N.E.2d 208. As already discussed, Citibank included disclaimers in numerous documents submitted to plaintiff stating that plaintiff should not rely on any representations outside the Offering Memoranda. Further, the Administrative Agreements state that defendant undertook to provide the services set forth in those agreements "consistent with the objectives and policies" in the Offering Memoranda. (Tambe Dec., Exs. D at 1; E at 1) In light of the sophistication of the parties, Citibank's many disclaimers and the express limitation of defendant's duties in the Administrative Agreements to those consistent with the Offering Memoranda, any reliance by BESI on the Administrative Agreements was unreasonable and improbable.

Even if BESI were correct that defendant owed BESI all the duties it owed Captiva in the Administrative Agreements, BESI still would have failed to establish the requisite intent to make it a third-party beneficiary of the Administrative Agreements for one obvious reason: these duties flow from Citibank to Captiva, and Citibank, according to the facts alleged by BESI, is the promisor, not the promisee. "In ascertaining the rights of an asserted third party beneficiary, the intention of the promisee is of primary importance...." *Drake v. Drake,* 89 A.D.2d 207, 209, 455 N.Y.S.2d 420, 422 (4th Dep't 1982); *see also United,* 988 F.Supp. at 371 ("When determining the intentions of the contracting parties, the intention of the promisee governs."); *Dep't of Economic Development v. Arthur Andersen & Co.,* 924 F.Supp. 449, 482 (S.D.N.Y.1996) ("[G]reat weight is accorded to the expressed intent of the promisee.") (internal quotation marks omitted). "[T]he absence of any duty of the promisee to the beneficiary has been held to negate an intention to benefit...." 66 N.Y.S.2d at 44-45. BESI has failed to plead a single fact alleging any duty owed by Captiva, as the promisee, to BESI under the Administrative Agreements or under any other agreements. BESI has also failed to plead any facts

that show an intent on the part of Captiva to benefit BESI under the Administrative Agreements or under any other agreements. Accepting all plaintiff's allegations as true, they establish only that defendant, as promisor, made several promises to Captiva. This is insufficient to render BESI an intended third-party beneficiary of those promises.

2. Recovery by Others under the Agreements

**\*11** [6] BESI further argues that it is an intended third-party beneficiary of the Administrative Agreements because "no one else can recover under the contracts." (Pl.Memo.19) According to BESI, Citibank "created and structured the Captiva investment vehicles in order to effectuate a private placement of notes for foreign investors," and "the Captiva entities had only nominal equity capitalization." (Compl.¶ 25) BESI alleges that the Captiva entities "lacked any genuine separate identity and management and have at most served as administrative agents for Citibank." (*Id.*) BESI speculates that "the Captiva entities would never enforce the Administrative Agreements against Citibank," and therefore BESI "is entitled to do so as a third party beneficiary of those contracts." (Pl.Memo.20)

Under New York law, when there is no showing of "some obligation or duty running from the promisee to the third party beneficiary," a third party still may enforce a contract when "no one other than the third party can recover if the promisor breaches the contract." *Fourth Ocean,* 66 N.Y.2d at 45, 495 N.Y.S.2d 1, 485 N.E.2d 208. As discussed above, BESI has not alleged facts to show any obligation or duty running to it from the Captiva entities, yet BESI argues that it can enforce the Administrative Agreements because it is the only one that can recover for Citibank's breaches of the Administrative Agreements given that the Captiva entities likely will not attempt to recover against Citibank. However, New York law permits third-party recovery when no other person *can* recover, not simply when no other person *will* recover. Taking plaintiff's allegations as true, the Captiva funds, even if dominated by Citibank, can recover against Citibank for any breaches of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

Administrative Agreements. [FN4] BESI would expand the law to permit recovery under a standard of mere unlikelihood of recovery by others, but that is not the law in New York.

> FN4. BESI asserts in a footnote that its "allegations are sufficient to pierce the corporate veil between the Captiva entities and Citibank." (Pl. Memo. 20 n. 8) However, BESI does not explain how piercing the corporate veil is relevant to its claims. Piercing the corporate veil "is used to hold individuals liable for the actions of a corporation they control" or "to hold a corporation accountable for actions of its shareholders." *American Fuel,* 122 F.3d at 134. Plaintiff is not seeking to hold Citibank liable for actions of the Captiva entities, nor is it seeking to hold Citibank liable for actions of Citibank's shareholders. Plaintiff is seeking to hold Citibank liable for Citibank's own actions, and no corporate veil need be pierced to advance such claims. Further, even if veil piercing were somehow relevant to BESI's claims, BESI has failed to allege facts that would warrant such relief. *See Telecom International America, Ltd. v. AT & T Corp.,* 280 F.3d 175, 200-01 (2d Cir.2001) (dismissing piercing counterclaim where plaintiff "created [subsidiary] as a separate entity with only as much capital as then-currently needed" in order "to limit [plaintiff's] potential losses from" the venture with defendant, and subsidiary's "financial condition" was fully and fairly disclosed to defendant). The financial condition of the Captiva entities was fully and fairly disclosed to BESI prior to its investment. (Tambe Dec., Exs. B at 45-56; C at 38-54)

**3. Limited Liability Clause**

[7] Although this court has already found that BESI has failed to show that it is an intended third-party beneficiary of the Administrative Agreements, even assuming such a showing *arguendo,* BESI's claim

still would fail. As BESI points out, the Administrative Agreements contain a clause that limits defendant's liability for claims arising under the Administrative Agreements to "willful misfeasance, bad faith, gross negligence or reckless disregard of its, his or her duties and obligations." (Tambe Dec., Exs. D at 8; E at 7) "New York law generally enforces contractual provisions absolving a party from its own negligence." *Colnaghi U .S.A., Ltd. v. Jewelers Protection Services, Ltd.,* 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 382, 611 N.E.2d 282 (1993). "Where the language of the exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence, the agreement will be enforced." *Lago v. Krollage,* 78 N.Y.2d 95, 99-100, 571 N.Y.S.2d 689, 692, 575 N.E.2d 107 (1991).

**\*12** Under the limited liability clause, BESI can recover against Citibank for breach of duties arising under the Administrative Agreements only upon specific factual allegations of deliberate or bad faith conduct. However, other than plaintiff's conclusory allegation that Citibank "performed its duties under the Administration Agreements in bad faith, with reckless disregard and willful malfeasance of its contractual obligations, and in a grossly negligent manner," (Compl.¶ 41), plaintiff alleges no specific "actions by defendant evincing a reckless disregard for the rights of plaintiff or smacking of intentional wrongdoing." *Retty Fin. v. Morgan Stanley Dean Witter & Co.,* 293 A.D.2d 341, 341, 740 N.Y.S.2d 198, 198 (1st Dep't 2002) (internal quotation marks omitted). At most, BESI has alleged facts suggesting Citibank acted negligently, but negligence is not adequate to overcome the limited liability clause. BESI's sole conclusory allegation is insufficient as a matter of law. *See Tevdorachvili v. The Chase Manhattan Bank,* 103 F.Supp.2d 632, 644 (E.D.N.Y.2000) (observing that plaintiff alleged, "by nothing more than a rhetorical flourish, that [defendant] was 'reckless" ' and holding that "[i]n the absence of factual allegations showing more, heated language and indignation will not suffice to bootstrap that cause of action into a cause of action for negligence, gross negligence, or recklessness."). Further, BESI has not articulated

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

any reason why the limited liability clause should not be enforced, nor has it even challenged the enforceability of the clause.

For all these reasons, BESI's third-party beneficiary claim is dismissed.

D. Fraudulent Inducement

[8] BESI asserts that it entered into investment agreements with the Captiva entities because of Citibank's fraudulent inducements and suffered losses as a result. (Compl.¶¶ 45-46) BESI alleges that Citibank "made material misstatements of fact to BESI, and failed to disclose material facts that were inconsistent with Citibank's statements and representations, which induced BESI to buy Captiva I and III Income Notes." (*Id.* at 45) These failures to disclose purportedly include "failure to disclose that Captiva I's loan portfolio was distressed almost from the very start" and "failure to disclose that the loans in the Captiva I and III portfolios were created in a climate of lax underwriting standards." ( *Id.*) BESI further alleges that "Citibank intended that BESI rely" on these misstatements and failures to disclose, (*id.*), and that BESI actually did rely on them "in deciding to buy and hold Captiva I and III Income Notes." (*Id.* at ¶ 46) As explained below, these allegations are insufficient to sustain a claim for fraud.

1. Knowledge of Falsity and Intent to Defraud

"The elements of a fraud claim under New York law are a material, false representation, an intent to defraud thereby, and reasonable reliance, causing damage to the plaintiff." *May Dep't Stores Co. v. International Leasing Corp., Inc.,* 1 F.3d 138, 141 (2d Cir.1993); *see also Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir.2001). Under Rule 9(b) of the Federal Rules of Civil Procedure, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b); *see also Olsen v. Pratt & Whitney Aircraft,* 136 F.3d 273, 275 (2d Cir.1998). Although knowledge may be averred generally, a plaintiff must "allege

circumstances that give rise to a strong inference that the defendants knew the statements to be false," even where the plaintiff "has adequately identified the statements alleged to be misrepresentations and properly indicated when, where and by whom they were made." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 173 (2d Cir.1990).

*13 Taking all BESI's allegations as true, it has failed to plead a cause of action for fraudulent inducement because it has not alleged that Citibank knew the statements to be false at the time the statements were made or that Citibank intended to defraud BESI. Nor has BESI alleged any facts to support a reasonable inference of knowledge and intent on the part of Citibank. According to BESI, it invested in the Captiva funds in 1997 and 1998. (Compl.¶¶ 1,11-13) Later, in 2001, Citibank informed BESI that Captiva I had been distressed from almost the very start and that loans in both Captiva portfolios had been made in a climate of lax underwriting standards. (*Id.* at 14) BESI claims that Citibank failed to disclose these facts, and these purported failures to disclose constitute part of the basis for the fraud claim. (*Id.* at 45). Plaintiff must allege facts sufficient to support a strong inference that Citibank knew of the distressed condition of Captiva I when Citibank made specific statements to plaintiff in 1997 representing the condition of the fund; that Citibank knew of the lax underwriting standards involving the Captiva funds when Citibank made specific statements to plaintiff in 1997 and 1998 representing the condition of the funds; and that Citibank made these specific statements in 1997 and 1998 with the intent to defraud plaintiff. However, BESI has alleged no facts to support a strong inference that Citibank possessed in 1997 and 1998 the knowledge it possessed in 2001 concerning the funds. Therefore, BESI has failed to plead all the necessary elements for its fraud claim.

2. Promises as Basis for Fraud Claim

[9] The complaint is unclear as to what specific misstatements form the basis for BESI's fraudulent inducement claim. BESI alleges that it invested in the Captiva entities "in reliance on the promises and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 23018888 (S.D.N.Y.)

(Cite as: 2003 WL 23018888 (S.D.N.Y.))

Page 14

statements" made by Citibank. (Compl.¶¶ 11,13,46) To the extent the three promises purportedly made by Citibank that serve as the basis for BESI's contract claims also serve as the basis for its fraudulent inducement claim, the fraud claim is barred.

Under New York law, "to recover damages for tort in a contract matter, it is necessary that the plaintiff plead and prove a breach of duty distinct from, or in addition to, the breach of contract." *Non-Linear Trading Co. v. Braddis Associates, Inc.,* 243 A.D.2d 107, 118, 675 N.Y.S.2d 5, 13 (1st Dep't 1998) (quoting *North Shore Bottling Co. v. Schmidt & Sons,* 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 92, 239 N.E.2d 189 (1968)) (internal quotation marks omitted). The plaintiff must allege fraud based on facts different from those underlying a breach of contract claim and allege damages "that would not be recoverable under a contract measure of damages." *J.E. Morgan Knitting Mills, Inc. v. Reeves Brothers, Inc.,* 243 A.D.2d 422, 423, 633 N.Y.S.2d 211, 211 (1st Dep't 1997). "[A] contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations ." *Rocanova v. Equitable Life Assurance Society of the United States,* 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343, 634 N.E.2d 940 (1994); *see also International Cabletel Inc. v. Le Groupe Videotron Ltee,* 978 F.Supp. 483, 486 (S.D.N.Y.1997). "In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Telecom International,* 280 F.3d at 196.

*14 As already discussed, BESI alleges as the basis for its contract claims that Citibank made three express promises: (1) to "actively monitor and supervise the Captiva investment vehicles with a high degree of skill and vigilance and for the purpose of preserving BESI's capital"; (2) to "keep BESI currently and adequately informed concerning the status of its investments"; and (3) to "provide BESI with other relevant and timely information." (Compl.¶ 34) It appears from plaintiff's complaint

that these same three promises form at least part of the basis for plaintiff's fraudulent inducement claim. (Compl. ¶¶ 11,13) BESI cannot bring a fraud claim upon the same factual allegations as its breach of contract claim. *Telecom International,* 280 F.3d at 196; *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 19-20 (2d Cir.1996).

Further, the promises attributed to Citibank relate to future performance. "Absent a present intention to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud." *Non-Linear,* 675 N.Y.S.2d at 13. As already discussed, BESI has not alleged any intention to deceive it or facts suggesting Citibank knew the statements were false when made. Therefore, these promises do not provide the basis for a fraudulent inducement claim.

3. Reliance

[10] Under New York law, "where a party specifically disclaims reliance upon a representation in a contract, that party cannot, in a subsequent action for fraud, assert it was fraudulently induced to enter into the contract by the very representation it has disclaimed ." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729, 734 (2d Cir.1984) (citing *Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959)). In *Danann,* the parties agreed in their contract that the defendant made no representations other than those specifically set forth in the contract and that neither party entered the agreement in reliance upon any representation not embodied in the contract. *See* 5 N.Y.2d at 320, 184 N.Y.S.2d 599, 157 N.E.2d 597. The Court held: "Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations." *Id.* at 320-21. "*Danann* therefore stands for the principle that where the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into the contractual relationship." 748 F.2d at 735.

Under the *Danann* rule, BESI's reliance was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 15

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

unreasonable in light of defendant's several disclaimers. Indeed, as already discussed, BESI expressly conceded in its letter of intent with Citibank concerning Captiva III that BESI had not relied on any Citibank representations. (Tambe Dec., Ex. F) BESI also does not dispute that it was aware of the disclaimers in the Offering Memoranda and the presentations produced by Citibank, and the related transaction documents, such as the Administrative Agreements, expressly refer to the terms and policies set forth in the Offering Memoranda. Finally, as already discussed, the parties here are sophisticated international banking institutions, and yet BESI made no attempt to include Citibank's purported representations in any written agreement. Therefore, even accepting BESI's allegations of reliance upon Citibank's representations as true, these allegations are inadequate to sustain a cause of action for fraud.

**\*15** For all these reasons, BESI's claim for fraudulent inducement is dismissed.

E. Breach of Fiduciary Duty

BESI claims that Citibank owed BESI fiduciary duties and that Citibank breached these duties. (Compl.¶ 50) BESI alleges that Citibank "dominated and exercised complete control over the Captiva investment vehicles to the extent that there was no independent management of Captiva I and Captiva III to protect the interests of the Captiva entities and the Income Note holders." (*Id.*) Plaintiff further alleges that Citibank "admitted in Income Note holder correspondence that, in exploring alternative 'exit' strategies for investors, 'it would be our fiduciary duty to offer this option to all other Income Note investors." ' (*Id.*) Plaintiff argues that Citibank's fiduciary duties arise from its promises "to exercise 'special vigilance' in protecting BESI's interests by using Citibank's worldwide resources in order to avoid harm to the value of the Captiva portfolios, and to engage in 'ongoing oversight of the portfolio by the fiduciary arm of Citibank .' ' (Pl.Mem.32) According to BESI: "By emphasizing that Citibank would so act, Citibank persuaded BESI to entrust to Citibank the supervisory and management functions that BESI ordinarily

performs with respect to its investments." (*Id.*) As explained below, even taking all BESI's allegations as true, this claim fails.

1. Breach of Fiduciary Duty and Breach of Contract

[11] New York law recognizes a fiduciary relationship "when one person is under a duty to act for or to give advice for the benefit of another within the scope of the relation." *Levitin v. PaineWebber, Inc.,* 159 F.3d 698, 707 (2d Cir.1998) (quoting *Flickinger,* 947 F.2d at 599) (internal quotation marks omitted). However, being a party to a contract does not itself impose a fiduciary duty. Rather, this duty must arise from "a position of trust or special confidence ... that impose[s] obligations beyond the express agreements" between the parties. *Bridgestone,* 98 F.3d at 20. In other words, if this trust or special confidence in a person has "solely to do with his carrying out his obligations under the contract" between the parties, no fiduciary duty exists. *Id.* A plaintiff must "demonstrate a legal duty separate from the duty to perform under the contract" for a fiduciary duty to exist. *Id.; see also Mia Shoes, Inc. v. Republic Factors Corp.,* No. 96 Civ. 7974, 1997 WL 525401, at \*2 (S.D.N.Y.1997) (dismissing a claim for breach of fiduciary duty and holding that "a fiduciary duty generally does not arise out of a contractual relationship between parties with comparable bargaining power where the duties of the parties are dictated by the terms of the contract"). "A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *William Kaufman Org., Ltd. v. Grarham & James, LLP,* 269 A.D.2d 171, 173, 703 N.Y.S.2d 439, 442 (1st Dep't 2000); *see also Steinberg v. DiGeronimo,* 255 A.D.2d 204, 204, 680 N.Y.S.2d 93, 94 (1st Dep't 1998) (dismissing breach of fiduciary duty claim as "deficient because based on the unenforceable contract"). Breach of fiduciary duty is a tort claim, and as the New York Court of Appeals has held:

  **\*16** [a] tort obligation is a duty ... apart from and independent of promises made and therefore apart from the manifested intention of the parties to a contract. Thus, a defendant may be liable in tort ... when it has engaged in tortious conduct ... separate and apart from its failure to fulfill its

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 16

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

contractual obligations.... [W]here a party is merely seeking to enforce its bargain, a tort claim will not lie. *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 288, 662 N.E.2d 763 (1995); *accord Medical Research Assoc., P.C. v. Medcon Financial Services, Inc.,* 253 F.Supp.2d 643, 649-50 (S.D.N.Y.2003) (granting summary judgment where breach of fiduciary duty claim was based upon the same allegations underlying the breach of contract claim).

Here, Citibank's purported promises to supervise and manage the Captiva entities provide the basis for both BESI's breach of contract claim and its breach of fiduciary duty claim. BESI argues that these promises constitute an enforceable contract between the parties, and therefore the duties arising from these promises are contractual. Because a fiduciary duty cannot arise simply from a contract, no such duty exists between the parties here.

The only allegation underlying BESI's fiduciary duty claim that arguably does not underlie BESI's breach of contract claim is that Citibank promised to explore alternative exit strategies with BESI. (Compl.¶ 50) However, BESI does not allege that Citibank breached this duty. Plaintiff makes no reference to exit strategies in the complaint, nor does plaintiff allege that Citibank impeded it from disposing of the Captiva portfolios or even failed to provide advice on how to do so. Rather, BESI claims only that Citibank failed to oversee the funds in such a way as to protect BESI's investment. In other words, Citibank's breach, according to BESI, was not failure to advise BESI on how to get its money out, but failure to secure the money while it was in. Therefore, even taking this allegation as true, it has no bearing on plaintiff's claims in this case.

2. Relationship between BESI and Citibank

Under New York law, "[a] debtor-creditor relationship is not by itself a fiduciary relationship although the addition of a relationship of confidence, trust, or superior knowledge or control may indicate that such a relationship exists." *In re*

*Mid-Island Hospital, Inc. v. Empire Blue Cross and Blue Shield,* 276 F.3d 123, 130 (2d Cir.2002) (internal quotation marks omitted); *see also Fallon v. Wall St. Clearing Co.,* 182 A.D.2d 245, 250, 586 N.Y.S.2d 953, 957 (1st Dep't 1992) ("A debtor-creditor relationship, standing alone, does not create a fiduciary duty of the latter to the former."). "[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid-Island Hospital,* 276 F.3d at 130. Where "there is no allegation of anything other than an ordinary commercial relationship," no fiduciary duties can be found. *Id.*

*17 BESI claims that Citibank is the alter ego of the Captiva entities and that this gives rise to fiduciary duties flowing from Citibank direct to BESI. (Compl.¶ 50) As already discussed, BESI has failed to allege sufficient facts to warrant piercing the corporate veil between Citibank and the Captiva entities. *See Telecom,* 280 F.3d at 200-01. However, even assuming *arguendo* that BESI could pierce that veil, its claim would fail. The relationship between BESI and Citibank, as the alter ego of the Captiva entities, would be simply a relationship between a creditor and a debtor. BESI holds debt securities issued by the Captiva entities, or by Citibank if the veil is pierced. (Compl.¶ 8) A debt security is "[a] security representing funds borrowed by the corporation from the holder of the debt obligation." Black's Law Dictionary 1359 (7th ed.1999). Here, the debtor "corporation" would be Citibank, as the alter ego of the Captiva entities, and the "holder of the debt obligation," or creditor, would be BESI. (Compl.¶¶ 1,8) BESI's allegations show two sophisticated entities dealing with one another at arms length and no facts demonstrating extraordinary circumstances. Therefore, even if the corporate veil were pierced, Citibank would owe BESI no fiduciary duty.

3. Deceitful Intent

Under New York law, "an action for breach fiduciary duty [ ] requires a showing of 'deceitful intent' on the part of the fiduciary." *Flickinger,* 947

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

F.2d at 599 (quoting *Horn v. 440 East 57th Co.,* 151 A.D.2d 112, 120, 547 N.Y.S.2d 1, 5 (1989)). As discussed above in connection with BESI's fraudulent inducement claim, BESI has not alleged that Citibank intended to deceive, nor has BESI alleged any facts to support a strong inference of deceitful intent. Thus, even assuming *arguendo* that Citibank were to have owed BESI fiduciary duties, BESI still would fail to state a claim for breach of such duties by failing to plead this necessary element.

For all these reasons, BESI's claim for breach of fiduciary duty is dismissed.

F. Unjust Enrichment

[12] BESI alleges that Citibank "has been unjustly enriched to the full extent of the fees that it and its affiliates have derived from Captiva I and III...." (Compl.¶ 55) According to BESI, these fees "were collected from funds invested with the Captiva entities by BESI and other Noteholders." (Pl.Memo.36) BESI argues that the Income Noteholders "hold the residual interest in any remaining assets of the Captiva portfolios after payment of all other obligations." (*Id.*) BESI further alleges that Citibank has also been unjustly enriched by "self-interested transactions or conduct that has injured BESI to the benefit of Citibank (and its affiliates or favored customers)." (Compl.¶ 55)

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *In re Mid-Island Hospital,* 276 F.3d at 129; *see also Clark v. Daby,* 300 A.D.2d 732, 732, 751 N.Y.S.2d 622, 623 (3d Dep't 2002). In *Clark,* the Court held: "Notably, it is the plaintiff's burden to demonstrate that services were performed *for the defendant* resulting in the latter's unjust enrichment, and the mere fact that the plaintiff's activities bestowed a benefit on the defendant is insufficient to establish a cause of action for unjust enrichment." 751 N.Y.S.2d at 623-24 (citations and internal quotation marks omitted) (emphasis in original). Unjust enrichment is a quasi-contractual

remedy. *See Granite Partners, LP v. Bear, Stearns & Co.,* 17 F.Supp.2d 275, 311 (S.D.N.Y.1998). "[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *U.S. East Telecommunications, Inc. v. U.S. West Communications Services, Inc.,* 38 F.3d 1289, 1296 (2d Cir.1994) (internal quotation marks omitted). "This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Granite Partners,* 17 F.Supp.2d at 311 (citing *Graystone Materials, Inc. v. Pyramid Champlain Co.,* 198 A.D.2d 740, 604 N.Y.S.2d 295 (3d Dep't 1993); *Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.,* 183 A.D.2d 758, 583 N.Y.S.2d 497 (2d Dep't 1992) ). New York courts have declined to dismiss quasi-contract claims in cases involving written contracts only where defendants have acted in such a way as to incur obligations to the plaintiff outside the contract. *See U.S. East,* 38 F.3d at 1297.

*18 BESI alleges two sources for its unjust enrichment claim. The first is the administrative fees paid to Citibank by the Captiva entities. However, these fees are expressly governed by the Administrative Agreements between Citibank and these entities, and in any event were not paid by BESI but rather by the Captiva entities. (Tambe Dec., Exs. D at 6-7; E at 5-6) The second is allegedly self-interested transactions engaged in by Citibank. Just as with the fees, these transactions are expressly covered by the terms of the agreements, namely the Offering Memoranda, governing BESI's investment in the Captiva funds. (Tambe Dec., Exs. B at 25-26; C at 18-19) BESI has failed to demonstrate that Citibank acted in such a way as to assume any obligations outside these agreements, especially in light of Citibank's many disclaimers, as already discussed.

Further, even assuming that BESI's claim were not defeated by express agreements, BESI has failed to demonstrate any injustice here. "To invoke equity requires the indispensable ingredient that between the two parties involved there must be an injustice." *Indyk v. Habib Bank Ltd.,* 694 F.2d 54, 58 (2d

Not Reported in F.Supp.2d                                                                    Page 18

2003 WL 23018888 (S.D.N.Y.)

**(Cite as: 2003 WL 23018888 (S.D.N.Y.))**

Cir.1982); *see also Medical Self Care, Inc. v. National Broadcasting Co.,* No. 01 Civ. 4191, 2003 WL 1622181, at *8 (S.D.N.Y.2003) (applying New York law and finding no unjust enrichment because no injustice). There is no injustice here because Citibank simply received fees due it under the Administrative Agreements, (Tambe Dec ., Exs. D at 6-7; E at 5-6), and to the extent Citibank engaged in any self-interested transactions (and there is nothing other than mere speculation on the part of BESI that Citibank did engage in such transactions, (Compl.¶ 3,29-30,53)), Citibank reserved the right to engage in such transactions by the express terms of the Offering Memoranda. (Tambe Dec., Exs. B at 25-26; C at 18-19) There is no injustice where a party merely exercises its contractual rights. Additionally, as noted, the fees received by Citibank came from Captiva, not from BESI. *See Id.* (applying New York law and finding no unjust enrichment where money received by defendant came from third party rather than plaintiff).

For these reasons, BESI's unjust enrichment claim is dismissed.

### IV.

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. The New York Times Co.,* 325 F.3d 87, 91 (2d cir.2003). "[A] court granting a 12(b)(6) motion should consider a dismissal without prejudice when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Id.* (internal quotation marks omitted). In particular, regarding claims of fraud, "[p]laintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint." *Olsen,* 136 F.3d at 276; *see also Luce III v. Edelstein,* 802 F.2d 49, 56 (2d Cir.1986) (same). "Where ... plaintiffs specifically request leave to amend in the event that the court is inclined to dismiss on Rule 9(b) grounds, the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile." *Caputo,* 267 F.3d at 191; *see also Luce III,* 802 F.2d at 56-57 (finding abuse of discretion where

plaintiff requested leave to amend and court refused). BESI has not requested leave to amend, and for good reason. Each of BESI's claims, including its fraud claim, fails on grounds that cannot be remedied by amendment. Most notably, the many disclaimers discussed above are fatal to most of BESI's claims, and the remaining claims fail for related reasons or for reasons not curable by amendment. Indeed, BESI would have to do more than merely add facts to its complaint; it would have to extract certain facts and replace them with contrary allegations. For these reasons, amendment would be futile.

\* \* \*

**\*19** For the reasons set forth above, Citibank's motion to dismiss is granted and BESI's complaint is dismissed. Citibank has also made a motion to stay discovery pending determination of its motion to dismiss. The motion to dismiss having been granted, the motion to stay is moot.

2003 WL 23018888 (S.D.N.Y.)

### Motions, Pleadings and Filings (Back to top)

• 1:03cv01537  (Docket)

(Mar. 06, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.