G

Dockets.Justia.com

Westlaw.

Not Reported in F.Supp.2d

Page 1

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

(Cite as: 2004 WL 2809989 (S.D.N.Y.))

**Motions, Pleadings and Filings**

United States District Court,
S.D. New York.
Dale SOBEK and Seema Bhagat, Plaintiffs,
v.
Joseph QUATTROCHI, Cardinal Capital
Management, Inc., R & M Capital Partners,
Inc., Power2Ship, Inc., and Madison Stock
Transfer, Inc., Defendants.
**No. 03 Civ.10219(RWS).**

Dec. 8, 2004.
Fischer Law Firm, New York, NY, By: Michael
Andrew Fischer, for Plaintiffs, of counsel.

Davis & Gilbert, New York, NY, By: Brian H.
Rubenstein, for Defendant Cardinal Capital
Management, of counsel.

Gusrae, Kaplan & Bruno, New York, NY, By:
David A.A Gehn, for Defendant Power2Ship, Inc.,
of counsel.

Marshal Schichtman & Associates, Carle Place,
NY, By: Marshal Schichtman, for Defendant
Madison Stock Transfer, of counsel.

*OPINION*

SWEET, J.

*1 Defendant Cardinal Capital Management, Inc.
("Cardinal") has moved under Rule 12(b)(6),
Fed.R.Civ.P., to dismiss the complaint of plaintiffs
Dale Sobek ("Sobek") and Seema Bhagat
("Bhagat") and alternatively under Rule 12(e),
Fed.R.Civ.P., for a more definite statement, and to
compel arbitration. Defendant Power2Ship, Inc.
("P2S") has moved similarly to dismiss the
complaint and for a more definite statement.

Plaintiffs have opposed these motions, and they
have moved for leave to file an amended complaint.
For the reasons set forth below, the motions to
dismiss are granted, and the motion to file an
amended complaint is granted in part and denied in
part.

*Prior Proceedings*

Sobek and Bhagat filed their complaint on
December 24, 2003, alleging: (1) breach of an
alleged stock purchase agreement with each of the
plaintiffs, (2) a violation of 18 U.S.C. § 1962 *et seq.*
(Civil RICO/Money Laundering), (3) and a claim
for punitive damages. On March 15, 2004, Cardinal
and P2S moved to dismiss the complaint and, in the
alternative, for a more definite statement, and to
compel arbitration. Oral arguments on the motion
were heard on April 28, 2004.

On June 18, 2004, Sobek and Bhagat submitted an
order to show cause to amend the complaint, which
was denied by the Honorable Deborah A. Batts,
who was sitting in Part One. Judge Batts advised
Sobek and Bhagat to proceed by regular motion
practice to seek leave to amend the complaint. [FN1]
Plaintiff's motion to file an amended complaint was
opposed by Cardinal, P2S, and Madison Stock
Transfer, Inc. ("Madison"). The motion for leave to
file an amended complaint was marked fully
submitted without oral argument on July 28, 2004.

> FN1. Judge Batts also advised the
> plaintiffs to submit a motion on notice to
> stay the submitted motions to dismiss
> pending the filing of the amended
> complaint. However, the plaintiffs failed to
> make any such motion.

*Facts*

According to the complaint, separate stock
purchase agreements were entered into by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 2

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**(Cite as: 2004 WL 2809989 (S.D.N.Y.))**

plaintiffs with defendant R & M Capital Partners ("R & M").

On May 16, 2002, Sobek negotiated a stock purchase agreement ("SPA") with R & M pursuant to which Sobek purchased 240,000 shares of Jaguar Investments, Inc. ("Jaguar") from R & M for $120,000, or $ .50 per share. The SPA is alleged to have contained a provision whereby Sobek could immediately "put" the subject shares back to R & M at a value of $1.50 per share, or $360,000 (the "Put Option"). In addition, R & M is alleged to have pledged to Sobek 500,000 restricted shares of Jaguar stock (the "Collateral Shares") in order to collateralize R & M's obligations to Sobek under the SPA.

According to the complaint, in July 2002, approximately two months after entering into the SPA, Sobek sought to exercise his Put Option and demanded payment of $360,000, which was not forthcoming. Thereafter, Sobek unsuccessfully attempted to sell the Collateral Shares.

Bhagat has alleged that at some unspecified time she entered into an unspecified agreement with unspecified parties in order to purchase 50,000 Jaguar shares at a cost of $100,000 ($2.00 per share), which were the subject of an unspecified Put Option. Further, Bhagat alleges that at an unspecified time she unsuccessfully attempted to exercise her unspecified Put Option with unspecified parties. Bhagat, unlike Sobek, does not allege that her unspecified SPA was collateralized by Jaguar shares.

**\*2** The only allegation contained in the complaint against P2S appears in paragraph 23 where it is alleged upon information and belief [FN2] that P2S had knowledge that co-defendant Madison Stock Transfer, Inc. ("Madison") facilitated the transfer of the Collateral Shares. [FN3]

> FN2. Plaintiffs fail to state the basis of such information and belief.

> FN3. Significantly, no facts are pled in the complaint indicating that Madison or P2S

even knew the plaintiffs, much less that Madison or P2S knew of the existence of the alleged SPA, Put Option, or the Collateral Shares.

*Discussion*

*A. Diversity Jurisdiction*

In a diversity action, a New York district court, "look[s] to the choice-of-law rules of New York" to determine which state's law should be applied to the issues of substantive law. *See, e.g., Woodling v. Garrett Corp.,* 813 F.2d 543, 551 (2d Cir.1987). Since the parties have applied New York law, it is assumed, at least for the purpose of these motions, that New York law applies.

*B. The Motions to Dismiss the Complaint*

The motions of Cardinal and P2S to dismiss the complaint are granted in their entirety.

*1. The 12(b)(6) Standard*

In considering a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor," *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001)), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). In other words, " 'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,* 375 F.3d 168, 176 (2d Cir.2004) (quoting *Geisler v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**(Cite as: 2004 WL 2809989 (S.D.N.Y.))**

*Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000); *accord Eternity Global Master Fund,* 375 F.3d at 176-77.

The Court may properly consider any documents referred to in the complaint, whether explicitly or by reference, on a motion to dismiss. *Gregory,* 243 F.3d at 691; *Stuto v. Fleishman,* 164 F .3d 820, 826 n.1 (2d Cir.1999). While the Court must accept the allegations in the complaint as true, to the extent any allegations directly contradict evidence contained in the documents relied upon by a plaintiff, the documents control, and the allegations need not be accepted as true. *Rozsa v. May Davis Group, Inc.,* 187 F.Supp.2d 123, 128 (S.D.N.Y.2002).

2. *The Breach of Contract Claims Are Dismissed*

*3 The plaintiffs have not alleged that Cardinal or P2S are parties to any contract with either of them. Although Sobek alleges that the SPA was signed by defendant Joseph Quattrochi ("Quattrochi") on behalf of Cardinal, such allegation is belied by the language of the complaint and the contracts, which state that Quattrochi signed on behalf of R & M and not Cardinal.

The key elements of a breach of contract claim are: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *Posner v. Minnesota Mining & Mfg. Co.,* 713 F.Supp. 562, 563 (E.D.N.Y.1989). A complaint in a breach of contract action must at least set forth the terms of the agreement upon which liability is predicated. *Mayes v. Local 106, Int'l Union of Operating Eng'rs,* 739 F.Supp. 744, 748 (N.D.N.Y.1990); *Chrysler Capital Corp. v. Hilltop Egg Farms Inc.,* 129 A.D.2d 927, 928, 517 N.Y.S.2d 1002, 1003 (3d Dep't 1987) (complaint must "set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract."). Pursuant to New York law,

plaintiffs' claims for breach of contract must allege the terms of the contract, each element of the alleged breach and the resultant damages. *Kaplan v. Aspen Knolls Corp.,* 290 F.Supp.2d 335, 337 (E.D.N.Y.2003); *see also Griffin Bros. Inc. v. Yatto,* 68 A.D.2d 1009, 1009, 415 N.Y.S.2d 114, 114 (3d Dep't 1979). The complaint does not satisfy these pleading requirements with respect to Cardinal or P2S.

The relevant stock purchase agreement for Sobek indicates on its face that neither Cardinal nor P2S was a party, nor were their names mentioned in the agreements. *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir.1985) (stating that a non-signatory to a contract cannot be bound by the contract if the signing party is not the non-signatory's agent). The complaint indicates that the Bhagat contract is "similar," but that it involves a different number of Jaguar shares. (Compl.¶ 15). Although the plaintiffs allege that Quattrochi was an employee of Cardinal, the SPA itself makes clear that Quattrochi signed the contracts on behalf of R & M and not on behalf of Cardinal or P2S. Since the terms of the agreements contradict the allegations contained in the complaint, the agreement control. *See, e.g., Rozsa,* 187 F.Supp.2d at 128.

Since neither Cardinal nor P2S were parties to any of the contracts at issue, plaintiffs have failed to plead a breach of contract cause of action against them.

3. *The RICO Claims Are Dismissed*

The Private Securities Litigation Reform Act ("PSLRA") prohibits RICO claims based on allegations of fraud in connection with the purchase or sale of securities. The applicable provision of the PSLRA is codified at 18 U.S.C. § 1964(c), which states:
   [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**(Cite as: 2004 WL 2809989 (S.D.N.Y.))**

except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

*4 In amending RICO, Congress was clear in stating that the PSLRA " 'was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim." ' *Jordan (Berm.) Inv. Co., Ltd. v. Hunter Green Invs., Ltd.,* 205 F.Supp.2d 243, 248 (S.D.N.Y.2002) (internal citations omitted); *see also ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,* 957 F.Supp. 1308, 1319 (S.D.N.Y.1997) (legislative history was "unequivocal in stating that where allegations of mail and wire fraud derive from conduct otherwise actionable as securities fraud, no RICO claim will lie"); *Krear v. Malek,* 961 F.Supp. 1065, 1074 (E.D.Mich.1997) ("It is abundantly clear that Congress intended that conduct constituting wire and mail fraud not form the basis of a predicate act under the amendment if such conduct would also be actionable as securities fraud").

Any conduct plaintiffs allege on behalf of Cardinal and P2S arose out of the alleged contracts entered into by plaintiffs. The alleged contracts themselves involved the purchase of securities, *i.e.,* common stock of Jaguar. The PSLRA therefore precludes plaintiffs from asserting any RICO claims against Cardinal or P2S.

In addition, plaintiffs have failed to plead the requisite elements of a RICO claim with particularity. This Court recently noted in *Lesavoy v. Lane,* 304 F.Supp.2d 520, 532 (S.D.N.Y.2004) that:
    "RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint." Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate.
*Id.* at 532 (citation omitted).

In order to claim that there has been a violation

under §§ 1962(b) and 1962(c), a plaintiff must allege at least two predicate acts, and those acts must constitute a "pattern" of racketeering activity. *See Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 18 (2d Cir.1983). A pattern must be established by showing that the defendants' acts are "related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989). In considering whether the plaintiffs have met the continuity requirement, it must be determined "which predicate acts were pled with the requisite particularity and what timeframe those acts can be said to span." *CPF Premium Funding, Inc. v. Ferrarini,* No. 95 CIV 4621(CSH), 1997 WL 158361 at *7 (S.D.N.Y. Apr. 3, 1997).

Here, plaintiffs have not pled any predicate acts, nor have they pled any pattern, let alone one with the requisite degree of specificity. In order to sufficiently plead a RICO claim, a plaintiff must plead "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Cyber Media Group, Inc. v. Island Mortgage Network, Inc.,* 183 F.Supp.2d 559, 578 (E.D.N.Y.2002) (quoting *Sedima, S.P.L.R. v. Imrex Co.,* 473 U.S. 479, 496 (1985)). The complaint does not allege that Quattrochi was acting on behalf of Cardinal. The allegation that Quattrochi was an employee of Cardinal fails to satisfy the pleading requirement for a cause of action under RICO.

*5 Sobek by affidavit has stated that the stock at issue in this case was "transferred to a stock brokerage account at Cardinal" and that "Cardinal ... indicated that these shares had been transferred to another shareholder/investor." *See* Affidavit of Dale Sobek, sworn to April 16, 2004 (the "Sobek Aff.") at ¶¶ 8, 10. As discussed below, the Court should not consider these arguments at all. The plaintiffs also allege for the first time in their memorandum of law that defendant Quattrochi "raised money through the 'Put Option' and 'Collateral Provision' to benefit, among other parties, Cardinal" and that Cardinal had a monetary interest in the Jaguar investments. (*See* Plaintiffs' Memorandum of Law in Opposition to Cardinal's Motion to Dismiss at II(B)(1) and II(B)(3).)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**(Cite as: 2004 WL 2809989 (S.D.N.Y.))**

Page 5

Additional facts submitted in a plaintiff's opposition to a motion to dismiss cannot be considered by the Court. *See Padilla v. Payco Gen. Am. Credits, Inc.,* 161 F.Supp.2d 264, 267 (S.D.N.Y.2001) ("[I]t is axiomatic that the complaint cannot be amended by the briefs in opposition to a motion to dismiss [.]") (quoting *O'Brien v. National Prop. Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989); *Citadel Mgmt. Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 147, n.3 (S.D.N.Y.2000) (same). Even if these allegations are considered and accepted as true, however, none of these additional allegations involve any active conduct on behalf of Cardinal. The plaintiffs have not pled an act of racketeering (mail fraud, wire fraud, etc.) undertaken by Cardinal or P2S, let alone conduct of an enterprise through a pattern of racketeering.

Sobek and Bhagat seek to save their RICO claim by stating that the PSLRA "is not applicable to the case at bar" because this is not a class action. (*See* Plaintiffs' Memorandum of Law in Opposition to Cardinal's Motion to Dismiss at II(B)(2)). While it is true that one of the purposes of the PSLRA was to remedy abusive class actions in securities fraud cases, it is well settled in this district that the PSLRA is not limited to class actions. *See Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc.,* 985 F.Supp. 427, 430 (S.D.N.Y.1997), *rev'd on other grounds,* 186 F.3d 157 (2d Cir.1999) ("[T]here is nothing in the legislative history which indicates that the phrase 'in any private action' ... was intended to be limited to 'class actions'...."); *Inter-County Res., Inc. v. Medical Res., Inc.,* 49 F.Supp.2d 682, 684 (S.D.N.Y.1999) (stating that the PSLRA extends to all securities fraud cases, and "not merely to class actions"). The PSLRA precludes plaintiffs from asserting a RICO claim.

Accordingly, plaintiffs' RICO violation claim against Cardinal and P2S should be dismissed in their entirety.

**4. *The Punitive Damage Claim Is Dismissed***

Sobek and Bhagat have asserted a cause of action for punitive damages. However, no separate cause of action for such relief exists. *Golden First Mortgage Corp. v. Berger,* 251 F.Supp.2d 1132, 1141 (E.D.N.Y.2003) (stating that no separate cause of action for punitive damages exists).

*6 Moreover, punitive damages are not available under New York law for breaches of contract unless: (1) the defendant's conduct is actionable as an independent tort, (2) the conduct is egregious in nature, (3) the egregious conduct is directed at the plaintiff, and (4) the conduct is part of a pattern directed at the public generally. *See New York Marine & Gen. Ins. Co. v. Tradeline (L .L.C.),* 266 F.3d 112, 130 (2d Cir.2001) (stating that punitive damages for a breach of contract claim are not available if such claim is not properly plead). No such facts have been alleged in the complaint. Therefore, the punitive damages claim is dismissed as to Cardinal and P2S.

In addition, in an attempt to support their fraud claim, the plaintiffs' opposition papers for the first time state the following, which is not in the complaint: "Jaguar Investments receiv[ed] proceeds from the Plaintiffs in the amount of $170,000." (Plaintiffs' Memorandum of Law in Opposition to P2S' Motion to Dismiss at II(B)(2)). Likewise, the plaintiffs state the following which is not in the complaint: "Jaguar Investments received significant financial remuneration for selling these purported 'Put Options' and 'Collateral Provision' to the Plaintiffs." (*Id.* at II(B)(3)). Since such allegation are not stated in the complaint, they cannot be considered in connection with this motion, which is addressed solely to the sufficiency of the complaint.

**5. *The Conversion Claim Against P2S Is Dismissed***

"Under New York law, ... a 'denial or violation of the plaintiff's dominion, rights, or possession, is the basis of an action for conversion." ' *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993) (quoting *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 487, 462 N.Y.S.2d 413, 415, 448 N.E.2d 1324, 1326 (1983)). Plaintiffs allege that R & M Capital illegally transferred 500,000 shares of Jaguar stock (Compl.¶ 22), and that Jaguar and P2S participated "maliciously" in this "unauthorized

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**(Cite as: 2004 WL 2809989 (S.D.N.Y.))**

exercise of dominion." (Compl. ¶ 35). P2S seeks dismissal on the grounds that plaintiffs have failed to state the conversion claim with requisite particularity pursuant to Fed.R.Civ.P. 9(b). Plaintiffs have not opposed P2S' motion for dismissal of this conversion claim. However, dismissal is more properly granted on the grounds that the complaint fails to allege that P2S (1) owned the shares in question or (2) acted in concert with R & M to improperly transfer the shares. Since such facts have not been properly alleged, the conversion claim is dismissed.

6. *Bhagat's Claims Are Independently Deficient and This Court Is Without Jurisdiction*

Plaintiffs' opposition papers make clear that Bhagat's claims are independently deficient and without this Court's jurisdiction. The basis of Bhagat's claims is set forth in paragraphs 15 and 20 of the complaint. Paragraph 15 of the complaint globally alleges in relevant part that "Bhagat entered into a similar agreement with the defendants buying 50,000 shares of Jaguar Stock for $100,000 subject to a put option similar to that negotiated by Plaintiff Sobek." [FN4] Paragraph 30 of the complaint generically states that "Bhagat has also attempted to exercise her Put option rights but has been unsuccessful."

> FN4. Bhagat impermissibly lumps all of the defendants together without good faith basis. However, the Bhagat stock purchase agreement represents a separate contract entered into between her and R & M for separate consideration from the Sobek stock purchase agreement. Notably, P2S is not a party to either agreement.

*7 In their papers, the plaintiffs include a copy of Bhagat's Stock Purchase Agreement with R & M (the "Bhagat SPA"). As evidenced by the actual document, the SPA is a contract executed by and between Bhagat and R & M. In addition, the Bhagat SPA contains no "put right." Contrary to the statement at paragraph 15 of the complaint that "Bhagat entered into a similar agreement with the defendants buying 50,000 shares of Jaguar Stock

for $100,000," the Bhagat SPA concerned a purchase of 100,000 shares of Jaguar Stock for $50,000.

Jurisdiction in this Court is predicated solely on diversity (*see* Compl. ¶ 1), requiring a matter in controversy exceeding the sum or value of $75,000, exclusive of interest and costs. 28 U.S .C. § 1332(a).

Plaintiffs concede that the controversy here derives from separate agreements entered into by Sobek and Bhagat "each individually." (Plaintiffs' Memorandum of Law in Opposition to Cardinal's Motion to Dismiss at I). Bhagat's claim thus cannot rest on Sobek's claim in order to satisfy the monetary threshold for diversity jurisdiction. *See, e.g., Arnold v. Troccoli* 344 F.2d 842, 846 (2d Cir.1965) (stating that in diversity action, each plaintiff must individually claim the requisite jurisdictional amount), *Miller v. European Amer. Bank,* 921 F.Supp. 1162, 1167 (S.D.N.Y.1996) (citing *Zahn v. International Paper Co.,* 414 U.S. 291 (1973)).

C. *Plaintiffs' Motion to Amend*

The proposed amended complaint ("PAC") asserts seven causes of action against the defendants: (1) violation of 18 U.S.C. § 1962, (2) fraudulent inducement, (3) breach of contract, (4) breach of covenants of good faith and fair dealing, (5) breach of fiduciary duty to shareholders (P2S only), (6) unjust enrichment, and (7) conversion.

1. *Standard for Granting Leave To Amend*

In general, leave to replead is "freely given when justice so requires." Fed.R.Civ.P. 15(a); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). However, a district court has discretion to deny leave to amend "where the application is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant." *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 60 F.Supp.2d 123, 132 (S.D.N.Y.1999) (citing *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 157

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

(Cite as: 2004 WL 2809989 (S.D.N.Y.))

F.3d 956, 962 (2d Cir.1998)). The Second Circuit has stated that "[m]ere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981). Here the defendants Cardinal, P2S, and Madison have failed to make the combined showing of undue delay and bad faith and/or undue prejudice necessary to justify denial of plaintiffs' motion for leave to amend.

Cardinal and P2S argue that the claims asserted against them in the PAC should be dismissed on the grounds that such claims are futile. "[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao,* 336 F.3d 114, 126 (2d Cir.2003) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). A proposed amendment to a pleading is deemed to be futile if "it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). For the purposes of evaluating futility, the 12(b)(6) standard is applied: All well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993).

2. *The RICO Claim Is Futile As To Cardinal and R2S*

**\*8** The PAC's first cause of action asserts RICO claims (18 U.S.C. § 1962) against the defendants. For the reasons set forth above (*i.e* ., (1) that 18 U.S.C. § 1964(c) forecloses assertion of RICO claims based on fraud in the purchase or sale of a security and (2) that plaintiffs have failed to plead the elements of a RICO claim), this first cause of action is futile as Cardinal and R2S.

3. *The Breach of Contract Claim is Futile as to Cardinal and P2S*

The PAC's second cause of action asserts breach of contract claims. However, the PAC does not cure the failure to properly alleged the existence of a

contract between the plaintiffs and either Cardinal or P2S. Therefore, the second cause of action is futile as to Cardinal and P2S.

4. *The Fraudulent Inducement Claim Is Futile as to Cardinal and P2S*

The PAC's third cause of action alleges that the defendants fraudulently induced the plaintiffs to enter into the SPAs. Under New York law, a fraud cause of action generally does not arise where the alleged fraud merely relates to a breach of contract. *Salvador v. Uncle Sam's Auctions & Realty, Inc. ex rel. Passonno,* 307 A.D.2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dep't 2003); *River Glen Assocs., Ltd. v. Merrill Lynch Credit Corp.,* 295 A.D.2d 274, 275, 743 N.Y.S.2d 870, 871 (1st Dep't 2002); *Bazerman v. Edwards,* 295 A.D.2d 115, 742 N.Y.S.2d 822 (1st Dep't 2002).

However, this general rule is subject to the corollary that "a party who has breached a contract may be charged with separate tort liability for fraud arising from a breach of duty that is distinct from, or in addition to, the breach of contract." 60A *N.Y. Jurisprudence* § 7 (citing *Freedman v. Pearlman,* 271 A.D.2d 301, 304 706 N.Y.S.2d 405, 408 (1st Dep't 2000); *Licetie Music Corp. v. A.A. Records, Inc.,* 196 A.D.2d 467, 601 N.Y.S.2d 297, 297-98 (1st Dep't 1993); *Bernstein v. Polo Fashions, Inc.,* 55 A.D.2d 530, 531, 389 N.Y.S.2d 368, 370 (1st Dep't 1976)). In particular, it is well established that a misrepresentation of present fact which is the inducement for a contract is collateral to said contract, and can support a separate fraud claim. *See, e.g., Primavera Familienstifung v. Askin,* 130 F.Supp.2d 450, 491, *reconsidered on other grounds,* 137 F.Supp.2d 438 (S.D.N.Y.2001) (stating that "a false representation that induces one to enter into a contract supports a fraud claim"); *First Bank of Americas v. Motor Car Funding,* 257 A.D.2d 287, 292, 690 N.Y.S.2d 17, 21 (1st Dep't 1999) ("[A] misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty.").

In the PAC, the plaintiffs fail to allege any

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**(Cite as: 2004 WL 2809989 (S.D.N.Y.))**

misrepresentations on the part of Cardinal or P2S other than those allegedly contained in the SPAs or the Collateral Provisions. Therefore, the PAC's third cause of action is futile as to Cardinal and P2S.

5. *The Breach of the Covenant of Good Faith and Fair Dealing Claim Is Futile as to Cardinal and P2S*

**\*9** The PAC's fourth cause of action alleges breach of an implied covenant of good faith and fair dealing. Such a claim can only arise out of a contractual relationship. *See, e.g., Alter v. Bogoricin,* No. 97 Civ. 0662(MBM), 1997 WL 691332 at \*7 (S.D.N.Y. Nov. 6, 1997). Since plaintiffs have failed to allege the existence of a contractual relationship with either Cardinal or P2S, this claim is futile as to those defendants.

6. *The Unjust Enrichment Claim Is Futile as to Cardinal and P2S*

The PAC's fifth cause of action alleges unjust enrichment. In order to state a claim for unjust enrichment, plaintiffs must allege (1) that a benefit was conferred on the defendant, (2) that the defendant received the benefit without adequately compensating the plaintiffs, and (3) that circumstances are such that equity requires that the defendant make restitution. *See, e.g., National Westminster Bank plc v. Grant Prideco, Inc.,* 261 F.Supp.2d 265, 275 (S.D.N.Y.2003). The PAC fails to allege that the plaintiffs conferred any benefit on either Cardinal or P2S. Rather, plaintiffs merely make a blanket assertion that the defendants were unjustly enriched. Therefore, the fifth cause of action is futile as to Cardinal and P2S.

7. *The Breach of Fiduciary Duty Claim Is Futile as to P2S*

The PAC's sixth cause of action asserts a breach of fiduciary duty claim against P2S on the theory that P2S allowed "the Subject Shares and the Collateral Shares ... to be transferred to other purported purchasers." (PAC ¶ 83). However, the PAC contains no allegations as to the nature of the duty that P2S owed to the plaintiffs and what acts P2S

took in violation of that duty. Therefore, the sixth cause of action is futile.

8. *The Conversion Claim Is Futile as to Cardinal and P2S*

The PAC's seventh cause of action alleges conversion by all of the defendants. As set forth above, for the purpose of stating a conversion claim, plaintiff must allege that the defendant engaged in a denial or violation of the plaintiff's dominion, rights, or possession of property. *See In re Chateaugay Corp.,* 10 F.3d at 957. In the PAC, plaintiffs have done no more than assert conclusory allegations that defendants exercised unauthorized dominion over the 500,000 Jaguar shares. (PAC ¶ 95). Such conclusory allegations are inadequate to state a claim for conversion. Therefore, the conversion claim is futile with respect to Cardinal and P2S.

9. *Bhagat's Claims Are Independently Deficient and This Court is Without Jurisdiction*

The PAC does not provide any basis for concluding that Bhagat's claim satisfies the requisite amount for the attachment of diversity jurisdiction. Therefore, the claims asserted by Bhagat in the PAC are futile as to all defendants.

*Conclusion*

The motions to dismiss the complaint are granted. Plaintiffs motion to file an amended complaint is granted in part and denied in part, as set forth above.

**\*10** It is so ordered.

2004 WL 2809989 (S.D.N.Y.), RICO Bus.Disp.Guide 10,790

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV10219 (Docket)

(Dec. 24, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H

Westlaw.

Not Reported in F.Supp.2d

Page 1

2001 WL 34088807 (D.D.C.)

**(Cite as: 2001 WL 34088807 (D.D.C.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.
In re: VITAMINS ANTITRUST LITIGATION
**No. MISC. 99-197(TFH), MDL 1285.**

March 13, 2001.

*MEMORANDUM OPINION Re: Watkins Motions*

HOGAN, J.

*1 THIS DOCUMENT RELATES TO:, *Watkins v. F. Hoffman-LaRoche, Ltd., et al.*

Pending before this Court are various Motions to Dismiss filed by defendants in the above captioned action. [FN1] Based upon careful consideration of the parties' briefs and the entire record herein, the Court will grant defendants' Motions to Dismiss.

> FN1. The following defendants have filed joint memoranda in support of their motions to dismiss, or in the alternative, to dismiss all claims for acts falling outside the applicable statutes of limitations: BASF Corp.; Hoffmann-LaRoche, Inc.; Roche Vitamins, Inc .; Eisai U.S.A., Inc.; Eisai, Inc.; DuCoa L.P.; EM Industries, Inc.; Chinook Group, Ltd.; Lonza, Inc.; and Takeda Vitamin & Food USA, Inc. Additionally, defendants J.L. "Pete" Fischer and Lindell Hilling have filed motions to dismiss based on lack of personal jurisdiction. Since the Court finds that plaintiff lacks standing to bring this action, it is not necessary for the Court to

address the alternative grounds advanced by defendants for dismissal.

### I. BACKGROUND

Plaintiff, Nathan Watkins, District Attorney for the Seventeenth Judicial Circuit of the State of Alabama, brings the instant *parens patriae* action for violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala.Code §§ 8-19-1 to 8-19-15 (2000), on behalf of "Alabama consumers" who are "indirect purchasers of vitamins, vitamin premixes, or other vitamin products manufactured by defendants" and other unnamed co-conspirators. [FN2] Compl. at 9. Plaintiff purports to bring this action in his official capacity as district attorney and in a representative capacity on behalf of indirect purchasers. Plaintiff claims authority to bring this action pursuant to § 8-19- 10(f) of the ADTPA. [FN3]

> FN2. The named defendants include: F. Hoffmann-LaRoche, Ltd.; Hoffmann-LaRoche, Inc.; Roche Vitamins, Inc.; Rhone-Poulenc Animal Nutrition, Inc.; Rhone-Poulenc, S.A.; BASF AG; BASF Corp.; Lonza AG; Lonza, Inc.; Chinook Group, Inc.; DuCoa, L.P.; John Kennedy; Robert Samuelson; Lindell Hilling; J.L. "Pete" Fisher; Antonio Felix; Eisai Co., Ltd.; Eisai U.S.A., Inc.; Eisai, Inc.; Takeda Chemical Industries, Ltd.; Takeda Vitamin & Food U.S.A., Inc.; Takeda U.S.A., Inc.; Merck KgaA; E. Merck; and EM Industries, Inc.

> FN3. Section 8-19-10(f) provides:
> A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class; provided, however, that the office of the Attorney General or district attorney shall have the authority to bring action in a representative capacity on behalf of any named person or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

2001 WL 34088807 (D.D.C.)

**(Cite as: 2001 WL 34088807 (D.D.C.))**

persons. In any such action brought by the office of the Attorney General or a district attorney the court shall not award minimum damages or treble damages, but recovery shall be limited to actual damages suffered by the person or persons, plus reasonable attorney's fees and costs. Ala.Code § 8-19-10(f).

Plaintiff alleges that defendants and their co-conspirators engaged in price fixing and market allocation in violation of the ADTPA, thereby injuring Alabama consumers "in their trade or business." Compl. Part VI ¶ 36, at 22. Plaintiff argues that Alabama consumers have been injured because they paid more for defendants' vitamin products than they otherwise would have paid in the absence of the alleged unfair trade practices. Plaintiff further argues that Alabama consumers "have been and will continue to be injured in their business and property by defendants' unfair and deceptive trade practices." Compl. Part VII ¶ 58, at 29. Plaintiff seeks "damages, penalties, injunctive relief, and restitution" pursuant to Ala.Code §§ 8-19-10 and 8-19-11. *Id* . ¶ 59.

In addition to the ADTPA claim, plaintiff seeks disgorgement under the theory of unjust enrichment. In support of this claim, plaintiff argues that "Defendants have benefitted from their illegal restraints of trade ... through the Alabama consumers' overpayment for Defendants' vitamin products ... [and] [i]t would be inequitable for the Defendants to be permitted to retain any of the ... overpayment." Compl. Part VII ¶¶ 61-62, at 30. Plaintiff seeks disgorgement of monies acquired through defendants' allegedly illegal and inequitable conduct, plus interest and costs. *Id.* ¶¶ 63, 65.

Defendants argue that plaintiff lacks standing to bring this action; the ADTPA does not cover the conduct alleged in the Complaint; plaintiff's claims are barred by the applicable statutes of limitations; the Complaint should be dismissed or stayed because of prior pending actions; this Court lacks personal jurisdiction over these defendants; and plaintiff failed to provide an opportunity for dispute resolution prior to instituting this action in violation

of Ala.Code § 8-19-8(a). [FN4]

FN4. The statute provides in relevant part: Whenever the office of the Attorney General or the office of the district attorney has reason to believe that any person is engaging in, has engaged in or is about to engage in any act or practice declared to be unlawful by this chapter, the Attorney General or the district attorney may bring an action in the name of the state against such person to restrain by temporary restraining order, temporary or permanent injunction such acts or practices. However, unless the Attorney General or district attorney determines that a person subject to the provisions of this chapter designs quickly to depart from this state or to remove his property therefrom, or to conceal himself or his property therein, or to continue practices unlawful under this chapter, he shall, before initiating any legal proceedings is contemplated [sic], allow such person a reasonable opportunity to appear before the Attorney General or district attorney and solve the dispute to the parties' satisfaction. Ala.Code § 8-19-8(a). As discussed *infra* Note 11, plaintiff requests injunctive relief for violations of the ADTPA pursuant to §§ 8-19-10 and 8-19-11, not § 8-19-8. This distinction is relevant, because § 8-19-10(f) limits remedies available to the office of Attorney General or district attorney in representative actions.

## II. DISCUSSION
A. Plaintiff's First Cause of Action--Violation of the ADTPA

**\*2** Plaintiff asserts that defendants' actions constitute "unfair or deceptive trade practices substantially affecting trade or commerce in the state of Alabama in violation of § 8-19-1, *et. seq.*," of the ADTPA. [FN5] Compl. VII ¶ 54, at 29. Plaintiff seeks damages, penalties, injunctive relief, and restitution for violation of the ADTPA pursuant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 34088807 (D.D.C.)

**(Cite as: 2001 WL 34088807 (D.D.C.))**

Page 3

to §§ 8-19-10 and 8- 19-11.

> FN5. In his Complaint, plaintiff does not plead a violation of a specific section of the ADTPA, but rather asserts a general violation of the ADTPA. However, plaintiff does assert that defendants' conduct constitutes an "unconscionable, false, misleading and deceptive act or practice in the conduct of trade or commerce in violation of the Alabama Trade Practices Act." Compl. VI. ¶ 33, at 21. This language parallels the language of § 8-19-5(26), which declares unlawful "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Notably, plaintiff references this catchall provision in his Response to defendants' Motions. *See infra* note 7.

*1. Standing*

a. Plaintiff's ADTPA claim must be brought on behalf of "consumers"

Plaintiff lacks standing to bring this action because the ADTPA claim in the instant case must be brought by or on behalf of "consumers" as defined in the statute. The ADTPA provides:

> Any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a *consumer,* and any person who commits one or more of the acts or practices declared unlawful in subdivisions (19) and (20) of Section 8-19-5 and thereby causes monetary damage to another person, shall be liable to each *consumer* or other person....

Ala.Code § 8-19-10 (emphasis added). The ADTPA defines "consumer" as "[a]ny natural person who buys goods or services for personal, family or household use." [FN6] Ala.Code § 8-19-3(2). In his Complaint, plaintiff asserts injury to Alabama consumers "in their trade or business," Compl. ¶ 36, at 22, and "continue[d] ... injur[y] in their business and property." Compl. ¶ 58, at 29. In his Response to defendants' Motions to Dismiss,

plaintiff asserts for the first time that his action is really brought "on behalf of all consumers who purchased vitamin products." Pl's Resp. at 14. However, this characterization of plaintiff's claim is directly contradicted by the language of his Complaint. In such cases, the language of the complaint is deemed controlling. *Hawthorn v. Dept. of Navy,* 29 F.3d 682, 688 ("The purpose of a motion to dismiss is to assess the validity of the *pleadings"* ) (emphasis added). A plaintiff is not entitled to avoid dismissal by attempting to amend his complaint in a legal memorandum filed in response to a motion to dismiss. *Id.* (in ruling on a motion to dismiss, Court should not consider factual allegations in a memorandum of law that contradict those in the complaint). Accordingly, the Court finds that plaintiff alleges injury to consumers only in their trade or business and thus does not satisfy the statutory definition of consumer under the ADTPA.

> FN6. Section 8-19-10 appears to provide two instances in which an action may be brought for injury to a person other than a consumer, as defined in the statute. These two instances pertain to pyramid schemes, § 8-19-5(19), and misrepresentations made in the context of seller-assisted marketing plans, § 8-19-5(20). Neither of these provisions has been pleaded in the instant case.

The catchall provision [FN7] on which plaintiff bases his claim affords a right of action only to "consumers," as defined in the statute--that is, persons who buy goods or services for personal, family or household use. *See Deerman v. Federal Home Loan Mortgage Corp.,* 955 F.Supp. 1393, 1399 (N.D.Ala.1997) (stating that in regards to the catchall provision, "[o]nly 'consumers' have private rights of action under this section"), *aff'd,* 145 F.3d 364 (11th Cir.1998); *see also Ebsco Indus., Inc. v. LMN Enters.,* 89 F.Supp.2d 1248, 1266 (N.D.Ala.2000) (finding that corporate plaintiff lacked standing to bring false advertising claim under ADTPA because liability is imposed under § 8-19-5(5) for injury only to "consumers"). Plaintiff's allegations of injury to consumers injured in their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 34088807 (D.D.C.)

**(Cite as: 2001 WL 34088807 (D.D.C.))**

Page 4

trade or business do not satisfy the statutory definition of "consumer." Therefore, plaintiff lacks standing to maintain his action for violation of the ADTPA.

> FN7. In his Complaint, plaintiff purports to bring his claim for injury resulting from violation of the ADTPA, without alleging a specific statutory section or subsection violated by defendants. However, in his Response to defendants' Motions, plaintiff references the statute's catchall provision, § 8-19-5(24). Pl.'s Resp. at 13. Pursuant to the 1999 amendments, the correct reference is § 8-19-5(26). The statute declares unlawful "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." § 8-19- 5(26). As noted by defendants, this is the only section of the ADTPA upon which plaintiff could base his claim, because all other sections are inapplicable to the alleged wrongful conduct.

b. Failure to bring the action on behalf of a named person

**\*3** Plaintiff also lacks standing to bring this action because he has failed to bring the action "on behalf of any named person or persons." Joint Mem. at 4. Defendants concede that plaintiff is entitled to bring an action under the ADTPA in a representative capacity, but argue that § 8-19-10(f) requires plaintiff to name at least one allegedly injured party. [FN8] Plaintiff asserts that naming himself and filing on behalf of Alabama consumers, generally, is adequate under the statute.

> FN8. The statute provides in relevant part that "the office of the Attorney General or district attorney shall have the authority to bring action in a representative capacity *on behalf of any named person or persons.*" Ala.Code § 8-19-10(f) (emphasis added).

Because Alabama case law is silent as to the interpretation to be given to this provision, the Court will apply general principles of statutory construction. Section 8-19-10(f) grants to the Attorney General or district attorney authority to bring action in a representative capacity *on behalf of any named person or persons.* [FN9] The purpose of this requirement is to provide defendants with sufficient information about the injured party or parties and the circumstances of the alleged wrong to allow them to adequately defend themselves. Plaintiff has not fulfilled this requirement by naming only himself, because he has not alleged that he was personally injured by defendants' actions. Therefore, since it is clear that plaintiff has failed to bring this action on behalf of any named person or persons, thereby violating the plain language and intent of § 8-19-10(f), the Court finds that plaintiff lacks standing to bring this action.

> FN9. The APTPA provides that "in constructing 8-19-5, due consideration and great weight shall be given ... to the interpretations of the ... Federal Trade Commission Act." Ala.Code § 8-19-6 (emphasis added). However, § 8-19-6 specifically enumerates only § 8-19-5 as a provision to be interpreted in light of the FTCA.

c. Approval from the Governor is required for actions commenced by outside counsel on behalf of the State

Another factor warranting dismissal of plaintiff's Complaint lies in § 36-15, which outlines the duties of the Attorney General or district attorney in bringing a representative action. Specifically, section 36-15-12(12) provides that "no attorney shall represent the State of Alabama, or any agency, department, or instrumentality of the state in any litigation in any court or tribunal unless the attorney has been appointed as a deputy general or assistant attorney general." Ala.Code § 36-15-12(12). In the instant case, plaintiff has brought his action through private counsel. Although the approval requirement is raised in at least one of the motions to dismiss, plaintiff does not address this issue in his Response. However, the Alabama Supreme Court has interpreted this provision in *Ex parte Weaver,*

Not Reported in F.Supp.2d

Page 5

2001 WL 34088807 (D.D.C.)

**(Cite as: 2001 WL 34088807 (D.D.C.))**

noting that "if private counsel is to be hired to represent a state agency, that counsel must be employed by the attorney general with the approval of the Governor." *Ex parte Weaver,* 570 So.2d 675, 679 (Ala.1990) (discussing the discretion of the attorney general to "direct and control" litigation, but reading 36-15-21 as requiring the approval of the Governor "for the employment of outside counsel to represent a department"). Based on the pleadings before the Court, there is no evidence that plaintiff has sought and obtained approval from the Governor to bring this action through private counsel. Therefore, defendants are entitled to dismissal of the ADTPA claim on this ground as well.

*2. Other Grounds For Dismissal*

**\*4** Given that plaintiff lacks standing to bring the ADTPA claim in this case, there is no reason for the Court to address the scope of the ADTPA, the applicable statute of limitations, the effect of any prior pending litigation, or any personal jurisdiction issues raised in defendants' Motions. However, despite the Court's dismissal of the ADTPA statutory claim for lack of standing, the Court must still determine whether plaintiff may pursue his equitable claim under the theory of unjust enrichment.

B.  Plaintiff's Second Cause of Action--Unjust Enrichment

In addition to asserting violations of the ADTPA, plaintiff also seeks disgorgement based upon the theory of unjust enrichment. Defendants direct this Court's attention to § 8-19-10(f), arguing that plaintiff's claim must limited to actual damages. Defendants also assert that plaintiff lacks standing to bring a claim of unjust enrichment on his own behalf because he has not personally suffered any injury. Defendants further argue that plaintiff cannot bring an unjust enrichment claim in a representative capacity because there is no legal precedent in the ADTPA or elsewhere for such a claim. Finally, defendant Fischer argues that plaintiff cannot maintain an equitable action when there is an adequate remedy at law. Fischer Mot. at 11.

This Court finds that § 8-19-10(f) is dispositive on this issue. Defendants correctly point out that § 8-19-10(f), which confers authority upon the attorney general or a district attorney to bring a suit in a representative capacity, limits damages in such actions "to actual damages suffered by the person or persons, plus reasonable attorney's fees and costs." *See* Joint Reply Mem. at 6 (quoting Ala.Code § 8-19-10(f)). In support of this position, this Court would also direct plaintiff's attention to *Exxon,* in which the Alabama Supreme Court cautioned against circumvention of the intent of the Alabama legislature through statutory construction that creates new causes of action. [FN10] *See Ex parte Exxon Corp.,* 725 So.2d 939, 933-34 (Ala.1998).

> FN10. In *Ex parte Exxon,* the Alabama Supreme Court reviewed a mandamus petition arising from a lower court's choice of law analysis in the context of a class certification proceeding. The plaintiffs sought to bring a consumer class action based on New Jersey consumer protection laws. The court found New Jersey laws to be contrary to Alabama law, which reserves class action representation to the attorney general or a district attorney. The court explained that "by suing under another state's law that is more favorable to the result they seek, parties could circumvent the clear intent of the Alabama legislature and, in effect, force this Court to judicially create new procedures or causes of action." *Ex parte Exxon,* 725 So.2d at 933.

Plaintiff argues that other sections of the ADPTA authorize injunctive relief and would therefore have this Court extrapolate a "broad equity jurisdiction" in order to permit recovery of unjust enrichment damages. [FN11] Pl.'s Resp. at 16. Plaintiff contends that "[o]nce a court's equity jurisdiction has been established by [injunctive] relief statutes, the court has inherent and broad powers to grant all forms of equitable relief, including disgorgement and restitution." Pl.'s Resp. at 16 (citing *Porter v.. Warner Holding Co.,* 328 U.S. 395, 398-99 (1946); *U.S. v. Exxon Corp.,* 561 F.Supp. 816, 855 (D.C.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 34088807 (D.D.C.)

**(Cite as: 2001 WL 34088807 (D.D.C.))**

Cir1983)). *Porter* and its progeny stand for the proposition that "district courts retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress." *Meghrig v. KFC Western,* 516 U.S. 479, 487 (1996) (citing *Porter v. Warner Holding Co.,* 328 U.S. 395 (1946); *Wyandotte Transp. Co. v. United States,* 389 U.S. 191 (1967); *Hecht Co. v. Bowles,* 321 U.S. 321 (1944)). However, these cases refer to the jurisdiction of federal districts courts to afford equitable remedies in the context of federal statutes. Even if the principle of broad equity jurisdiction articulated in *Porter* can be extended to federal courts, sitting in diversity jurisdiction, applying state law and interpreting state statutes, *Porter* and its progeny qualify this equitable jurisdiction and teach that a district court has equitable jurisdiction if, and only if, "a statute in so many words, or by necessary and inescapable inference," does not restrict the court's jurisdiction in equity. *Porter,* 328 U.S. at 399; *see also FTC v. Gem Merchandising Corp.,* 87 F.3d 466, 470 (11th Cir.1996). Applying this contrary statutory intent principle to the instant case, the Court finds that dismissal is warranted, because the ADTPA expressly limits available remedies in § 8-19-10(f) representative actions to actual damages plus costs and fees. [FN12] Plaintiff offers no argument to refute the provision's circumscription of remedies available in representative actions; and this Court is persuaded by the plain language of § 8-19-10(f) that the Alabama legislature has determined to preclude, in representative actions, the very type of remedy that plaintiff seeks. Therefore, the Court will grant defendants' Motions to Dismiss plaintiff's unjust enrichment claim.

> FN11. *See e.g.,* § 8-19-8(a) (permitting an attorney general or district attorney to bring injunctive proceedings against "any person [who] is engaging in, has engaged in or is about to engage in any act or practice declared to be unlawful by [the ADTPA]"). However, unlike § 8-19-10, § 8-19-8 does not specifically address representative actions brought by the office of the attorney general or the district attorney.

> FN12. The statute directs that when the office of the Attorney General or a district attorney brings an action in a representative capacity, that "the court shall not award minimum damages or treble damages, but recovery shall be limited to actual damages suffered by the person or persons, plus reasonable attorney's fees and costs." Ala.Code § 8-19-10(f).

### III. CONCLUSION

**\*5** Based on the foregoing reasons, the Court finds that plaintiff lacks standing to bring an action for violation of the ADTPA. In addition, the Court finds that plaintiff is not entitled to disgorgement under the theory of unjust enrichment due to the limitation of available remedies delineated in 8-19-10(f). Accordingly, defendants' motions to dismiss are granted and plaintiff's claims are dismissed. An Order will accompany this Opinion.

### *ORDER Re: Watkins Motions*

In accordance with the accompanying Memorandum Opinion, it is hereby

ORDERED defendants' Motions to Dismiss are GRANTED. It is further hereby

ORDERED that plaintiff's claims are DISMISSED IN THEIR ENTIRETY.

2001 WL 34088807 (D.D.C.)

### **Motions, Pleadings and Filings (Back to top)**

- 1:00CV00233  (Docket)

  (Feb. 08, 2000)

- 1:99mc00197  (Docket)

  (May. 27, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

I



Not Reported in F.Supp.

1996 WL 586797 (E.D.N.Y.)

**(Cite as: 1996 WL 586797 (E.D.N.Y.))**

Page 1

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.
Ronald WALLACE, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF
CORRECTIONS; Anthony J. Schembri,
Commissioner;
Dr. Arnett Gaston, Warden of Anna M. Kross
Center, Rikers Island; John Doe 1
and John Doe 2, Defendants.
**No. 95 CV 4404.**

Oct. 9, 1996.
Ronald Wallace, St. Albans, New York Plaintiff,
Pro Se.

Paul A. Crotty, Corporation Counsel of the City of
New York by Andrew Laskin, New York City, for
Defendants.

ORDER

JOHNSON, District Judge:

INTRODUCTION
*1 Plaintiff Ronald Wallace filed an action against
the New York City Department of Corrections
("D.O.C."), the Commissioner of the DOC, and the
warden of the Anna M. Kross Center ("A.M.K.C.")
pursuant to 42 U.S.C. § 1983. Wallace alleges
violation of his constitutional right under the Eighth
Amendment to be free from cruel and unusual
punishment, and violation of his right to humane
confinement while detained at A.M.K.C. The
plaintiff's amended complaint alleges negligence
and gross negligence by the Commissioner and the
warden. Wallace also requests the appointment of

counsel.
The defendants move to dismiss, claiming that the
plaintiff fails to state a D.O.C. policy or procedure
that caused the alleged constitutional violations, and
that the plaintiff fails to allege that the actions of the
warden or Commissioner caused the alleged
constitutional violations.

FACTS
While in custody at the Anna M. Kross Center
("A.M.K.C.") at Rikers Island, two unknown
inmates stabbed plaintiff Ronald Wallace with an
ice pick. Wallace claims that only one guard was
on duty at the time of the attack. This guard stood
in the "bubble"--a guard observatory area. One
other guard patrolled between two housing units,
and was in the other unit at the time of the attack.
Wallace claims that the guard in the bubble did not
attempt to assist Wallace, and that other inmates
eventually came to his aid. Wallace also claims
that he was denied immediate medical attention and
had to wait until the next day to have his wounds
treated.

The defendants move to dismiss under Rule
12(b)(6) of the Federal Rules of Civil Procedure for
failure to state a claim. Dismissal under 12(b)(6)
requires this court to presume that all factual
allegations in the complaint are true and to make all
reasonable inferences in favor of the non-moving
party. The complaint will not be dismissed if there
appears to be some set of facts that would entitle the
non-moving party to relief.

LIABILITY OF SUPERVISORY OFFICIALS
UNDER 42 U.S.C. § 1983
A supervisory official must be personally involved
in the constitutional violation to be held liable under
42 U.S.C. § 1983. A supervisory official may be
deemed personally involved by (1) directly
participating in the infraction; (2) by failing to
remedy the violation after learning of it through a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

1996 WL 586797 (E.D.N.Y.)

**(Cite as: 1996 WL 586797 (E.D.N.Y.))**

report or appeal; (3) by creating, or allowing to continue, a policy or custom under which unconstitutional practices occurred; or (4) by being grossly negligent in managing the subordinates who caused to unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

1. Security

The defendants claim that the plaintiff fails to allege any practice or policy of the D.O.C. or A.M.K.C. that caused the deprivation of the plaintiff's rights. At the time of the plaintiff's injury, one guard was stationed in a security "bubble" while another guard rotated between two housing units. The plaintiff claims that his unit was secured by only the guard in the bubble. The plaintiff indicates in his complaint that this was not the standard practice at the jail and was an aberration from the usual routine of having a guard for each housing unit in addition to the guard stationed in the bubble.

*2 The plaintiff subsequently claims in his amended complaint, submitted after the defendants' motion to dismiss, that A.M.K.C. maintained a "policy" of rotating one guard among two housing units. The defendants' motion to dismiss asserts that the plaintiff has failed to state a claim because he cites no policy or practice by the defendants which caused the constitutional violation. The plaintiff blatantly changes his statement of the facts in order to respond to the defendants' motion to dismiss. In this amended complaint, the plaintiff directly contradicts the facts set forth in his original complaint. This court accepts the facts as described in the original complaint as true and concludes that the plaintiff has failed to meet any of the requirements set forth in *Williams* to establish the liability of supervisory officials under 42 U.S.C. § 1983.

2. Medical Care

The plaintiff claims that he was denied immediate medical care for the treatment of his stab wounds. He does not allege that the warden or commissioner had knowledge of the actions of the employee who

denied the plaintiff access to medical attention, or that this action was approved by the defendants. The city can not be held liable in a 42 U.S.C. § 1983 claim under the theory of *respondeat superior* for the acts of its employees. *Gomez v. Toledo,* 446 U.S. 635 (1980). The plaintiff also fails to allege any practice or policy of denying medical care, or that the warden or commissioner knew or approved of any such practice or policy. The plaintiff therefore fails to state a claim under 42 U.S.C. § 1983 for the defendants' failure to provide the plaintiff medical care.

NEGLIGENCE CLAIM UNDER STATE LAW
The amended complaint alleges that the negligence and gross negligence of the warden and Commissioner caused the plaintiff's injuries. New York Law requires a notice of claim from any party alleging personal injury resulting from the negligence of the City or one of its employees. New York General Municipal Law § 50-e (McKinney 1986). The plaintiff filed a claim with the Office of the Comptroller, but failed to follow the administrative procedures requiring the complainant to file a lawsuit within one year and ninety days of the incident. The Office of the Comptroller has since administratively closed the plaintiff's case.

The plaintiff failed to thoroughly pursue one clear and effective administrative remedy for the alleged violations and resulting injuries. The pendant state claims of negligence and gross negligence are thus barred for failure to exhaust administrative remedies. See *Culp v. Jorgensen,* 93 CV 2065 (S.D.N.Y.1994); *Ruiz v. Herrera,* 745 F.Supp. 940 (S.D.N.Y.1990). Furthermore, this court does not maintain jurisdiction over the state claims since all of the plaintiff's federal claims are dismissed.

APPOINTMENT OF COUNSEL
This court will appoint counsel in civil cases only when "the indigent's position [is] likely to be one of substance. *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986)). Since the plaintiff has failed to state a claim under 42 U.S.C. § 1983, and his negligence claims are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 3

1996 WL 586797 (E.D.N.Y.)

**(Cite as: 1996 WL 586797 (E.D.N.Y.))**

barred, his claims can not be said to be of substance. Wallace's request for counsel is denied.

**\*3** The defendants' motion to dismiss the complaint is granted in its entirety. All claims of negligence and gross negligence set forth in the amended complaint are dismissed. SO ORDERED.

1996 WL 586797 (E.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:95CV04404  (Docket)
                            (Oct. 27, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court, hereby certifies under penalty of perjury, that on July 29, 2005, I caused a true copy of the *Defendants' Reply Memorandum of Law in Further Support of Its Motion to Dismiss the First, Third, Fourth and Sixth Causes of Action in Plaintiff's Complaint* and *Compendium of Unreported Cases Cited in Defendants' Reply Memorandum of Law in Further Support of Its Motion to Dismiss the First, Third, Fourth and Sixth Causes of Action in Plaintiff's Complaint* to be served upon the following party in the manner indicated:

By Federal Express, overnight delivery

Brendan Chao
150 Great Neck Road, Suite 304
Great Neck, NY 11021

Dated:  New York, New York
        July 29, 2005

Steven Ray Katzenstein (S.K. 7599)